IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUNRISE SENIOR LIVING, INC. DERIVATIVE LITIGATION | **Civil Action No. 07-00143** |
| This Document Relates To:<br><br>ALL ACTIONS | |

**THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**

Pursuant to Rules 9(b), 12(b)(6), 12(b)(2) and 23.1 of the Federal Rules of Civil

Procedure, Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J.

Donohue, David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L.

Klaassen, Teresa M. Klaassen, Peter A. Klisares, William Little, Jr., Scott F. Meadow, Thomas

B. Newell, Robert R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton and

Tiffany L. Tomasso hereby move to dismiss the Amended Consolidated Shareholder Derivative

Complaint filed in the consolidated actions for failure to state a claim upon which relief can be

granted and for lack of jurisdiction over the person.

The supporting memorandum of points and authorities and a proposed form of

Order are submitted herewith.

Respectfully submitted,


 /s/ John C. Millian
John C. Millian (D.C. Bar No. 413721)
Matthew R. Estabrook (D.C. Bar No. 477880)
Elise Kochtitzky Jacques (D.C. Bar No. 502460)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500


*Attorneys for Defendants Carl Adams,
Ronald V. Aprahmian, Craig R. Callen,
Thomas J. Donohue, David W. Faeder, John
F. Gaul, J. Douglas Holladay, Larry E.
Hulse, Paul L. Klaassen, Teresa M.
Klaassen, Pete A. Klisares, William Little,
Jr., Scott F. Meadow, Thomas B. Newell,
Robert R. Slager, Christian B.A. Slavin,
Timothy S. Smick, Brian C. Swinton and
Tiffany L. Tomasso*

Dated:  June 16, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUNRISE SENIOR LIVING, INC. DERIVATIVE LITIGATION | **Civil Action No. 07-00143** |
| This Document Relates To: ALL ACTIONS | |

**[PROPOSED] ORDER GRANTING
THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**

This case is before the Court upon Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J. Donohue, David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L. Klaassen, Teresa M. Klaassen, Pete A. Klisares, William Little, Jr., Scott F. Meadow, Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton and Tiffany L. Tomasso's Motion to Dismiss Plaintiffs' Amended Consolidated Shareholder Derivative Complaint.  Upon consideration of the motion, the opposition thereto, and the entire record herein, it is hereby

ORDERED that the motion is granted; and it is further

ORDERED that all claims against Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J. Donohue, David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L. Klaassen, Teresa M. Klaassen, Pete A. Klisares, William

Little, Jr., Scott F. Meadow, Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin,

Timothy S. Smick, Brian C. Swinton and Tiffany L. Tomasso are dismissed with prejudice.


So ORDERED this _____ day of _____, 2008.


_____
HON. REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUNRISE SENIOR LIVING, INC. DERIVATIVE LITIGATION | **Civil Action No. 07-00143** |
| This Document Relates To: ALL ACTIONS | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**

John C. Millian (DC Bar #413721)
Matthew R. Estabrook (DC Bar #477880)
Elise Kochtitzky Jacques (DC Bar #502460)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

*Attorneys for the Individual Defendants
(Paul J. Klaassen, Carl Adams, Ronald V.
Aprahamian, Craig R. Callen, Thomas J.
Donohue, David W. Faeder, J. Douglas
Holladay, Larry E. Hulse, Teresa M. Klaassen,
Thomas B. Newell, Robert R. Slager, Christian
B.A. Slavin, Timothy S. Smick, Brian C. Swinton
and Tiffany L. Tomasso)*

# TABLE OF CONTENTS

Page

I.  INTRODUCTION AND BACKGROUND ...................................................................1

    A.  The Parties ............................................................................................................1

    B.  The Allegations in Plaintiffs' Complaint ..............................................................2

II. SUMMARY OF ARGUMENT ................................................................................3

III. ARGUMENT .............................................................................................................6

    A.  This Action Must Be Dismissed for Failure to Make the Requisite Pre-
    Suit Demand Upon Nominal Defendant Sunrise, Or in the Alternative
    Stayed Pending Resolution of the Related Class Action Lawsuit Also
    Before This Court ..................................................................................................6

    B.  This Case Must Be Dismissed Because the Complaint Fails to Allege
    That Plaintiffs Have Owned Sunrise Stock Continuously from 1997 to
    the Present, And Thus Fails to Allege That Plaintiffs Have Standing to
    Pursue Derivative Claims ......................................................................................6

    C.  The Complaint Also Must Be Dismissed Because It Fails to Plead Any
    Basis for the Court to Exercise Personal Jurisdiction Over Any of the
    Individual Defendants ...........................................................................................7

    D.  The Federal Backdating Claims Are Barred by the Applicable Statutes
    of Limitations ......................................................................................................10

        1.  Plaintiffs' § 10(b) Claim (Count I) Is Time-Barred.................................10

            a.  Because the Alleged Backdating Occurred More Than
            Five Years Before the Complaint Was Filed, the § 10(b)
            Claim Based on the Alleged Backdating Is Barred by the
            Five-Year Statute of Repose .........................................................10

            b.  Plaintiffs' § 10(b) Claim Based on the Alleged
            Backdating Is Also Barred by the Separate Requirement
            That Claims Be Brought Within Two Years of
            Discovery of Facts Constituting the Violation..............................12

        2.  Plaintiffs' § 14(a) Claim (Count II) Is Time-Barred.................................13

            a.  Because the Allegedly Misleading Proxy Statements
            Were All Issued More Than Three Years Before the
            Complaint Was Filed, Plaintiffs' § 14(a) Claim is Barred
            by the Three-Year Statute of Repose Applicable to
            Negligence-Based Claims Under the Exchange Act ....................13

Page

E.    Plaintiffs Fail to State a Claim for Any Federal Securities Law
       Violation ...................................................................................................14

       1.    Standard of Review.................................................................14

       2.    Plaintiffs Fail to Plead a § 10(b) Claim (Count I) with the
              Necessary Specificity.............................................................15

              a.    Plaintiffs Do Not Alleged Reliance with the Requisite
                    Specificity ...................................................................16

              b.    Plaintiffs Fail Adequately to Allege Misconduct by Any
                    Individual Defendant ..................................................17

              c.    Plaintiffs Fail to Plead Facts Giving Rise to a Strong
                    Inference of Scienter in Connection with Alleged
                    Backdating ...................................................................20

              d.    Plaintiffs Fail to Plead Facts Giving Rise to a Strong
                    Inference of Scienter in Connection with the Alleged
                    GAAP Violations .........................................................23

       3.    Plaintiffs Fail to Plead a § 14(a) Claim (Count II)....................26

              a.    Plaintiffs' § 14(a) Claim Fails Because They Do Not
                    Adequately Allege That Any Individual Defendant Made
                    False Statements..........................................................27

              b.    Plaintiffs' § 14(a) Claim Fails Because the Amended
                    Complaint Does Not Plead Specific Facts Supporting a
                    Strong Inference of Negligence ....................................28

              c.    The § 14(a) Claim Also Fails Because Plaintiffs Have
                    Alleged No "Essential Link" Between the Proxy
                    Solicitations and Any Corporate Transaction ...............29

       4.    Plaintiffs Fail Adequately to Plead a § 20(a) Claim .................30

              a.    Plaintiffs' Failure to State a Claim Under § 10(b) or §
                    14(a) Is Fatal to Their § 20(a) Claim ...............................30

              b.    The § 20(a) Claim Must Be Dismissed Because
                    Plaintiffs Do Not Adequately Allege That Faeder, Hulse,
                    Slavin, or Any of the Director Defendants Is a
                    Controlling Person .......................................................30

              c.    Plaintiffs' Failure to Plead "Culpable Participation" is
                    Also Fatal to Their § 20(a) Claim ..................................32

F.    Because Plaintiffs Fail to Allege a Federal Claim, the Court Must
       Dismiss the Entire Case for Lack of Subject Matter Jurisdiction.........................32

Page

G.  Even If the Court Were to Exercise Jurisdiction Over the Pendant State
Law Causes of Action Asserted in Counts IV-XI of the Complaint,
Those Purported Causes of Action Must Be Dismissed for Failure to
State a Claim ................................................................................................33

1.  Plaintiffs' State Law Fiduciary Duty Claims Based on Stock
Option Backdating Are Time-Barred.........................................33

a.  The Allegedly Backdated Options Were Granted Well
Outside the Limitations Period ......................................33

b.  There Are No Grounds for Tolling the Statute of
Limitations ....................................................................35

c.  There Was No Fraudulent Concealment........................36

2.  Plaintiffs Do Not Adequately Plead a Breach of Fiduciary Duty
Claim (Counts V & VI)...............................................................37

a.  Plaintiffs Do Not Make the Necessary Particularized
Factual Allegations to Plead A Claim for Breach of the
Duty of Loyalty Regarding the Backdating Claims........38

b.  Plaintiffs' Also Fail to Allege Facts That Would Support
A Breach of Fiduciary Duty Claim As to SEC Filings
That Plaintiffs Assert Were Misleading As A Result of
the Purported Backdating...............................................39

c.  Plaintiffs Likewise Fail to Allege Facts That Would
Support Their Joint Venture Accounting Claim .............40

3.  Plaintiffs Do Not Adequately Plead a Claim for Insider Trading
and Misappropriation of Information (Count XI).......................42

a.  Plaintiffs Fail to Plead a Claim for Insider Trading
Because the Amended Complaint Lacks Allegations
Related to Specific Transactions....................................42

b.  The Insider Trading Claim Must Be Dismissed Because
There Is No Harm to Sunrise .........................................43

4.  Plaintiffs' Unjust Enrichment Claims (Counts VII and IX) Fail
Because Plaintiffs Do Not Adequately Plead an Underlying Breach
of Fiduciary Duty .......................................................................43

5.  The Rescission Counts (Counts VIII and X) and The Accounting
Count (Count IV) Must Be Dismissed Because These Are
Remedies, Not Claims ................................................................44

IV.  CONCLUSION..........................................................................................45

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accord Lewis v. Ward,*
  No. Civ. A. 15255, 2003 WL 22461894 (Del. Ch. Oct. 29, 2003) .................................... 38, 39

*Adams v. Kinder-Morgan, Inc.,*
  340 F.3d 1083 (10th Cir. 2003) ........................................................................................ 31

*Alberts v. Tuft,*
  353 B.R. 324 (Bankr. D. C. 2006) .................................................................................... 34

*Allegheny Gen. Hosp. v. Phillip Morris, Inc.,*
  228 F.3d 429 (3d Cir. 2000) ............................................................................................. 44

*Allison v. Brooktree Corp.,*
  999 F. Supp. 1342 (S.D. Cal. 1998) ................................................................................. 19

*Atlantigas Corp. v. Nisource, Inc.,*
  290 F. Supp. 2d 34 (D.D.C. 2003) ..................................................................................... 8

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988) .......................................................................................................... 16

*Began v. Dixon,*
  547 A.2d 620 (Del. 1988) ................................................................................................. 36

*Bell Atl. Corp. v. Twombly,*
  127 S. Ct. 1955 (2007) ..................................................................................................... 14

*Blue Chip Stamps v. Manor Drug Stores,*
  421 U.S. 723 (1975) .......................................................................................................... 14

*Burman v Phoenix Worldwide Indus., Inc.,*
  437 F. Supp. 2d 142 (D.D.C. 2006) ........................................................................... passim

*Davis Inc. v. Young,*
  412 A.2d 1187 (D.C. 1980) .............................................................................................. 35

*Doolin v. Envtl. Power Ltd.,*
  360 A.2d 493 (D.C. 1976) ................................................................................................ 34

*DSAM Global Value Fund v. Altris Software, Inc.,*
  288 F.3d 385 (9th Cir. 2002) ..................................................................................... 24, 40

*Durning v. Citibank, Int'l,*
  990 F.2d 1133 (9th Cir. 1993) ......................................................................................... 11

*EEOC v. St. Francis Xavier Parochial Sch.,*
  117 F.3d 621 (D.C. Cir. 1997, *aff'd,* 254 F.3d 315 (D.C. Cir. 2000) ...................... 14

*Ernst & Ernst v. Hochfelder,*
  425 U.S. 185 (1976) .......................................................................................................... 20

*Ezra Charitable Trust Inc. v. Tyco Int'l, LTD,*
  466 F.3d 1 ........................................................................................................................ 25

*Falkowski v. Imation Corp.,*
  309 F.3d 1123 ............................................................................................................ 11, 17

*Filloramo v. Johnston, Lemon & Co.,*
  700 F. Supp. 572 (D.D.C. 1988) ...................................................................................... 35

Page(s)

*Fla. State Bd. Of Admin. v. Green Tree Fin. Corp.*,
  270 F.3d 64 (8th Cir. 2001) ................................................................. 19
*Freeman v. Decio*,
  584 F.2d 186 (7th Cir. 1978) ............................................................... 43
*Friedman v. Manfuso*,
  620 F. Supp. 109 (D.D.C. 1985) ............................................. 33, 35, 36
*Gassmann v. Eli Lilly & Co.*,
  407 F. Supp. 2d 203 (D.D.C. 2005) ..................................................... 34
*Gen. Elec. Co. v. Cathcart*,
  980 F.2d at 927 (3d Cir. 1992)............................................................. 29
*GTE New Media Services, Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) ............................................................ 9
*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003)............................................................... 26
*Hoffa v. Fitzsimmons*,
  673 F.2d 1345 (D.C. Cir. 1982) ........................................................... 33
*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ............................................................. 30
*In re Adelphia Commc'ns Corp. Securities & Derivative Litig.*,
  398 F. Supp. 2d 244 (S.D.N.Y. 2005)................................................... 31
*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d. Cir. 1999)................................................................ 21
*In re Affiliated Computer Servs. Derivative Litig.*,
  540 F. Supp. 2d 695 (N.D. Tex. 2007) ................................................. 11
*In re Computer Science Corp. Derivative Litig.*,
  CV 06-05288 MRP (Ex), 2007 WL 1321715 (C.D. Cal. Mar. 26, 2007) ........ 7
*In re Comshare, Inc. Sec. Litig.*,
  183 F.3d  542 (6th Cir. 1999)............................................................... 24
*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
  355 F. Supp 2d. 1069 (N.D. Cal. 2005) ............................................... 41
*In re Cray Inc. Derivative Litig.*,
  431 F. Supp. 2d 1114 (W.D. Wash. 2006)............................................ 43
*In re Ditech Networks, Inc. Derivative Litig.*,
  2007 WL 2070300 (N.D. Cal. June 16, 2007) ...................................... 38
*In re Fed. Nat'l Mortgage Ass'ns Sec. Derivative and "ERISA" Litig.*,
  503 F. Supp 2d 25 (D.D.C. 2007)................................................... passim
*In re Gemstar-TV Guide, Int'l Inc., Sec. Litig.*,
  No. CV 02-02775 MRP (PLAx), 2003 U.S. Dist. LEXIS 25884 (C.D. Cal. Aug. 15, 2003) .. 28
*In re Gen. Motors (Hughes) S'holder Litig.*,
  No. Civ. A. 20269, 2005 WL 1089021 (Del. Ch. May 4, 2005), *aff'd* 897 A.2d 162 (Del. 2006)....................................................................................... 37
*In re Hypercom Corp. Sec. Litig.*,
  No. CV-05-0455-PHX-NVW, 2006 WL 1836181 (D. Ariz. July 5, 2006)............ 41
*In re McKesson HBOC, Inc. Sec. Litig.*
  126 F. Supp. 2d 1248 (N.D. Cal 2000) ................................................ 28

Page(s)

*In re Navarre Corp. Sec. Litig.*,
299 F.3d 735 (8th Cir. 2002) ............................................................... 26

*In re Oracle Corp. Derivative Litig.*,
867 A.2d 904 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005)............................ 42

*In re Premiere Techs. Inc. Sec. Litig.*,
No. 1:98-cv-1804-JOF, 2000 WL 33231639 (N.D. Ga. Dec. 8, 2000) ............................ 19, 28

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
387 F. Supp. 2d 1130 (D. Colo. 2005)........................................................ 31

*In re Sagent Tech., Inc. Derivative Litig.*,
278 F. Supp. 2d 1079 (N.D. Cal. 2003) ....................................................... 6

*In re Smartalk Teleservices, Inc. Securities Litig.*,
124 F. Supp. 2d 505 (S.D. Ohio 2000) ....................................................... 26

*In re Zoran Corp. Derivative Litig.*,
511 F. Supp. 2d 986 (N.D. Cal. 2007) ................................................... 13, 44

*King v. Kitchen Magic, Inc.*,
391 A.2d 1184 (D.C. 1978) ................................................................. 35

*Kopff v. Battaglia*,
425 F. Supp. 2d 76 (D.D.C. 2006) ........................................................... 8

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) .............................................................. 14

*Kushner v. Beverly Enterprises, Inc.*,
317 F.3d 820 (8th Cir. 2003) ........................................................... 24, 25

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
501 U.S. 350 (1991)........................................................................ 11

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
437 F.3d 588 (7th Cir. 2006), *rev'd on other grounds*, 127 S.Ct. 2499 (U.S. 2007)............... 18

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) ................................................................. 37

*Meng v. Schwartz*,
116 F. Supp. 2d 92 (D.D.C. 2000) ........................................................... 33

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970)........................................................................ 29

*Mullin v. Washington Free Weekly, Inc.*,
785 A.2d 296, 298 (D.C. 2001) ............................................................. 34

*Poling v. Farrah*,
131 F. Supp. 2d 191 (D.D.C. 2001)........................................................... 9

*Primedical, Inc. v. Allied Inv. Corp.*,
Civ. A. No. 90-1802(NHJ), 1994 WL 149139 (D.D.C. Mar. 31, 1994), *aff'd*, 50 F.3d 1096
(D.C. Cir. 1995) .......................................................................... 34

*Rhodes v. Silkroad Equity, LLC*,
C.A. No. 2133- VCN, 2007 WL 2058736 (Del. Ch. July 11, 2007) ............................... 45

*Sao Paulo of the Federative Republic of Braz. v. Am. Tobacco Co.*,
919 A.2d 1116 (Del. 2007) ................................................................. 44

*SEC v. Yuen*,
221 F.R.D. 631 (C.D. Cal. 2004) ........................................................... 29

Page(s)

*Southland Sec. Corp. v. INSpire Ins. Solutions*,
    365 F.3d 353 (5th Cir. 2004) ........................................................................ 18, 19
*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ............................................................................ 37, 38
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) .................................................................... 15, 18, 20, 26
*Thompson, Cobb, Bazilio & Assocs., P. C. v. Grant Thornton LLP*,
    Civil No. 99-8(RMU/JMF), 2002 WL 458997 (D.D.C. Mar. 25, 2002) ................. 34
*Trenwick Am. Litig. Trust .v. Ernst & Young LLP.*,
    906 A.2d 168 (Del. Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007) .......................... 38
*United Liberty Life Ins. Co. v. Ryan*,
    985 F.2d 1320 (6th Cir. 1993) ............................................................................ 9
*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................ 15, 38, 41
*Winters v. Stemberg*,
    529 F. Supp. 2d 237 (D. Mass. 2008) ...................................................... 19, 22, 25

**Statutes**
15 U.S.C.  § 78u-4(b) ............................................................................................ 18
15 U.S.C. § 78aa .................................................................................................... 9
15 U.S.C. § 78t(a) ................................................................................................ 30
15 U.S.C. § 78u-4 ................................................................................................ 15
15 U.S.C. § 78u-4(b)(1) ........................................................................................ 23
15 U.S.C. § 78u-4(b)(2) .................................................................................. 16, 20
28 U.S.C. § 1367 .................................................................................................. 33
28 U.S.C. § 1658(b) ................................................................................ 11, 12, 13, 14
D.C. Code § 12-301(8) (2007) .......................................................................... 34, 35
D.C. Code § 13-422 ................................................................................................ 9
D.C. Code § 13-422 (2007) .................................................................................... 7
D.C. Code § 13-422 (2008) .................................................................................... 7
D.C. Code § 13-423 (2008) ................................................................................ 7, 8
D.C. Code §13-423 ................................................................................................ 9
Del. Code. Ann. § 327 ............................................................................................ 6

**Other Authorities**
16 James Wm. Moore, *Moore's Federal Practice* ¶ 106.66[1], pp. 106-86 to 106-89 (3d ed.
    2007) .................................................................................................................... 33
3A William M. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 1174 (2006) ......... 43
Securities Exchange Act § 27 ........................................................................ 9, 10
Securities Exchange Act of 1934 §10(b) .......................................................... passim
Securities Exchange Act of 1934 §14(a) .......................................................... passim
Securities Exchange Act of 1934 §20(a) ...................................................... 3, 4, 10

**Rules**
Fed. R. Civ. P. 12(b)(2) ........................................................................................ 7
Fed. R. Civ. P. 12(b)(6) ...................................................................................... 14
Fed. R. Civ. P. 23.1 .............................................................................................. 6

Page(s)

Fed. R. Civ. P. 4(k)(1)(A) ............................................................................. 8
Fed. R. Civ. P. 9(b) ............................................................................. 3, 14, 15
Rule 10b-5 ............................................................................. 10, 15, 16

Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J. Donohue, David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L. Klaassen, Teresa M. Klaassen, Peter A. Klisares, William Little, Jr., Scott F. Meadow, Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton and Tiffany L. Tomasso (hereinafter, the "Individual Defendants")[1] move the Court for dismissal of plaintiffs' Amended Consolidated Shareholder Derivative Complaint (the "Amended Complaint").

## I.     INTRODUCTION AND BACKGROUND

### A.     The Parties

This shareholder derivative action is brought by three plaintiffs, Janie Morrison, Catherine Molner, and Robert Anderson. Am. Compl. ¶ 14. Each is alleged to be a shareholder of Sunrise "at all relevant times," and each is alleged to have been a shareholder "at the time of the wrongdoing alleged herein, and . . . continuously since that time," but otherwise the Amended Complaint contains no information about them. *Id.* ¶¶ 14-17.

"Nominal defendant" Sunrise is a Delaware corporation with its principal place of business in McLean, Virginia. Sunrise is a provider of senior living services with over 415 communities in the United States, Canada, the United Kingdom, and Germany. *Id.* ¶ 18.

The "Individual Defendants," as defined in the Amended Complaint, include twenty-one current or former directors and/or officers of Sunrise (nineteen of whom join in the present motion). Although the Amended Complaint improperly attempts to lump all of these defendants together, as discussed further below, it is important to understand that the various individuals plaintiffs have sued are differently situated—they served at Sunrise at different time periods,

---

[1] As used in the Amended Complaint, the term "Individual Defendants" also includes former Sunrise director David G. Bradley and former Sunrise chief financial officer Bradley B. Rush, each of whom is separately represented in this action. We understand that Messrs. Bradley and Rush are each filing separate motions to dismiss.

they served in many different capacities, and they had widely varying stock option awards, stock holdings, and stock sales.

**B.    The Allegations in Plaintiffs' Amended Complaint**

This is primarily a stock option backdating case.  Plaintiffs' Amended Complaint follows a pattern now familiar in a number of such cases:  based on a purported "statistical analysis" of long-available public data, plaintiffs "pick" a subset of stock options granted by Sunrise many years ago—between May 1997 and November 2001—and assert based on that analysis, coupled with vague, conclusory statements about group conduct and intent, that those option grants must have been backdated.  *See* Am. Compl. ¶¶ 58-139.  After cataloguing at length the grants on the fifteen cherry-picked dates, plaintiffs assert that "[e]ach and every one of the aforementioned stock option grants was dated just before a significant increase in Sunrise stock price and/or at or near Sunrise's lowest closing price of the pertinent fiscal quarter or year." *Id*. ¶ 129.  Plaintiffs then assert, based on their undisclosed statistical analysis but without any other factual support, that "at the behest of the [Individual] Defendants, the Stock Option Committee, with the knowledge and approval of the other members of the Board, knowingly and deliberately backdated the stock option grants." *Id*.

Plaintiffs also claim that various public filings by Sunrise were necessarily false and misleading as a result of the alleged backdating.  Plaintiffs assert that the purported backdating "violated the terms of the Company's stock option plans," *id.* ¶ 129, and hence that Sunrise's annual proxy statements representing that stock option grants were made in compliance with the stock option plans were false and misleading.  *Id*. ¶ 205.  Similarly, plaintiffs claim that SEC Form 4s filed by defendants disclosing the grants were false because they did not reveal the "true grant dates" of the allegedly backdated options.  *Id*. ¶¶ 218-219.  And plaintiffs allege that the improperly backdated options were not accounted for correctly, leading Sunrise to "materially

understate Sunrise's compensation expense, materially overstate the Company's net income and/or materially understate its net loss" in financial statements filed with the SEC.  *Id.* ¶ 141.

Quite independent and unrelated to the core "options backdating" aspects of this case, plaintiffs tack onto their Amended Complaint the allegation that in more recent times the Individual Defendants "caused" Sunrise to engage in "improper accounting of the company's real estate joint ventures" in violation of Generally Accepted Accounting Principals ("GAAP"). *Id.* ¶¶ 141-142.  Plaintiffs claim that this alleged improper joint venture accounting led Sunrise to "materially understate Sunrise's compensation expense, materially overstate the Company's net income and/or materially understate its net loss" in financial statements filed with the SEC.  *Id.* ¶ 141.

The Amended Complaint contains eleven counts, three asserted under federal law and the remaining eight under Delaware state law.  Counts I, II and III attempt to assert claims under §§ 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), respectively.  Counts IV-XI assert various purported state law "claims" including (a) a claim for breach of fiduciary duty, (b) a claim for insider trading, and (c) various other "claims" that consist of little more than disguised breach of fiduciary duty claims ("unjust enrichment"), or mere requests for remedies (accounting, rescission).

## II.    SUMMARY OF ARGUMENT

1.    All of plaintiffs' federal securities claims must be dismissed, for several independent reasons.  First, plaintiffs' Exchange Act backdating claims relate to events—stock options granted during the period 1997-2001—that all occurred long ago, and hence these claims are plainly barred by the applicable statute of limitations.  Second, even if these claims were not time-barred, they must still be dismissed because plaintiffs fail to allege their claims with the particularity needed to satisfy the stringent standards of Federal Rule of Civil Procedure 9(b), the

Exchange Act, and the Private Securities Litigation Reform Act. Plaintiffs' § 10(b) allegations related to alleged violations of GAAP also fail for this reason. In addition, all of plaintiffs' § 10(b) claims fail because plaintiffs have not adequately alleged the key element of reliance, and (somewhat similarly) plaintiffs' § 14(a) claim fails because plaintiffs have not adequately pleaded that the purportedly misleading proxy statements were an "essential link" to a qualifying transaction. Since the underlying § 10(b) and § 14(a) claims fail, plaintiffs' "secondary liability" § 20(a) claim necessarily fails as well. Finally, that claim also must be dismissed for the separate reason that plaintiffs have not adequately alleged that any of the supposed controlling persons "culpably participated" in any underlying violation, as required for a § 20(a) claim.

2. Because plaintiffs have not stated a claim under the federal securities laws, this Court lacks subject matter jurisdiction over plaintiffs' remaining state law claims and accordingly should dismiss those claims.

3. Should the Court nonetheless reach plaintiffs' state law claims, however, they must also be dismissed on the merits. Plaintiffs assert an assortment of purported state law claims, but their core claims are Count V and VI, which attempt to set forth a claim for breach of fiduciary duty. Plaintiffs claim that the Individual Defendants breached their fiduciary duties by "engaging in a scheme to grant backdated stock options," Am. Compl. ¶ 338, by "colluding with each other to violate GAAP and" tax law regarding the accounting for backdated options, and by "colluding with each other" to produce and disseminate financial statements, proxy statements, and Form 4's that likewise were false as a result of the backdated options. *Id.* ¶ 269. As noted above, plaintiffs also advance the entirely independent assertion that the Individual Defendants "collud[ed] with each other to improperly account for [certain of] Sunrise's real estate joint venture start-up losses and real estate sale gains." *Id.*

Plaintiffs' fiduciary breach claims must be dismissed. To the extent that the alleged breach is based on the same purported "backdating scheme" at the heart of the plaintiffs' § 10(b) and § 14(a) claims, it fails for essentially the same reasons: (a) the claim is barred by the applicable statute of limitations, and (2) in any event, plaintiffs have failed to allege actual *facts* sufficient to support such a claim. Similarly, plaintiffs also have failed to plead *facts* sufficient to support their claims that the Individual Defendants colluded to improperly account for certain joint ventures and colluded to produce, disseminate, and file false financial statements, proxy statements, and Form 4s. All plaintiffs offer are conclusory allegations of wrongdoing annexed to allegations that certain accounting may not have complied with GAAP, and that some securities filings contained inaccuracies. These allegations are insufficient to state a claim for breach of fiduciary duty, and hence the claim must be dismissed.

4.      Plaintiffs press additional state law "claims" as well, none with any merit. In Count XI, plaintiffs claim that certain defendants traded Sunrise stock on inside information. This claim must be dismissed because plaintiffs do not allege that Sunrise, on whose behalf the plaintiffs bring this derivative suit, was harmed by the alleged conduct. Counts VII and IX claim that recipients of allegedly backdated or ultra vires options have been unjustly enriched, but these claims merely restate the fiduciary breach claim in the language of equity. Because that claim must be dismissed, so must the equitable equivalent. Finally, Count IV seeks an accounting, while Counts VIII and X seek rescission of all contracts pertaining to the allegedly backdated options. These three claims should be dismissed because accounting and rescission are remedies rather than causes of action. Thus, all of plaintiffs' purported state law claims, like their federal law claims, are subject to dismissal. Accordingly, the Court should dismiss the Complaint.

### III.    ARGUMENT

**A.    This Action Must Be Dismissed for Failure to Make the Requisite Pre-Suit Demand Upon Nominal Defendant Sunrise, or in the Alternative Stayed Pending Resolution of the Related Class Action Lawsuit Also Before This Court**

As addressed in the separate Memorandum of Points and Authorities in Support of the Motion to Dismiss or, in the Alternative, to Stay by Nominal Defendant Sunrise Senior Living, Inc. ("Sunrise's Memorandum"), this action is subject to dismissal because (1) plaintiffs have failed to make pre-suit demand upon Sunrise as required by Fed. R. Civ. P. 23.1 and applicable Delaware law, and (2) plaintiffs' attempt to excuse this failure to make demand based on assertions of "demand futility" must be rejected.  In the alternative, should this case not be dismissed on this (or another) basis, the Court should stay the present action until the related class action litigation also pending before this Court is finally resolved.  The Individual Defendants hereby join in the arguments on these points set forth in Sunrise's Memorandum.

**B.    This Case Must Be Dismissed Because the Complaint Fails to Allege That Plaintiffs Have Owned Sunrise Stock Continuously from 1997 to the Present, and Thus Fails to Allege That Plaintiffs Have Standing to Pursue Derivative Claims**

To have standing to bring a derivative action, plaintiffs must have owned stock at the time of the alleged wrongdoing and continue to own it throughout the litigation.  Fed. R. Civ. P. 23.1; Del. Code. Ann. § 327.  To satisfy this requirement at the pleading stage, plaintiffs are therefore required to plead (1) when they purchased their stock, and (2) that they have owned that stock continuously up to the present time.  *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1096 (N.D. Cal. 2003).

Plaintiffs' Amended Complaint does not satisfy this requirement.  Rather than setting forth specific allegations regarding plaintiffs' stock ownership, the Amended Complaint contains only the vague assertions that plaintiffs "are, and were at all relevant times, shareholders of nominal defendant Sunrise" and that each plaintiff "is a shareholder of Sunrise, was a

6

shareholder of Sunrise at the time of the wrongdoing alleged herein, and has been a shareholder of Sunrise continuously since that time."  Am. Compl. ¶¶ 14-17; *see also id*. ¶ 283 ("Plaintiffs are owners of Sunrise common stock and have been owners of Sunrise common stock continuously since the time of the wrongdoing alleged herein.").  Such conclusory language falls far short of the specificity required to establish that plaintiffs have standing to bring derivative claims.  *See In re Computer Science Corp. Derivative Litig*., CV 06-05288 MRP (Ex), 2007 WL 1321715, at *15 (C.D. Cal. Mar. 26, 2007) (rejecting as insufficient allegations that each plaintiff "is, and was during the relevant period," or "is, and was at all times relevant" a shareholder of nominal defendant).  Indeed, plaintiffs' decision to use the ethereal phrase "at all relevant times," rather than to plead when they actually bought their stock, suggests if anything that plaintiffs are aware that they *cannot* meet the requisite stock ownership requirement to bring the derivative claims sought to be asserted here.  Because plaintiffs have in any event failed even to state when they purchased Sunrise stock, the Amended Complaint must be dismissed for lack of standing.

**C.    The Amended Complaint Also Must Be Dismissed Because It Fails to Plead Any Basis for the Court to Exercise Personal Jurisdiction Over Any of the Individual Defendants**

This case must also be dismissed, pursuant to Fed. R. Civ. P. 12(b)(2), because plaintiffs have not made allegations sufficient to invoke this Court's personal jurisdiction over any of the Individual Defendants.  In this Court, personal jurisdiction may be based either upon the Court's "general jurisdiction" over an individual pursuant to D.C. Code § 13-422 (2008), or upon "specific jurisdiction" as defined in the District of Columbia's long-arm statute, D.C. Code § 13-423 (2008).  *Burman v Phoenix Worldwide Indus., Inc*., 437 F. Supp. 2d 142, 147 (D.D.C. 2006) (Walton, J.).  "General jurisdiction" can be exercised over a defendant who is "domiciled in, organized under the laws of, or maintain[s] his or its principal place of business in" the District of Columbia. D.C. Code § 13-422 (2007).  "Specific jurisdiction" can be exercised

(a) . . . . over a person, who acts directly or by an agent, as to a claim for relief arising from the person's:

    (1)      transacting any business in the District of Columbia;

    (2)      contracting to supply services in the District of Columbia;

    (3)      causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

    (4)      causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .

(b)      When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423 (2008); *see also* Fed. R. Civ. P. 4(k)(1)(A) (providing for personal jurisdiction of district court over an individual who is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located").

    Plaintiffs bear the burden of establishing the Court's personal jurisdiction over each of the Individual Defendants, and at the pleading stage "must allege specific facts on which personal jurisdiction can be based; [they] cannot rely on conclusory allegations." *Burman*, 437 F. Supp. 2d at 147 (quoting *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003)). *See also Kopff v. Battaglia*, 425 F. Supp. 2d 76, 80-81 (D.D.C. 2006). Further, the requisite "specific facts" must be set forth separately for each defendant; "plaintiffs cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant." *Kopff*, 425 F. Supp. 2d. at 81.

    Nothing in the Amended Complaint remotely alleges the requisite "specific facts" necessary to provide a basis for this Court to exercise personal jurisdiction over any of the Individual Defendants. The Amended Complaint is utterly bereft of any factual allegations at all

connecting this action to the District of Columbia—indeed, the phrases "Washington, D.C. " or "District of Columbia" do not even appear in the body of the Amended Complaint.  The only allegations in the Amended Complaint that even potentially relate to the question of personal jurisdiction *at all* are found in one paragraph of the Amended Complaint that attempts, in classic boilerplate, merely to support *venue* in this Court.  That paragraph states, in its entirety:

> 13.    Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

These "conclusory allegations"—so obviously disconnected to any specific fact in this case to be utterly meaningless—cannot possibly support finding the existence of personal jurisdiction over any, much less all, the Individual Defendants.  *Burman*, 437 F. Supp. 2d at 147.

Given the basic nature of this lawsuit—a shareholder derivative action against the directors and officers of a Delaware corporation headquartered in Virginia—it is hardly surprising that the Amended Complaint contains nothing that would justify pursuing such claims against the Individual Defendants in this forum.  The only surprising point, perhaps, is that the Complaint apparently *does not even try* to do so.  Without doubt, the Amended Complaint fails to allege any basis for the exercise of personal jurisdiction under D.C. Code §§ 13-422 or 13-423.

Plaintiffs may assert that Section 27 of the Exchange Act, 15 U.S.C. § 78aa— which vests jurisdiction over Exchange Act cases in the district courts and sets forth requirements for venue—effectively confers personal jurisdiction over any defendant with minimum ties to the United States.  *See, e.g., United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993).  This Court has rejected that conclusion.  *See Poling v. Farrah*, 131 F. Supp. 2d 191, 192-

93 (D.D.C. 2001) (citing *GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350-51 (D.C. Cir. 2000)).  Rather, this Court's careful reading of Section 27 recognizes that personal jurisdiction will lie only where Section 27's venue requirements are met; that is, "if this district is one in which 'any act or transaction constituting the violation occurred.'" *Id.*  As discussed above, however, plaintiffs make no factual allegations that, if true, would demonstrate that any such "act or transaction" occurred in the District of Columbia.  Because plaintiffs' allegations do not satisfy Section 27's venue requirements, the Court lacks personal jurisdiction over the Individual Defendants under this provision as well, and dismissal is warranted.

**D.     The Federal Backdating Claims Are Barred by the Applicable Statutes of Limitations**

As noted above, plaintiffs seek to assert causes of action under three provisions of the Exchange Act: § 10(b) and SEC Rule 10b-5 promulgated thereunder, the principal anti-fraud provision of the statute (Count I); § 14(a), which applies to proxy statements (Count II); and § 20(a), the "controlling person" provision of the Exchange Act (Count III).  As discussed below, it is plain from the face of the Amended Complaint that the § 10(b) claim based on the alleged backdating and the § 14(a) claims are time-barred, and the § 20(a) claim cannot survive without them.

**1.     Plaintiffs' § 10(b) Claim (Count I) Is Time-Barred**

**a.     Because the Alleged Backdating Occurred More Than Five Years Before the Complaint Was Filed, the § 10(b) Claim Based on the Alleged Backdating Is Barred by the Five-Year Statute of Repose**

Count I alleges that all of the Individual Defendants engaged in securities fraud prohibited by § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Am. Compl. ¶¶ 316-21.  Specifically, the Amended Complaint alleges that Sunrise "relied upon the [Defendants'] fraud in granting the recipients of backdated and ultra vires stock options [the

right] to purchase shares of the Company's common stock, . . . as alleged herein," and that the Company has sustained damages as a result. *Id.* ¶¶ 320-321. This claim must be dismissed because every instance of alleged backdating occurred outside the applicable limitations period.

As amended by the Sarbanes-Oxley Act of 2002, the Exchange Act provides that a § 10(b) claim must be brought by the *earlier* of (1) two years from the discovery of facts constituting the violation, or (2) five years after the violation. 28 U.S.C. § 1658(b). Because the five-year limitations period serves as a statute of repose, equitable tolling is not available. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).

Plaintiffs seek to allege thirteen instances of grants of backdated options, the first of which was dated May 2, 1997, and the last of which was dated November 12, 2001, and also two instances of grants of "ultra vires" stock options, one dated March 3, 1998 and one dated May 11, 2001. *See* Am. Compl. ¶¶ 80-139. Plaintiffs' earliest § 10(b) claim thus accrued on or about May 2, 1997, and plaintiffs' last claim accrued on or about November 12, 2001. *See Durning v. Citibank, Int'l*, 990 F.2d 1133, 1136-37 (9th Cir. 1993) (recognizing the federal rule that a cause of action accrues upon completion of the sale of the instrument); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129-30 (9th Cir. 2002) (describing grant of option as a "purchase or sale" for purposes of federal securities laws); *In re Affiliated Computer Servs. Derivative Litig.*, 540 F. Supp. 2d 695, 701 (N.D. Tex. 2007) ("A claim under § 10(b) that is based upon the backdating itself accrues on the date the option grant was made."). Accordingly, the five-year statute of repose under 28 U.S.C. § 1658(b) for the *last* of plaintiffs' § 10(b) claims arising from alleged backdating expired no later than on or about November 12, 2006. Plaintiffs' first complaint in this matter, however, was not filed until January 19, 2007. Because plaintiffs

commenced this action after the expiration of the limitations period set forth in 28 U.S.C. §

1658(b), their § 10(b) claims must be dismissed.

> **b.     Plaintiffs' § 10(b) Claim Based on the Alleged Backdating Is Also
> Barred by the Separate Requirement That Claims Be Brought Within
> Two Years of Discovery of Facts Constituting the Violation**

While the Court need not reach the issue, plaintiffs' § 10(b) claim is also barred by the

two-year period in 28 U.S.C. § 1658(b), which runs from the discovery of facts constituting the

violation.  In this lawsuit plaintiffs base their "backdating" case upon what they contend is a

"striking pattern over four consecutive years—1997-2000—[during which] Sunrise's Board

purportedly granted options when Sunrise stock was trading at or near its yearly low price."  Am.

Compl. ¶ 7.  As plaintiffs candidly admit, they identify the specific "thirteen out of sixteen

discretionary option grants dated from May 1997 through November 2001" that they assert were

backdated based on a "statistical analysis" that "examines the twenty-day return of each stock

option grant listed in the Company's proxy statement for each year of the relevant period."  *Id.*

¶¶ 7, 70-71 and nn.2 & 4; *see also id.* ¶¶ 80-139 (giving specific data for each grant).  *All of this

information*—the dates of grants, the exercise price of the grants, and the contemporaneous

trading prices of Sunrise common stock—*has been publicly available since the issuance of

Sunrise's proxy statements in 2002 and earlier years.*

Similarly, the alleged factual basis for plaintiffs' assertion that one grant from 1998 and

another from 2001 were "ultra vires"—in particular, the fact that the prices used for those grants

was the closing price on the grant date rather than the closing price the day before as the

publicly-filed Sunrise stock option plans purportedly required, *id.* ¶¶ 133-139—likewise has

been available since the issuance of those same proxy statements.  Thus, the two-year

"discovery" limitations period necessary began running no later than 2002, and hence also

expired long before this action was commenced in January 2007.  For this independent reason,

therefore, plaintiffs' § 10(b) claim based on alleged stock option backdating is time-barred and must be dismissed.

### 2.    Plaintiffs' § 14(a) Claim (Count II) Is Time-Barred

#### a.    Because the Allegedly Misleading Proxy Statements Were All Issued More Than Three Years Before the Complaint Was Filed, Plaintiffs' § 14(a) Claim is Barred by the Three-Year Statute of Repose Applicable to Negligence-Based Claims Under the Exchange Act

Count II alleges that all of the Individual Defendants violated § 14(a) of the Exchange Act when the Company purportedly issued false proxy statements that failed to disclose the alleged stock option backdating scheme.  *See* Am. Compl. ¶¶ 322-327.  This claim, like the § 10(b) claim, is time-barred.

In an apparent attempt to take advantage of the lower "negligence" scienter standard applicable in a § 14(a) claim (as compared to the scienter standard that governs plaintiffs' § 10(b) claim), plaintiffs allege in Count II that the Company's issuance of false proxy statements was caused by the Individual Defendants' failure to "exercise [] reasonable care." Am. Compl. ¶ 325.  Since plaintiffs' § 14(a) claim thus sounds in negligence, not fraud, the statute of limitations governing § 10(b) and other "fraud" claims, 28 U.S.C. § 1658(b), does not apply here.  Instead, 28 U.S.C. § 1658(a), which governs claims that do not sound in fraud, provides the applicable statute of limitations for Count II.  Under that provision, plaintiffs' claim must be filed within one year after discovery of the facts constituting the violation, and in no event more than three years after the violation.  *See In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1017 (N.D. Cal. 2007) (dismissing backdating claims brought under § 14(a)).

The Amended Complaint alleges that Sunrise disseminated proxies containing misstatements on five occasions between April 3, 1998 and April 5, 2002.  Am. Compl. ¶¶ 205-16.  Plaintiffs' earliest § 14(a) claim thus expired no later than April 3, 2001, and plaintiffs' last

§ 14(a) claim expired no later than April 5, 2005—long before the present litigation was

commenced.  Plaintiffs' § 14(a) claim is thus clearly barred by the statute of limitations.[2]

**E.      Plaintiffs Fail to State a Claim for Any Federal Securities Law Violation**

      **1.      Standard of Review**

A motion to dismiss for failure to state a claim must be granted if the complaint does not

contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v.

Twombly*, 127 S. Ct. 1955, 1974 (2007), and there is no "'reasonably founded hope'" that the

plaintiff can make a case, *id*. at 1969 (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S.

723, 741 (1975)).  In considering a motion to dismiss for failure to state a claim upon which

relief can be granted under Federal Rules of Civil Procedure 12(b)(6) and 9(b), this Court must

view the factual allegations in the light most favorable to the plaintiff.  *EEOC v. St. Francis

Xavier Parochial Sch*., 117 F.3d 621, 624-25 (D.C. Cir. 1997, *aff'd*, 254 F.3d 315 (D.C. Cir.

2000).  However, the Court "need not accept inferences drawn by plaintiff[] if such inferences

are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp*., 16 F.3d

1271, 1276 (D.C. Cir. 1994).

In addition, as discussed below, plaintiffs' allegations of securities fraud under § 10(b) of

the Exchange Act must plead facts from which one can draw a strong inference of scienter.

While under Rule 12(b)(6) all inferences must be drawn in the plaintiffs' favor, inferences of

---

[2]    Even if plaintiffs' Section 14(a) claim sounded in fraud, it still would be time-barred for the most part.
As discussed above, the Exchange Act provides that a securities fraud claim must be brought by the
earlier of (1) two years from the discovery of facts constituting the violation or (2) five years after the
violation. *See* 28 U.S.C. § 1658(b). Because the initial complaint in this matter was filed on January
19, 2007, the five-year statute of repose bars claims for alleged violations before January 19, 2002.
Here, plaintiffs specifically allege that the Company issued false proxy statements on five occasions:
April 3, 1998; April 6, 1999; April 14, 2000; March 29, 2001; and April 5, 2002. Because the first
four of these were issued before January 19, 2002, plaintiffs' § 14(a) claims as to those statements are
time-barred and must be dismissed.

scienter survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499, 2510 (2007).

### 2.    Plaintiffs Fail to Plead a § 10(b) Claim (Count I) with the Necessary Specificity

Even if plaintiffs' § 10(b) claim were not time-barred, it still must be dismissed because plaintiffs have failed to plead their claim in accord with applicable pleading requirements.  To state a claim under Section 10(b) and Rule 10b-5 thereunder, plaintiffs must allege: "(1) the making of a material misrepresentation, or the use of a manipulative or deceptive device; (2) with scienter . . . ; (3) in connection with the purchase or sale of a security; (4) reliance by plaintiff; (5) economic loss; and (6) loss causation (proximate cause)." *See In re Fed. Nat'l Mortgage Ass'ns Sec. Derivative and "ERISA" Litig*., 503 F. Supp. 2d 25, 38 (D.D.C. 2007) (hereinafter "*In re Fannie Mae*").

As this Court has noted, Congress passed the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 *et seq*., to curb abusive and meritless lawsuits by enacting heightened pleading requirements for securities cases.  *See Burman v. Phoenix Worldwide Indus*., 384 F. Supp. 2d 316, 334 (D.D.C. 2005) (Walton, J.).  Among other provisions, the PSLRA requires fraud plaintiffs to identify each misleading statement or omission and specify why it is misleading.  This is of a piece with Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id*.  Courts have summarized this standard as requiring plaintiffs to identify the "who, what, when, where, and how" of each defendant's participation in the alleged legal violation, without which the Amended Complaint cannot survive a motion to dismiss.  *Vess v. Ciba-Geigy Corp*., 317 F.3d 1097, 1106 (9th Cir. 2003).  In

addition, the PSLRA requires that plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with" scienter, the intent to deceive.  15 U.S.C. § 78u-4(b)(2).

Applying these standards, plaintiffs' § 10(b) claim must be dismissed for three separate reasons.  First, the Amended Complaint fails to allege facts that, if true, would support the necessary reliance element of a § 10(b) claim.  Second, plaintiffs do not plead fraud with specificity.  Finally, plaintiffs do not plead facts giving rise to a strong inference of scienter.

### a.    Plaintiffs Do Not Allege Reliance with the Requisite Specificity

A principal problem with plaintiffs' § 10(b) claim—as well as with their § 14(a) claim, as discussed below—is that the Amended Complaint does not, and cannot, adequately allege the *reliance* element of a federal securities cause of action.  The reason for this is that the very premise of plaintiffs' case—that "Sunrise," which can only hear, read, think and act through management—was somehow misled into entering into securities transactions in "reliance" on misstatements supposedly made by those same people—is simply nonsensical.

To successfully plead a claim under § 10(b), a plaintiff must allege that he, she or it—in this case Sunrise itself as the nominal defendant—relied on misstatements made by the defendants in connection with the purchase or sale of a security.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988) ("reliance is an element of a Rule 10b-5 cause of action . . . [and] provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury").  In an attempt to plead such reliance, plaintiffs allege vaguely in their summary allegations set forth under the "Count I " heading that "[t]he Company relied upon the  Defendants Klaassen, Teresa Klaassen, Faeder, Newell, Donohue, Callen, Bradley, Holladay, Aprahamian, Little, Rush, Hulse, Adams, Meadow, Klisares, Slager and Gaul's fraud in granting the recipients of backdated and ultra vires stock options [the right] to purchase shares of the Company's common stock, and the improper accounting treatment for the recognition of profits from real estate joint

ventures and gains on the sale of real estate[.]"  Am. Compl. ¶ 320.  To state that "the Company relied on the Individual Defendants' fraud," however—whatever it means to "rely on a fraud"—is not to allege that Sunrise relied on a *misstatement*, as must be alleged to state a claim.  Further, nowhere either under the heading "Count I " or in the body of the Amended Complaint is it alleged that the Company relied upon any specific alleged misstatement.

Plaintiffs do, of course, attempt to assert that *Sunrise itself* issued misleading proxy statements and financial statements, Am. Compl. ¶¶ 140-217, and also assert that the Individual Defendants filed incorrect Form 4s with the SEC, *id.* ¶ 218.  Plaintiffs also attempt to assert that *Sunrise itself* made false statements in press releases and its Annual Reports to shareholders, *id.* ¶¶ 45, 48, 50, 52-54, and that the Individual Defendants made false statements to analysts, *id.* ¶¶ 46, 47, 49, 51.  The supposed errors in these statements, however, if they existed at all, were known by "Sunrise" (i.e., its people), and furthermore these statements reported transactions that had *already occurred*.  For multiple reasons it is thus illogical to suggest that Sunrise could have "relied" on such purported misstatements in granting the options challenged in this case.  *See Falkowski*, 309 F.3d at 1130 (noting that a fraud is "in connection" with a transaction if it "coincides" with the transaction).  Because plaintiffs have failed to allege a statement upon which Sunrise relied, their § 10(b) claim must be dismissed.

### b. Plaintiffs Fail Adequately to Allege Misconduct by Any Individual Defendant

Despite the PSLRA's particularity requirements, plaintiffs' Amended Complaint is replete with generalized allegations, such as the claim that the Individual Defendants "collud[ed] with each other to backdate stock option grants," Am. Compl. ¶ 269(b), and "collud[ed] with each other to improperly account for Sunrise's real estate joint venture start-up losses and real estate sale gains," *id.* ¶ 269(a).  In making these and other similarly broad allegations, plaintiffs

engage in so-called "group pleading," which is an attempt to allege claims against multiple defendants absent specific facts as to some of them based on assertions of conspiracy or other collective conduct.

Plaintiffs' reliance on the so-called "group pleading" doctrine is misplaced for two separate reasons. First, the purpose of the doctrine is to facilitate the pleading of fraud based on published misstatements "conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published' information." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 602 (7th Cir. 2006)*, rev'd on other grounds,* 127 S.Ct. 2499 (U.S. 2007). As described above, plaintiffs cannot allege that the purported victim of the alleged fraud (Sunrise) relied on any such "group published" information, and in any event the doctrine does not apply to other alleged collective activity, like backdating or accounting manipulations. Second, the U.S. Courts of Appeal that have considered the "group pleading" doctrine have concluded that it is incompatible with the particularity requirements of the PSLRA. As the Fifth Circuit has explained:

> [The "group pleading" doctrine] cannot withstand the PSLRA's specific requirement that the untrue statements or omissions [at issue in a securities fraud case] be set forth with particularity as to "the defendant" and that scienter be pleaded with regard to "each act or omission" sufficient to give "rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b). These PSLRA references to "the defendant" may only reasonably be understood to mean "each defendant" in multiple defendant cases, as it is inconceivable that Congress intended liability of any defendants to depend on whether they were all sued in a single action or were each sued alone in several separate actions.

*Southland Sec. Corp. v. INSpire Ins. Solutions*, 365 F.3d 353, 364-65 (5th Cir. 2004); *see also, e.g., Makor Issues & Rights, Ltd. v. Tellabs, Inc*., 437 F.3d at 602.

Although the district courts have not ruled uniformly on the applicability of the "group pleading" doctrine, this Court is among the many that have aligned themselves with the

*Southland* and *Makor* courts.  *See In re Fannie Mae*, 503 F. Supp. 2d at 40; *In re Premiere Techs. Inc. Sec. Litig.*, No. 1:98-cv-1804-JOF, 2000 WL 33231639, at *8-11 (N.D. Ga. Dec. 8, 2000); *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1350 (S.D. Cal. 1998).

Seen in the light of *Southland* and *Fannie Mae*, plaintiffs' generalized allegations fall well short of the PSLRA's requirements.  Plaintiffs broadly allege, for example, that "at the behest of the Defendants, the Stock Option Committee, with the knowledge and approval of the other members of the Board, knowingly and deliberately backdated the stock option grants. . . ." Am. Compl. ¶ 129; *see also id.* ¶ 73.  In this and other blanket allegations, plaintiffs do not identify which Individual Defendants requested which stock option grants to be backdated.  *See also, e.g.,* Am. Compl. ¶ 269(a), (b).  Further, this shortcoming is not solved in those instances where plaintiffs instead list all of the Individual Defendants by name.  *See, e.g.*, *id.* ¶ 140.  In making such allegations, plaintiffs do not "distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud" any more so than does naming a group in which the Defendant was a member.  *Southland*, 365 F.3d at 365 (internal quotation omitted); *see also Winters v. Stemberg*, 529 F. Supp. 2d 237, 250 (D. Mass. 2008) (generalized allegations do not illuminate "what statements were made or what member of the [group] made them.").

Because the Court must "disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements" of the PSLRA, *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001) (citation omitted), plaintiffs simply have not adequately alleged misconduct by any of the Individual Defendants.  All they do, in reality, is offer rank speculation, which cannot survive a motion to dismiss.  This problem with plaintiffs' "group pleading" approach becomes even more apparent when the vastly different tenures of the

Individual Defendants are considered.  Many of the Individual Defendants were not even affiliated with Sunrise during some or all of the alleged backdating.  For example, Defendant Adams did not join the Company until 2000, Am. Compl. ¶ 33, and Defendant Gaul joined the Company in 2002, *id.* ¶ 31, yet both are among the defendants at whose "behest" stock option grants supposedly were backdated as early as 1997.  *See id.*¶ 129.  Similarly, defendant Smick's service with the Company ended in 1998, *id.*¶ 36, and yet plaintiffs include him among the defendants purportedly involved in the backdating scheme as late as 2001.  *See id.* ¶ 129.  The same point could be made by examining the tenure of other defendants, and then comparing their dates of service with the obviously inconsistent allegations lodged against them.  This exercise brings home why courts have held that the type of indiscriminate, broad-brush allegations lodged here are not meaningful for purposes of attempting to state a claim under the federal securities laws.  Plaintiffs' "group pleading" is inconsistent with the imperatives of the PSLRA, and the Amended Complaint in reality offers nothing else.  The Amended Complaint thus fails adequately to allege misconduct as to any of the Individual Defendants, and must be dismissed on this ground among others.

> **c.    Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter in Connection with Alleged Backdating**

The PSLRA requires plaintiffs suing for securities fraud to state with particularity facts supporting a "strong inference" that the defendant acted with scienter, 15 U.S.C. § 78u-4(b)(2), that is, with the intention "to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, n.12 (1976).  This Court has held that scienter must be pled as to *each* alleged fraudulent act or omission, "sufficient to give rise to a strong inference that the defendant acted with at least *extreme* recklessness." *See In re Fannie Mae*, 503 F. Supp. 2d at 40.  *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007) (stating that PSLRA

requires "plaintiffs to plead with particularity facts that give rise to a 'strong'—*i.e*., a powerful or cogent—inference").  Plaintiffs fail to meet this standard because (1) they fail to allege scienter specifically for each of the Individual Defendants; (2) they rely on inadequate "fraud by title" allegations; and (3) their remaining bare allegations of scienter are conclusory statements that are not supported by facts.  The § 10(b) claim therefore must be dismissed on this ground as well.

The Amended Complaint alleges that the Individual Defendants were "directly responsible for the fraud alleged herein" because they "were among the senior management and/or directors of the Company."  Am. Compl. ¶ 319.  The Amended Complaint further alleges that, "[t]hrough their positions of control and authority as officers and/or directors of the Company, each of the Individual Defendants was able to and did control the conduct complained of herein."  *Id.* ¶ 318.  These "fraud by title" allegations attribute responsibility for the fraud on the Individual Defendants solely by virtue of the positions they held with the Company. Scienter, however, cannot be inferred solely because a defendant is a corporate officer or director.  *See Fannie Mae*, 503 F. Supp. 2d at 40; *see also In re Advanta Corp. Sec. Litig*., 180 F.3d 525, 539 (3d. Cir. 1999) ("[A]llegations that a securities-fraud defendant, because of his position within the Company, 'must have known' [about the fraud] are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate . . .'" to survive a motion to dismiss) (citation omitted).

Plaintiffs' remaining allegations similarly never rise above the merely conclusory.  For example, the Amended Complaint alleges that "the Stock Option Committee . . . with the knowledge and approval of the other members of the Board, knowingly and deliberately . . . backdat[ed] grants of stock options."  Am. Compl. ¶ 73.  The Amended Complaint goes on to allege that "the members of the Board and the Stock Option Committee had actual knowledge of

the backdating" and that "[t]he entire Board knowingly and deliberately approved the backdating scheme." *Id*. ¶ 74. And the Amended Complaint repeats, with little elaboration, that "at the behest of the Defendants, the Stock Option Committee, with the knowledge and approval of the other members of the Board, knowingly and deliberately backdated the stock option grants. . . ." *Id*. ¶ 129.

The Amended Complaint alleges on numerous occasions that for each stock option grant, various defendants "knowingly used hindsight" to select option grant dates. *See, e.g.*, Am. Compl. ¶ 89. Such a statement is not sufficient to plead scienter. *See Winters*, 529 F. Supp. 2d at 250 (The plaintiffs "simply repeat that, in connection with each stock option grant, 'the Compensation Committee . . . knowingly used hindsight to pick the date when [the] stock was at a monthly low.' . . . It simply cannot be inferred from these allegations what statements were made or what member of the Compensation Committee made them."). The Amended Complaint also repeatedly alleges that various Defendants "knowingly" made false statements in various 10-Ks and proxy statements, *see, e.g., id.* ¶ 181, and that they "knowingly conceal[ed] material information and improper accounting techniques," *id.* ¶ 56, in part through press releases and statements to analysts, which statements Plaintiffs never actually allege were *knowingly* false, *see id.* ¶¶ 44-55. In no way does the Amended Complaint ever purport to allege *how* the defendants' "knew" all of this information was allegedly false. A mere assertion by the plaintiffs that such statements or actions were knowing, without underlying supporting facts, does not satisfy the pleading requirements of the PSLRA for scienter.[3]

---

3    Plaintiffs allege, "On information and belief, the Stock Option Committee members . . . and certain Defendants . . . would review historical stock prices before issuing stock options to determine the date upon which stock prices were significantly below the current market price. They would then falsify the relevant documents to make it appear as if the stock options were granted on the earlier date." Am. Compl. ¶ 77. This statement is merely an elaboration of the allegation that the Individual [Footnote continued on next page]

The mere repetition of the claim that defendants acted "knowingly and deliberately" does not remedy the allegations' fundamentally conclusory nature. Plaintiffs do not allege at which of the Individual Defendant's "behest" the options were backdated. They do not allege how, when, or by whom such a request was made. And tellingly, plaintiffs fail to allege *facts* that would tend to suggest—let alone give rise to a strong inference—that any member of the Stock Option Committee knew that the option grants it approved were backdated. Similarly, the Amended Complaint alleges no facts to support the contention that any member of the Board "knowingly and deliberately approved" improper backdating. Without such specific allegations, the Amended Complaint does not demonstrate the required "extreme recklessness" state of mind on the Defendants' part. *See Fannie Mae*, 503 F. Supp. 2d at 51 (dismissing allegations as to Audit Committee that failed to address similar questions); *Burman*, 384 F. Supp. 2d at 334 (rejecting allegation that defendants "'knowingly and with intent to deceive, failed to disclose'" information as "nothing more than a conclusory allegation").

Because plaintiffs have failed to allege with specificity misconduct on the part of any Individual Defendant, have failed to allege fraud with specificity, and have failed to allege scienter with particularity, plaintiffs' § 10(b) claim must be dismissed.

        **d.**     **Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter in Connection with the Alleged GAAP Violations**

Plaintiffs have also failed to plead facts giving rise to a strong inference of scienter in connection with the allegations that the Individual Defendants were engaged in fraud in

---

[Footnote continued from previous page]

    Defendants "knowingly used hindsight" to backdate options, *id*. ¶ 89, and is equally conclusory and inadequate. This allegation is insufficient for the additional reason that plaintiffs failed to state the basis of its "information and belief." *See* 15 U.S.C. § 78u-4(b)(1) ("if an allegation . . . is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."); *see also In re Fannie Mae*, 503 F. Supp. 2d at 36.

accounting for Sunrise's real estate joint ventures. Plaintiffs allege that certain misstatements were made about joint ventures in press releases, conference calls, and financial statements, etc., *see*, *e.g.*, Am. Compl. ¶¶ 144-193, but aside from repeating their conclusory mantra that the Individual Defendants "knew [the statements] were materially false and misleading," *see, e.g.*, *id.* ¶¶ 144, 152, 157, 168, 275 plaintiffs allege no underlying facts that if true would show (in those instances the statements can even be attributed to a particular Individual Defendant) that the Individual Defendants knew the statements were false at the time they were made. Moreover, plaintiffs' suggestions that the Individual Defendants had a "motive and opportunity" to commit fraud are plainly inadequate. Plaintiffs § 10(b) accounting fraud claim is precisely the kind of "fraud by hindsight" that Congress intended to prevent with the PSLRA, and it must be dismissed.

"[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter." *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) (internal quotations omitted); *see also In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) (same). Rather, to plead scienter, plaintiffs must allege facts showing that the *defendants knew that their statements were false at the time*; merely "showing in hindsight that the statements were false does not demonstrate fraudulent intent." *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 827 (8th Cir. 2003).

Plaintiffs' allegations do not meet this standard. For example, plaintiffs allege that Sunrise issued a Form 10-K on or about March 31, 1998, which contained financial statements that some Individual Defendants "knew were materially false and misleading and presented in violation of GAAP, due to improper accounting for real estate joint ventures and accounting for the backdated stock options . . . ." Am. Compl. ¶ 144. However, the Amended Complaint does

not set forth any "particular facts demonstrating how the defendants knew" of the alleged false

accounting scheme at the time of the statement. *Kushner*, 317 F.3d at 827.  Instead, the

Amended Complaint leaves the reader to infer that these Individual Defendants must have

known that the financial statements were false because it was they who allegedly "improperly

accounted for real estate joint ventures and . . . stock options grants. . . ."  Am. Compl. ¶ 144.  As

discussed above, these conclusory allegations do not satisfy Rule 9(b) or the PSLRA.  Moreover,

these pleadings reflect circular reasoning:  Plaintiffs support their allegation that Individual

Defendants engaged in fraud with allegations that they knowingly made misstatements; Plaintiffs

support their allegation that the Individual Defendants knowingly made misstatements with the

allegation that they engaged in fraud.  The same circular reasoning occurs throughout the

Amended Complaint.  *See id*. ¶¶ 144-193.  This pleading sleight of hand must be rejected, and

the accounting claim dismissed.  *See Winters*, 529 F. Supp. 2d at 251.

Nor can plaintiffs plead scienter by merely suggesting that the Individual Defendants had

a "motive and opportunity" to commit fraud.  *See Ezra Charitable Trust Inc. v. Tyco Int'l, LTD*,

466 F.3d 1, 10 (allegations of mere motive and opportunity, without more, are not sufficient to

satisfy the PSLRA's heightened pleading standards).  Plaintiffs allege that accounting fraud

enabled the Individual Defendants to "pocket large and unjustified cash bonuses and to

personally profit by insider trading to take advantage of the artificially inflated price of Sunrise's

common stock."  Am. Compl. ¶ 6; *see also id*. ¶ 241-242 (list of insider stock sales).  These

allegations cannot establish the scienter of any Individual Defendant, let alone all of them.  As an

initial matter, "[p]leading the simple fact that a defendant's compensation depends on corporate

value [i.e., stock price] or earnings does not, by itself, establish motive to fraudulently

misrepresent corporate value or earnings."  *Kushner* 317 F.3d at 830 (internal quotations

25

omitted).  Second, plaintiffs have failed to allege that there is anything suspicious or unusual

about the Individual Defendants' stock trades, in the sense that they were well beyond the normal

trading patterns of those defendants "in the amount of profit made, the amount of stock traded,

the portion of stockholding sold, or the number of insiders involved, [in a way that would] give

rise to the required inference of scienter."  *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 747

(8th Cir. 2002) (internal quotes omitted).  Indeed, it is nearly inconceivable that some directors

and officers would not sell some stock during the ten-year period encompassed by the Amended

Complaint.  *See, e.g., Guttman v. Huang*, 823 A.2d 492, 502 (Del. Ch. 2003) (noting that "[a]s a

matter of course, corporate insiders sell company stock").  Plaintiffs' allegations regarding

bonuses are similarly bare, and similarly insufficient.  Because plaintiffs have not alleged

"motive and opportunity," they have failed to plead scienter, and their claim must be dismissed.

Plaintiffs' § 10(b) claim is exactly the type of claim that Congress intended to prevent in

enacting the PSLRA.  Congress wished to prevent frivolous securities fraud litigation based on

"nothing more than a company's announcement of bad news, not evidence of fraud."  *In re

Smartalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 511-12 (S.D. Ohio 2000) (quoting

legislative history of PSLRA).  Plaintiffs' allegations of accounting fraud are "ripped from the

headlines"—in particular from Sunrise's own voluntary announcements of "bad news."

Plaintiffs apparently believe that adding the words "knowing" and "fraud" to the bad news in

Sunrise's press releases is enough to conjure scienter where none exists, but such a claim simply

cannot pass the muster of the PSLRA's heightened pleading requirements, and must be

dismissed.  *Tellabs*, 127 S. Ct. at 2509-11.

### 3.    Plaintiffs Fail to Plead a § 14(a) Claim (Count II)

Count II attempts to allege that the Individual Defendants "caused" the Company to issue

proxy statements between 1998 and 2002 that contained material misstatements and therefore

violated § 14(a) of the Exchange Act.  Am. Compl. ¶¶ 203, 323.  This claim, brought against all

of the Individual Defendants, must be dismissed for three reasons.  First, as discussed above the

Amended Complaint improperly adopts a "group pleading" approach that does not allege with

particularity the unlawful conduct by any particular one of the Individual Defendants.  Second,

the Amended Complaint does not allege facts to support a "strong inference" of negligence, as

required by case law interpreting the PSLRA.  Finally, plaintiffs fail to allege that the purported

proxy misstatements constituted an "essential link" in accomplishing a corporate transaction that

ultimately harmed the Company.

<strong>a.    Plaintiffs' § 14(a) Claim Fails Because They Do Not Adequately Allege That Any Individual Defendant Made False Statements</strong>

Plaintiffs again rely on "group pleading" to allege that the Individual Defendants

collectively "prepared and/or reviewed" misleading proxies and "caused" them to be sent to

shareholders in violation of § 14(a).  Am. Compl. ¶ 203.  As discussed above, this Court has held

that the group pleading is incompatible with the particularity requirements of the PSLRA.  *See In*

*re Fannie Mae*, 503 F. Supp. 2d at 40.  Accordingly, under the PSLRA, "any alleged false

statements must be set forth <u>with particularity as to each defendant</u>." *Id*. (emphasis added).

Plaintiffs' allegations do not meet this stringent standard.  Their proxy fraud allegations allege

merely that thirteen of the Individual Defendants collectively "prepared, approved and/or signed

Sunrise's annual and quarterly SEC reports during the relevant period," Am. Compl. ¶ 140, and

that they "knowingly and deliberately caused the Company to disseminate materially false and

misleading statements in [these] periodic filings," *id*.  Although plaintiffs identify several

statements that they believe to be misleading, they do not allege facts to suggest the role that any

particular defendant played in "prepar[ing], approv[ing] and/or [signing]" any of these

statements.  The Plaintiffs merely list a large group of Individual Defendants and make general

27

allegations such as the entire group made such statements, thus still failing to illuminate the role

each Individual Defendant allegedly played in "prepar[ing], approv[ing] and/or [signing] any of

these statements. *See, e.g.*, *id.* ¶ 145.  Indeed, plaintiffs do not even distinguish between the

different roles presumably played by the Officer Defendants, the Director Defendants, or any

other subset of the Individual Defendants such as Audit Committee members in the preparation

of the statements.  Because plaintiffs have not alleged adequate facts supporting a § 14(a) claim

against any specific defendants, the claim must be dismissed.  *In re Fannie Mae*, 503 F. Supp. 2d

at 40; *see also In re Premiere*, 2000 WL 33231639, at *8-11 (dismissing § 14(a) claims that were

not pled as to the specific defendant).

### b.    Plaintiffs' § 14(a) Claim Fails Because the Amended Complaint Does Not Plead Specific Facts Supporting a Strong Inference of Negligence

Consistent with the PSLRA, a "Section 14(a) plaintiff must plead with particularity facts

that give rise to a strong inference of negligence." *See In re McKesson HBOC, Inc. Sec. Litig.*

126 F. Supp. 2d 1248, 1267 (N.D. Cal 2000).  Plaintiffs fail to do so.  The Amended Complaint

alleges only that "[i]n the exercise of reasonable care, [twelve of the Individual Defendants]

should have known that the proxy statements were materially false and misleading," Am. Compl.

¶ 352, because they "were aware of and participated in" the dissemination of proxy statements

that omitted material facts and the alleged option backdating scheme "for *various years* since at

least 1997," *id.* ¶ 325 (emphasis added), but lacks any particularized allegations on a defendant-

by-defendant basis regarding each defendant's state of mind.  Such general allegations do not

satisfy the PSLRA's particularity requirements.  *See McKesson*, 126 F. Supp. 2d at 1267

(rejecting similarly formulated claim); *In re Gemstar-TV Guide, Int'l Inc., Sec. Litig.*, No. CV

02-02775 MRP (PLAx), 2003 U.S. Dist. LEXIS 25884 (C.D. Cal. Aug. 15, 2003) (dismissing §

14(a) claim that lacked specific factual allegations regarding defendants' state of mind); *see also*

*SEC v. Yuen*, 221 F.R.D. 631, 636-37 (C.D. Cal. 2004) (dismissing § 14(a) complaint based on general and conclusory allegations regarding defendants' role in a fraudulent scheme).  Because plaintiffs fail to allege any facts that give rise to an inference of negligence—let alone a "strong" one—plaintiffs' § 14(a) claim must be dismissed for this second, independent reason.

> **c.    The § 14(a) Claim Also Fails Because Plaintiffs Have Alleged No "Essential Link" Between the Proxy Solicitations and Any Corporate Transaction**

Finally, to plead a § 14(a) violation, plaintiffs must allege that the purported proxy misstatements constituted an "essential link" in accomplishing a corporate transaction that ultimately harmed the Company.  *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 385 (1970).  Because plaintiffs allege no such transaction here, the claim must be dismissed.

Plaintiffs claim in conclusory fashion the allegedly deficient proxy statements "were an essential link in the accomplishment of the continuation of the Defendants' unlawful stock option backdating scheme."  Am. Compl. ¶ 326.  The gist of the "essential link" argument apparently is that the proxy statements permitted the Company's stock option plans under which the defendants allegedly backdated stock option grants to be approved,  and thus the approval of these plans  somehow allowed the defendants to perpetuate their alleged scheme.  *See id.* ¶ 204.  This is illogical.  Plaintiffs do not claim that the stock option plans were themselves improper; indeed, their complaint is based on the alleged failure of the defendants to follow them.

A § 14(a) claim will lie "only when the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, and that transaction is the direct cause of the pecuniary injury for which recovery is sought."  *Gen. Elec. Co. v. Cathcart*, 980 F.2d at 927, 933 (3d Cir. 1992).  No corporate merger or other such corporate transaction is alleged in the Amended Complaint.  Additionally, Plaintiffs in no way demonstrate how shareholders voting on a perfectly proper stock option plan

in any way is a transaction that directly causes pecuniary injury. Because the plaintiffs have alleged only that the proxy statements led to the approval of the Company's stock option plan, and not to a specific corporate transaction, their § 14(a) claim must be dismissed.

### 4.    Plaintiffs Fail Adequately to Plead a § 20(a) Claim

In Count III, plaintiffs seek to claim that Klaassen, Teresa Klaassen, Newell, Aprahamian, Callen, Donohue, Holladay, Bradley (who is represented separately), Meadow, Klisares, Slager, Little, Faeder, Slavin, and Hulse are liable as "controlling persons" under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). As with plaintiffs' other attempts to plead a cause of action under the federal securities laws, the § 20(a) claim must be dismissed for multiple reasons.

#### a.    Plaintiffs' Failure to State a Claim Under § 10(b) or § 14(a) Is Fatal to Their § 20(a) Claim

First, plaintiffs' § 20(a) claim fails because their other Exchange Act claims fail. Section 20(a) is a "secondary liability" statute premised on the existence of an underlying federal securities violation. As set forth above, however, plaintiffs have failed to allege a primary violation of either § 10(b) or § 14(a), and any such claims would be time-barred in any event. Plaintiffs' secondary liability claim under § 20(a) must therefore also be dismissed. *See, e.g., Howard v. Everex Sys., Inc*., 228 F.3d 1057, 1065 (9th Cir. 2000).

#### b.    The § 20(a) Claim Must Be Dismissed Because Plaintiffs Do Not Adequately Allege That Faeder, Hulse, Slavin, or Any of the Director Defendants Is a Controlling Person

Plaintiffs' § 20(a) claim also fails for a second, independent reason. Even if plaintiffs had properly alleged a violation of § 10(b) or § 14(a), and even if such a claim survived the statute of limitations, the § 20(a) claim must be dismissed because plaintiffs have not adequately

alleged that Faeder, Hulse, Slavin, or any of the Director Defendants is a controlling person for purposes of § 20(a).

To allege that an individual is a controlling person, plaintiffs "must allege facts that indicate that the defendant[s] had possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1149 (D. Colo. 2005) (internal quotations omitted). Here, plaintiffs rely on a mere recitation of each of the Individuals Defendants' corporate titles, *see* Am. Compl. ¶¶ 19-28, 34, 35, 38, , and a boilerplate allegation that each is a controlling person "by virtue of their positions with Sunrise and their specific acts," *id.* ¶ 329. This is not enough to state a claim under § 20(a). First, "[a] person's status as an officer, director, or shareholder, absent more, is not enough to trigger liability under § 20." *In re Adelphia Commc'ns Corp. Securities & Derivative Litig.*, 398 F. Supp. 2d 244, 262 (S.D.N.Y. 2005) (internal quotation marks and citation omitted); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003) ("[t]he assertion that a person was a member of a corporation's board of directors, without any allegation that the person individually exerted control or influence over the day-to-day operations of the company, does not suffice to support an allegation that the person is a control person within the meaning of the Exchange Act"). Second, plaintiffs do not describe any of the "specific acts," Am. Compl. ¶ 329, that would establish that any of these Defendants specifically possessed the "power to direct or cause the direction of the management and policies" of the primary violator. *See In re Qwest Commc'ns*, 387 F. Supp. 2d at 1149. In the absence of such allegations, the § 20(a) claim must be dismissed.

      **c.**      **Plaintiffs' Failure to Plead "Culpable Participation" is Also Fatal to Their § 20(a) Claim**

Finally, plaintiffs' § 20(a) claim also fails because plaintiffs have not alleged that any of the Individual Defendants "culpably participated" in the alleged underlying fraud. This Court recently held that "plaintiffs must adequately plead 'culpable participation' on the part of the defendants in the [alleged] underlying primary securities violation" in order to allege a violation of § 20(a). *Fannie Mae*, 503 F. Supp. 2d at 44. The Court's analysis notes that the Supreme Court has characterized § 20(a) as a "state-of-mind provision" which requires proof of "something more than negligence." *Id.*, citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976). Because the PSLRA's heightened pleading requirements apply to "any private action arising under [the federal securities laws] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind," *id.* at 45 (citing, *inter alia*, 15 U.S.C. § 78u-4(b)(2)), those requirements apply to § 20(a) claims, and therefore plaintiffs alleging a § 20(a) violation must plead "'particularized facts' of a defendant's culpable participation." *Id.*

Plaintiffs have alleged no such "particularized facts" here. Instead, as discussed above in Section E.2, they provide nothing more than (1) inadequate "fraud by title" allegations, and (2) conclusory allegations that the defendants' conduct was "knowing and deliberate." Neither of these is sufficient to overcome the PSLRA's heightened pleading standard. Thus, plaintiffs' § 20(a) claim must be dismissed for yet this third reason.

**F.**      **Because Plaintiffs Fail to Allege a Federal Claim, the Court Must Dismiss the Entire Case for Lack of Subject Matter Jurisdiction**

Plaintiffs' attempts to plead § 10(b), § 14(a), and § 20(a) claims against the Individual Defendants are thus fatally flawed and must be dismissed. Given this, the Court lacks the federal question jurisdiction on which the case is premised, Am. Compl. ¶ 12, and thus lacks original

jurisdiction to hear the pendant state law claims.  On that basis, the Court accordingly should also dismiss the remainder of plaintiffs' Amended Complaint.  *See* 28 U.S.C. § 1367 (court has discretion to decline to exercise supplemental jurisdiction over pendant state-law claims); 16 James Wm. Moore, *Moore's Federal Practice* ¶ 106.66[1], pp. 106-86 to 106-89 (3d ed. 2007) (same); *Meng v. Schwartz*, 116 F. Supp. 2d 92, 97 (D.D.C. 2000) (declining to hear pendant state law claims after dismissal of federal RICO claim).

**G.      Even If the Court Were to Exercise Jurisdiction Over the Pendant State Law Causes of Action Asserted in Counts IV-XI of the Amended Complaint, Those Purported Causes of Action Must Be Dismissed for Failure to State a Claim**

**1.      Plaintiffs' State Law Fiduciary Duty Claims Based on Stock Option Backdating Are Time-Barred**

Counts IV through XI attempt to allege various Delaware causes of action against the Individual Defendants.  At the root of each of these claims is the allegation that the Individual Defendants engaged in a stock option backdating scheme from which they profited unjustly at the expense of the company.  *See, e.g.*, Am. Compl. ¶¶ 332, 338, 346, 349, 352, 355, 359, 364. To the extent that these claims are based on the alleged backdating scheme or on grants of allegedly ultra vires options, however, plaintiffs' state law claims must fail because the purportedly unlawful grants were issued well outside of the applicable limitations period, and hence plaintiffs' claims are time-barred.

**a.      The Allegedly Backdated Options Were Granted Well Outside the Limitations Period**

"[A] federal court must apply the statute of limitations that the court of the forum state would apply[]" to state law claims.  *Friedman v. Manfuso*, 620 F. Supp. 109, 114 (D.D.C. 1985); *see also Hoffa v. Fitzsimmons*, 673 F.2d 1345, 1361 n.41 (D.C. Cir. 1982).  The District of Columbia regards the question of whether an action is time-barred as procedural, and thus applies its own statutes of limitations.  *Id.*; *Friedman*, 620 F. Supp. at 114.

33

In the District of Columbia claims "for which a limitation is not otherwise specifically prescribed," including claims for breach of fiduciary duty, are governed by a three-year statute of limitations.  *See* D.C. Code § 12-301(8) (2007); *Alberts v. Tuft*, 353 B.R. 324, 351 (Bankr. D. C. 2006) (acknowledging that the District of Columbia applies a three-year statute of limitations to actions for breach of fiduciary duty); *Thompson, Cobb, Bazilio & Assocs., P. C. v. Grant Thornton LLP*, Civil No. 99-8(RMU/JMF), 2002 WL 458997 at *2 (D.D.C. Mar. 25, 2002) (same); *Primedical, Inc. v. Allied Inv. Corp.*, Civ. A. No. 90-1802(NHJ), 1994 WL 149139 at *2 (D.D.C. Mar. 31, 1994), *aff'd*, 50 F.3d 1096 (D.C. Cir. 1995).  The limitations period begins to run, and any claim accrues, when the alleged injury actually occurs.  *Gassmann v. Eli Lilly & Co.*, 407 F. Supp. 2d 203, 208 (D.D.C. 2005); *see also Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296, 298, 299 n.4 (D.C. 2001) ("Generally, the cause of action accrues . . . at the time of the occurrence of a judicially recognizable injury or event constituting a breach of duty.  The statute commences at that time even though the plaintiff is unaware of the accrual of his or her cause of action.") (internal quotations omitted) (quoting 2 Calvin C. Corman, *Limitation of Actions* § 11.1.1 (1991)); *see also Alberts*, 353 B.R. at 351 n.38 (Delaware law bars filings more than three years after an alleged breach of fiduciary duty and suggesting its similarity to the District of Columbia statute of limitations).[4]  The same limitations period applies to plaintiffs' equitable claims.  *See Doolin v. Envtl. Power Ltd.*, 360 A.2d 493, 495-97 (D.C. 1976).

The original complaint in this action was filed on January 19, 2007, and thus the statute of limitations bars any claims that accrued prior to January 19, 2004.  As described in more

---

[4]  Only when "the relationship between the fact of injury and the alleged tortious conduct [is] obscure," *Gassmann,* 407 F. Supp. 2d at 208, do District of Columbia courts apply the discovery rule under which the statute of limitations does not begin to run "until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing." *Mullin*, 785 A.2d at 299 (internal quotations omitted) (alteration in original).

detail above, all of the wrongful acts alleged by the plaintiffs took place long before this date and therefore are time-barred.  In particular, the Amended Complaint describes thirteen occasions on which stock option grants were allegedly backdated and two occasions on which stock options were allegedly granted ultra vires, all of which took place between May 2, 1997 and November 12, 2001 and which were publicly disclosed shortly thereafter.  *See generally* Am. Compl. ¶¶ 80-139.  Any liability for this conduct was thus extinguished by November 12, 2004, over two years before the complaint in this case was filed.  *See* D.C. Code § 12-301(8) (2007).  Therefore, plaintiffs' claims based on these instances of allegedly improper backdating are time-barred and must be dismissed.

### b.     There Are No Grounds for Tolling the Statute of Limitations

In cases with allegations involving fraud, the limitations period may be tolled if the plaintiffs did not know, nor reasonably could have known, the facts giving rise to the cause of action.  *See Filloramo v. Johnston, Lemon & Co.*, 700 F. Supp. 572, 578 (D.D.C. 1988); *see also King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186 (D.C. 1978).  Furthermore, "[w]here the basis of a cause of action is fraudulently concealed from a plaintiff[]" such that the plaintiff cannot know, or by the exercise of due diligence could not have discovered the wrong, the statute of limitations may be tolled.  *See Davis Inc. v. Young*, 412 A.2d 1187, 1191-92 (D.C. 1980); *Friedman*, 620 F. Supp. at 114.

The Amended Complaint itself belies any grounds for tolling the statute of limitations.  First, as discussed above, plaintiffs' allegations of improper backdating are premised on information— grant dates, grant prices, and stock market closing prices—that was publicly disclosed years ago.  The Company's securities filings put plaintiffs on inquiry notice of the terms of the option grants; thus, plaintiffs reasonably could have known the facts giving rise to the cause of action.  *See Friedman*, 620 F. Supp. at 114 ("The test of due diligence measures the

plaintiff's efforts to uncover his cause of action against what a reasonable person would have done in his situation given the same information.") (internal quotations omitted). Here, the only newly-discovered "fact" is plaintiffs' theory of recovery, embodied in plaintiffs' allegation that the previously-disclosed option grant dates are "indicative of a pattern of backdating." *See* Am. Compl. ¶ 71. This is insufficient to toll the statute of limitations. *See, e.g., Began v. Dixon*, 547 A.2d 620, 623-24 (Del. 1988) ("If all parties were allowed to toll the statute until they learned of the legal theory of a proposed action . . . there would be no purpose to the statute of limitations.").

<h3 style="text-align:center">c.    There Was No Fraudulent Concealment</h3>

Nor can plaintiffs allege fraudulent concealment. To do so, plaintiffs would have to plead that the Defendants engaged in some "affirmative act tending to conceal the cause of action or a misrepresentation" rising to the level of some "trick or connivance intended to exclude suspicion and to prevent discovery of the cause of action by the use of ordinary diligence." *Friedman*, 620 F. Supp. at 114 (internal quotations omitted). But the Amended Complaint simply lacks any non-conclusory allegations that any of the Individual Defendants was engaged in any "affirmative act " or "misrepresentation" rising to the level of a "trick or connivance intended to exclude suspicion and to prevent discovery of the cause of action." *Id*. Moreover, plaintiffs' descriptions of allegedly improper backdating is based solely on information that was publicly available, further undermining any attempt to allege a "trick or connivance." Because plaintiffs were on inquiry notice of the facts that underlie their claims, they cannot argue that the limitations period should be tolled, and plaintiffs' claims must be dismissed as time-barred.

### 2. Plaintiffs Do Not Adequately Plead a Breach of Fiduciary Duty Claim (Counts V & VI)

Count V of the Amended Complaint alleges that the Individual Defendants "breached their fiduciary duties [to Sunrise] by, among other things, engaging in a scheme to grant backdated stock options to themselves and/or certain other officers and directors of the Company and cover up their misconduct." Am. Compl. ¶ 338; *see also id*. ¶ 269(b) (alleging that the Individual Defendants "collude[ed] with each other to backdate stock option grants").[5] Count VI of the Amended Complaint alleges that the Individual Defendants "breached their fiduciary duties [to Sunrise] by, among other things, engaging in numerous accounting manipulations that portrayed an inaccurate account of Sunrise's financial position." *See id*. ¶ 344; *see also id.* ¶¶ 269(a) & (c) (alleging that the Individual Defendants "collude[ed] with each other to improperly account for Sunrise's real estate joint venture start-up losses and real estate sale gains" and that they "collude[ed] with each other to violate GAAP" and tax law for accounting for backdated options). Elsewhere, the Amended Complaint alleges that the Individual Defendants engaged in other behavior that breached their duties to Sunrise, including "colluding with each other to produce and disseminate . . . false financial statements . . . false proxy statements . . . and False Form 4's." *Id*. ¶ 269(d)-(e).

It is hornbook law that a director or officer's fiduciary duties include (1) the duty of care, and (2) the duty of loyalty. *See Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). Plaintiffs' claims here are built entirely upon allegations of breaches of the duty of loyalty; they assert not that any

---

5    Plaintiffs style Counts V and VI as a claim against all of the Individual Defendants for "breach of fiduciary duty and/or aiding and abetting." A claim for aiding and abetting a breach of fiduciary duty may only be asserted against non-fiduciaries. However, all of the Individual Defendants are (or were) officers and/or directors of Sunrise Senior Living, Inc., and therefore are (or were) fiduciaries. Plaintiffs claim for "aiding and abetting" therefore must be dismissed. *See In re Gen. Motors (Hughes) S'holder Litig.*, No. Civ. A. 20269, 2005 WL 1089021, at *21 (Del. Ch. May 4, 2005), *aff'd* 897 A.2d 162 (Del. 2006); *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

or all of the Individual Defendants acted carelessly, but rather as discussed above that all "colluded" intentionally. A violation of the duty of loyalty and good faith "requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care." *Id* at 369. This is similar to the scienter requirement under the Exchange Act, as amended by the PSLRA. *See Trenwick Am. Litig. Trust v. Ernst & Young LLP.*, 906 A.2d 168, 207-08 (Del. Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007). Accordingly, to state a claim for breach of the duty of loyalty plaintiffs must, as with the Exchange Act claims discussed above, plead *specific facts* that, if true, would establish such a breach. This plaintiffs fail to do, and accordingly plaintiffs' breach of fiduciary duty claims must likewise be dismissed.

### a.    Plaintiffs Do Not Make the Necessary Particularized Factual Allegations to Plead A Claim for Breach of the Duty of Loyalty Regarding the Backdating Claims

In the stock options backdating context a fiduciary duty claim sounds in fraud, and therefore it must be pled with particularity. *See In re Ditech Networks, Inc. Derivative Litig.*, 2007 WL 2070300, at *10 (N.D. Cal. June 16, 2007) (holding Rule 9(b) standard applied because options backdating claims sound in fraud); *Accord Lewis v. Ward*, No. Civ. A. 15255, 2003 WL 22461894, at *4 (Del. Ch. Oct. 29, 2003) (examining complaint "against the particularized pleading standard of Rule 9(b)"). Plaintiffs must plead the "who, what, when, where, and how " of each defendant's participation in the allegedly disloyal conduct. *Vess*, 317 F.3d at 1106 (9th Cir. 2003). Here, however, there are simply no particularized, non-conclusory allegations that any of the Director Defendants knew that the options violated the stock option plan, or that the defendants acted with a culpable state of mind.

As described above in Section E.2, plaintiffs have failed to allege stock option backdating with sufficient particularity to satisfy the requirements of Rule 9(b), and also have failed to plead scienter in connection with stock option backdating, in accord with the PSLRA. For the same

reasons, plaintiffs have failed to plead a breach of fiduciary duty with regard to stock option backdating. *Lewis*, 2003 WL 22461894, at *4 (examining fiduciary duty complaint "against the particularized pleading standard of Rule 9(b)"). This core portion of plaintiffs' fiduciary duty claim must therefore be dismissed.

### b. Plaintiffs' Also Fail to Allege Facts That Would Support A Breach of Fiduciary Duty Claim As to SEC Filings That Plaintiffs Assert Were Misleading As A Result of the Purported Backdating

Next, plaintiffs allege that the Individual Defendants breached their fiduciary duties to Sunrise by "colluding with each other to produce and disseminate . . . false financial statements" and to "file false proxy statements" and other securities disclosures. Am. Compl. ¶ 269(d),(e). In essence, plaintiffs allege the Individual Defendants sought to cover up their stock backdating scheme and improper joint venture accounting, and thus resorted to falsifying the Company's financial statements and securities filings. *See, e.g., id.* ¶ 56. As with the alleged backdating scheme and alleged improper accounting, however, the Amended Complaint is long on generalizations and short on the particularized allegations of *fact* that the law requires. Although plaintiffs identify many alleged misstatements—*see, e.g., id.* ¶¶ 45-55, 205-218—they fail to identify with any particularity the role that each of the Individual Defendants played, if any, in making the purportedly false statement. Rather, plaintiffs rely on the blanket allegation that the Klaassens, Aprahamian, Callen, Donohue, Newell, Gaul, and Rush "forced the Company to make material misrepresentations regarding the overall performance of the Company and specifically the performance of Sunrise's real estate joint ventures in relationship to the Company's overall performance." *Id.* ¶ 44. As discussed elsewhere in this brief, this kind of group pleading does not meet the particularity requirements of Rule 9(b).

Again, plaintiffs' group pleading problem is underscored by the fact that the Accounting Defendants served Sunrise at different times. For example, Slager stepped down from the Board

of Directors in 2001, *id*. ¶ 28, and Klisares stepped down in 2004, *id*. ¶ 26. Similarly, among officers, Smick left the Company in 1998, Swinton departed in 2002, Faeder and Slavin stepped down in 2004, and Hulse departed in 2005. *Id*. ¶¶ 34-38. Claims against these individuals for alleged breach of fiduciary duty after their respective departures must be dismissed. Conversely, Little joined the Board in 2004; claims against him stemming from conduct alleged to have occurred before 2004 must be dismissed. *See id*. ¶ 24.

Although plaintiffs allege scienter conclusorily, Am. Compl. ¶ 319, they fail to allege *facts* that give rise to the inference of scienter. They allege no facts to suggest that any Individual Defendant knew that the allegedly false statements were false when they were made, and that they were the product of fraud rather than an error in judgment or negligence. *See DSAM Global*, 288 F.3d at 391.[6] The mere publication of inaccurate accounting figures does not establish scienter. *See id*. Thus, plaintiffs have not alleged that the Individual Defendants acted disloyally toward Sunrise by causing the Company to issue false financial statements, proxy statements, or other securities filings.

### c.   Plaintiffs Likewise Fail to Allege Facts That Would Support Their Joint Venture Accounting Claim

As discussed above, plaintiffs also assert that the Individual Defendants breached their fiduciary duties to the Company by "colluding with each other to improperly account for Sunrise's real estate joint venture[s]." Am. Compl. ¶ 269(a); *see also id*. ¶ 142. This claim has its genesis in the disclosure by Sunrise in a May 10, 2006 conference call that it was conducting a review of its past joint venture accounting methods and was adopting a different methodology, and its subsequent follow-up disclosure that the Company was restating earnings based upon

---

[6]   Plaintiffs allege that Defendants Klaassen, Hulse, and Rush each signed false certifications pursuant to the Sarbanes-Oxley Act. *See* Am. Compl. ¶ 99. As a matter of law, this does not raise a strong inference of scienter. *In re Hypercom Corp. Sec. Litig*., 2006 WL 1836181 at *3.

issues identified in its review. *Id.* ¶¶ 221, 226. To this disclosure plaintiffs simply add the bald assertion that the accounting error disclosed by Sunrise was the result of the Individual Defendants' knowing "collusion." *Id.* ¶ 269(a).

Such a pleading approach is wholly insufficient to support a claim for breach of fiduciary duty, just as it is insufficient to support a claim under the Exchange Act. Plaintiffs plead no facts regarding the alleged "collu[sion]." They do not allege with particularity the role that was played by any Sunrise officer, Audit Committee member, or Board member, but merely make generalizations about all the Individual Defendants who made up each group, simply by virtue of the Defendants' membership in their respective groups. They do not specify who proposed the improper accounting, who carried it out, who was aware of it, and who allowed it to proceed. This falls far short of the "who, what, when, where, and how " of each defendant's participation in the allegedly disloyal conduct, and it cannot withstand a motion to dismiss. *Vess*, 317 F.3d at 1106.

In reality all plaintiffs allege is an error in the application of GAAP that was voluntarily disclosed and corrected by Sunrise. This does not make out a claim for breach of fiduciary duty. Rather, "allegations of GAAP violations must be augmented by facts that shed light on the mental state of defendants, rather than conclusory allegations . . . . " *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp 2d. 1069, 1091 (N.D. Cal. 2005) (internal quotations omitted); *see also In re Hypercom Corp. Sec. Litig.*, No. CV-05-0455-PHX-NVW, 2006 WL 1836181 (D. Ariz. July 5, 2006) (rejecting allegation that CFO necessarily understood accounting treatment for transaction because of the transaction's importance to the Company.) Therefore, plaintiffs state no claim of fiduciary duty based on the alleged improper accounting of real estate joint ventures.

### 3. Plaintiffs Do Not Adequately Plead a Claim for Insider Trading and Misappropriation of Information (Count XI)

In Count XI, plaintiffs allege that Defendants Adams, Aprahamian, Callen, Donohue, Faeder, Gaul, Holladay, Hulse, Klaassen, Teresa Klaassen, Klisares, Newell, Rush, Slavin, Smick, Swinton, and Tomasso sold their stock in the Company while in possession of material, non-public information.  This count must be dismissed because the plaintiffs fail to make allegations regarding the specific transactions they purport to be challenging, because they have not alleged scienter on the part of the purported insider sellers, and because Sunrise was not harmed by the alleged insider trading.

### a. Plaintiffs Fail to Plead a Claim for Insider Trading Because the Amended Complaint Lacks Allegations Related to Specific Transactions

To plead a claim for insider trading, plaintiffs must allege (1) what non-public information <u>each</u> defendant had at the time of <u>each</u> sale; (2) that the non-public information was material—that is, that it "significantly affected" the stock price—and (3) that defendants sold their shares because of the material, non-public information.  *See In re Oracle Corp. Derivative Litig.*, 867 A.2d 904, 934 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005). Plaintiffs have failed utterly to plead these elements.

With one exception [Callen], plaintiffs do not plead specific facts regarding individual sales allegedly undertaken by each plaintiff.  Instead, plaintiffs lump each defendant's stock sales together, specifying only the date range within which the sales allegedly took place.  *See* Am. Compl. ¶ 241.  The date ranges vary from several months to longer than eight years.  As a result, plaintiffs do not even try to allege what particular "insider" information was known to each of the Defendants at the time he or she sold his or her sales, let alone the materiality of the information or the degree to which each defendant undertook each sale because of the non-public

information he or she possessed.  Because plaintiffs failed to plead any of the necessary elements against any defendant, their insider trading claim must be dismissed.

### b.    The Insider Trading Claim Must Be Dismissed Because There Is No Harm to Sunrise

Because they purport to bring this case on behalf of nominal defendant Sunrise, plaintiffs must plead facts to show how the alleged insider trades harmed Sunrise.  They have failed to do so here because insider trading ordinarily causes no harm to the company whose stock is traded. Accordingly, courts have refused to recognize a derivative claim for insider trading.  *See, e.g., In re Cray Inc. Derivative Litig.*, 431 F. Supp. 2d 1114, 1132 (W.D. Wash. 2006) (considering Delaware law); *see also Freeman v. Decio*, 584 F.2d 186, 192-95 (7th Cir. 1978) (dismissing derivative claim for insider trading for failure to show damage to company); 3A William M. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 1174 (2006) ("[M]ost courts considering the issue have rejected a common law corporate cause of action against directors and officers for insider trading").  Because plaintiffs have failed to allege specific trades and have failed to allege damage to Sunrise, this claim must be dismissed.

### 4.    Plaintiffs' Unjust Enrichment Claims (Counts VII and IX) Fail Because Plaintiffs Do Not Adequately Plead an Underlying Breach of Fiduciary Duty

In Counts VII and IX, plaintiffs allege "unjust enrichment" purportedly arising under Delaware law against the Individual Defendants.  These counts allege that the Individual Defendants were unjustly enriched by their "receipt and retention" of backdated or ultra vires stock option grants warranting disgorgement or rescission.  *See* Am. Compl. ¶¶ 348-350, 354-357.  These claims must be dismissed because they are dependent upon the underlying fiduciary duty claim, which itself must be dismissed.

First, because plaintiffs fail to plead a breach of fiduciary duty claim, their equitable claims of unjust enrichment also must be dismissed.  The Delaware Supreme Court has held that

"an unjust enrichment claim is essentially another way of stating a traditional tort claim." *Sao Paulo of the Federative Republic of Braz. v. Am. Tobacco Co*., 919 A.2d 1116, 1124-25 (Del. 2007). Once the tort claim—here, the breach of fiduciary duty claim—is dismissed, analogous equitable claims must be dismissed as well. *See, e.g., Allegheny Gen. Hosp. v. Phillip Morris, Inc*., 228 F.3d 429, 446-47 (3d Cir. 2000) ("[There is] no justification for permitting plaintiffs to proceed on their unjust enrichment claim once [the traditional tort claims have been dismissed]"). Counts VII and IX therefore must be dismissed as to all of the Individual Defendants.

### 5. The Rescission Counts (Counts VIII and X) and The Accounting Count (Count IV) Must Be Dismissed Because These Are Remedies, Not Claims

In Counts VIII and X, plaintiffs seek to rescind "[a]ll contracts which provide for stock option grants to the recipients of backdated [or ultra vires] stock options." Am. Compl. ¶ 353; *see also id*. ¶ 360. However, rescission is properly understood as a form of equitable remedy, not a claim under the law. *See, e.g., In re Zoran Corp. Derivative Litig*., 511 F. Supp. 2d at 1019. For this reason alone, plaintiffs' rescission claims must be dismissed. In addition, plaintiffs base their rescission claim on 1) the Individual Defendants' alleged breach of fiduciary duty and 2) their receipt of backdated and/or ultra vires stock options. See Am. Compl. ¶¶ 352, 359. Because plaintiffs have failed to allege either fiduciary breach or unjust enrichment through receipt of backdated and/or ultra vires stock options, rescission is inappropriate.

Count IV purports to state a claim for accounting. Plaintiffs claim that the Individual Defendants' alleged backdating scheme damaged the Company and demand "an accounting be made of, " among other things, "all stock option grants made to any of the Defendants." Am. Compl. ¶ 335. This count must be dismissed because "an accounting is not so much a cause of action as it is a form of relief." *Rhodes v. Silkroad Equity, LLC*, C.A. No. 2133- VCN, 2007 WL

2058736 at *11 (Del. Ch. July 11, 2007).  As such, it is "inherently dependent" upon the underlying cause of action—here, the fiduciary duty claim.  *Id*.  Because plaintiffs have failed to state a claim for breach of fiduciary duty, as described above, an accounting is not warranted and this "claim" must be dismissed.

### IV.    CONCLUSION

For the foregoing reasons, plaintiff's Amended Complaint must be dismissed.

DATED:  June 16, 2008

Respectfully submitted,

/s/ John C. Millian
John C. Millian (DC Bar #413721)
Matthew R. Estabrook (DC Bar #477880)
Elise Kochtitzky Jacques (DC Bar #502460)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

*Attorneys for Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J. Donohue, David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L. Klaassen, Teresa M. Klaassen, Peter A. Klisares, William Little, Jr., Scott F. Meadow, Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton and Tiffany L. Tomasso*