# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| In Re SUNRISE SENIOR LIVING, INC. | ) | **Civil Action No. 07-00143** |
| Derivative Litigation | ) | |
| _____ | ) | |
| | ) | |
| This Document Relates To: | ) | |
| | ) | |
| | ) | |
| ALL ACTIONS | ) | |
| _____ | ) | |

## PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO THE INDIVIDUAL DEFEDANTS' MOTIONS TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT

DAVIS, COWELL & BOWE, LLP
George R. Murphy (DC Bar 75200)
Mark Hanna (DC Bar 471960)
Joni S. Jacobs (DC Bar 493846)
1701 K Street NW, Suite 210
Washington, DC 20006
Telephone:    (202) 223-2620
Facsimile:    (202) 223-8651

*Liaison Counsel for Plaintiffs*

DATED: July 24, 2008

*Additional Counsel Appear on Signature Page*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   PROCEDURAL HISTORY.................................................................................. 2

III.  STATEMENT OF THE FACTS ......................................................................... 3

IV.   ARGUMENT ........................................................................................................ 7

      A.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF
            LIMITATIONS ........................................................................................... 7

            1.    Plaintiffs' Federal Securities Law Claims Under Section 10(b)
                  And 20(a) Are Not Time- Barred ................................................... 7

            2.    Plaintiffs' Fiduciary Duty Claims Are Not Time Barred ............... 8

      B.    PLAINTIFFS HAVE PROPERLY ALLEGED STANDING ............................. 10

      C.    PERSONAL JURISDICTION EXISTS OVER DEFENDANTS
            RUSH AND THE INDIVIDUAL DEFENDANTS ............................................ 11

      D.    THE COMPLAINT PLEADS PARTICULARIZED FACTS
            ALLEGING VIOLATIONS OF FEDERAL SECURITIES LAWS .................... 16

            1.    Defendants Must Meet a High Standard to Prevail on
                  Their Motion to Dismiss ................................................................ 16

            2.    Plaintiffs Adequately Plead a Claim for Violation of
                  Section 10(b) and Rule 10b-5 ........................................................ 18

                  a.    Plaintiffs Have Pled Facts Giving Rise to a Strong
                        Inference of Scienter ........................................................ 21

                  b.    The Company's GAAP Violations Support a Strong
                        Inference of Scienter ........................................................ 26

                  c.    The Insider Selling Defendants' Insider Trading
                        Supports a Strong Inference of Scienter ......................... 27

                  d.    Plaintiffs Allege Reliance with the Requisite Specificity ............. 29

            3.    The Complaint Adequately Pleads a Claim Under §20(a) ........................ 30

      E.    Plaintiffs Adequately Plead Breach of Fiduciary Duty Claims ........................... 32

            1.    Stock Option Backdating ........................................................ 32

2.  Plaintiffs Allege Facts that Support a Breach of Fiduciary Duty Claim as to Misleading SEC Filings as a Result of Backdating ................................................................34

3.  Plaintiffs Adequately Plead a Breach of Fiduciary Duty Claim for the Individual Defendants' Improper Joint Venture Accounting ..........................................................36

F.  Plaintiffs Adequately Plead a Claim for Insider Trading and Misappropriation of Information ........................................... 37

G.  Plaintiffs State a Claim for Unjust Enrichment .................................... 39

H.  Plaintiffs Plead Proper Claims Equitable Claims for Rescission and Accounting ............................................................. 41

1.  Plaintiffs' Claims for Rescission Should Be Sustained ............................41

2.  Plaintiffs Are Entitled to an Accounting....................................................42

V.  CONCLUSION..........................................................................................  43

# TABLE OF AUTHORITIES

Page(s)

CASES

*ABF Capital Mgmt., et al. v. Askin Capital Mgmt., L.P.,*
    957 F. Supp. 1308 (S.D.N.Y. 1997)......................................................................17

*Aldridge v. A.T. Cross Corp.,*
    284 F.3d 72 (1st Cir. 2002).........................................................................26, 27

*Arnold v. Society for Savings Bancorp,*
    678 A.2d 533, 539 (Del. 1996)..................................................................32

*Arthur Children's Trust v. Keim,*
    994 F.2d 1390 (9th Cir. 1993)..................................................................31

*BelCom, Inc. v. Robb,*
    No. Civ. A. 14663, 1998 WL 229527 (Del. Ch. Apr. 28, 1998).....................32

*Belova v. Sharp,*
    No. CV 07-299-MO, 2008 U.S. Dist. LEXIS 19880 (D. Or. Mar. 13, 2008)............... passim

*Brophy v. Cities Serv. Co.,*
    70 A.2d 5 (Del. Ch. 1949)........................................................................38

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985).................................................................................13

*Concha v. London,*
    62 F.3d 1493 (9th Cir. 1995).....................................................................17

*Conrad v. Blank,*
    940 A.2d 28 (Del. Ch. 2007)................................................................22, 25

*Cooke v. Oolie,*
    C.A. No. 11134, 2000 Del. Ch. LEXIS 89 (Del. Ch. May 24, 2000).....................39

*Davidge v. White,*
    377 F. Supp. 1084 (S.D.N.Y. l974)...........................................................38

*Degulis v. LXR Biotechnology, Inc.,*
    928 F. Supp. 1301 (S.D.N.Y. 1996)..........................................................17

*Derensis v. Coopers & Lybrand Chtd. Accountants,*
    930 F. Supp. 1003 (D.N.J. 1996)..........................................................14, 15

*Dooley v. United Technologies Corp.,*
    786 F. Supp. 65 (D.D.C. 1992)..................................................................11

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976)........................................................................................22

*Galdi v. Jones*,
   141 F.2d 984 (2d Cir. 1944)..........................................................................10

*Ghandour v. John H. Sheperd & Assocs.*,
   No. 88-0809, 1988 WL 90113 (D.D.C. Aug. 5, 1988) ..........................17

*Gorman v. Ameritrade Holding Corp.*,
   293 F.3d 506 (D.C. Cir. 2002) .....................................................................13

*Grabert v. New Palace Casino, L.L.C.*,
   C.A. No. 03-382, 2003 U.S. Dist. LEXIS 15412 (E.D. La. 2003) .........15

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003)......................................................................28

*Harris v. Ladner*,
   127 F.3d 1121 (D.C. Cir. 1997)....................................................................16

*Hollinger v. Titan Capital Corp.*,
   914 F.2d 1564 (9th Cir. 1990) .....................................................................30

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) .....................................................................31

*In re 3Com Sec. Litig.*,
   761 F. Supp. 1411 (N.D., Cal. 1990) ..........................................................30

*In re Atmel Derivative Litig.*,
   No. 06-4592, slip op. (N.D. Cal. June 25, 2008) ..............................23, 25

*In re Baan Co. Secs. Litig.*,
   245 F. Supp. 2d 117 (D.D.C. 2003) ("Baan I") .................................14, 15

*In re Baan Co. Securities Litigation*,
   103 F.Supp.2d 1 (D.D.C. 2000) ("*Baan II*").............................16, 18, 26

*In re Bank of New York Derivative Litig.*,
   173 F. Supp. 2d 193 (S.D.N.Y. Nov. 2001).................................................10

*In re Brooks Automation, Inc. Sec. Litig.*,
   No. 06-11068-RWZ, 2007 WL 4754051 (D. Mass. Nov. 6, 2007) ..........18, 23, 25

*In re Cendant Corp. Litig.*,
   60 F. Supp. 2d 354 (D.N.J. 1999) ...............................................................19

*In re Convergent Techs. Sec. Litig.*,
108 F.R.D. 328 (N.D. Cal. 1985) ..........................................................................31

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ........................................................................26, 27

*In re Dynex Capital Sec. Litig.*,
No. 05 Civ. 1897 (HB), 2006 U.S. Dist. LEXIS 4988 (S.D.N.Y. Feb. 10, 2006) ....................8

*In re Fed. Nat'l Mortgage Ass'n Sec., Derivative, and "ERISA" Litig.*
("*In re Fannie Mae*"),
503 F. Supp. 2d 25 (D.D.C. 2007) ........................................................16, 18, 30

*In re McKesson HBOC, Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................................19

*In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Ret. Accounts) II,*
*L.P. Sec. Litig.*,
848 F. Supp. 527 (D. Del. 1994) ..........................................................................19

*In re Openwave Sys. Sec. Litig.*,
528 F. Supp. 2d 236 (S.D.N.Y. 2007) ..............................................................18, 22

*In re Openwave Sys. Secs. Litig.*,
528 F. Supp. at 248-52 ..................................................................................25

*In re Oxford Health Plans, Inc.*,
192 F.R.D. at 111, 117 (S.D.N.Y. 2000) ................................................................33

*In re Prison Realty Sec. Litig.*,
117 F. Supp. 2d 681 (M.D. Tenn. 2000)................................................................17

*In re Seitel, Inc. Sec. Litig.*,
447 F. Supp. 2d 693 (S.D. Tex. 2006) ...................................................................26

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) .........................................................................27, 29

*In re THQ, Inc. Deriv. Litig.*,
No. BC357699, 2007 WL 4990689, slip op. (Cal. Super. Ct. Oct. 11, 2007) ........................34

*In re Tyson Foods, Inc.*,
919 A.2d 563 (Del. Ch. 2007)............................................................................33

*In re Veritas Software Corp. Sec. Litig.*,
No. 04-831-SLR, 2006 WL 1431209 (D. Del. 2006) .............................................................19

*In re Zoran Corp. Derivative Litig.*,
   511 F. Supp. 2d (N.D. Cal. 2007) .................................................................. passim

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
   741 A.2d 377 (Del. Ch. 1999)....................................................................32, 36, 40

*Jacobsen v. Oliver*,
   201 F. Supp. 2d 93 (D.D.C. 2002) ..................................................................11, 13

*Johnson v. Long Beach Mortg. Loan Trust 2001-4*,
   451 F. Supp. 2d 16 (D.D.C. 2006) ........................................................................12

*King v. Kitchen Magic, Inc.*,
   391 A.2d 1184 (D.C. 1978) ....................................................................................8

*Landry v. Price Waterhouse Chartered Accountants*,
   715 F. Supp. 98 (S.D.N.Y. 1989) .........................................................................14

*Levine v. Metal Recovery Techs., Inc.*,
   182 F.R.D. 108 (D. Del. 1998) .............................................................................16

*Maher v. Durango Metals, Inc.*,
   144 F.3d 1302 (10th Cir. 1998) ............................................................................30

*Malone v. Brincat*,
   722 A.2d 5 (Del. 1998) ...........................................................................32, 35, 36

*Malone v. Microdyne Corp.*,
   26 F.3d 471 (4th Cir. 1994) ............................................................................26, 35

*McNamara v. Bre-X Minerals, Ltd.*,
   46 F. Supp. 2d 628 (E.D. Tex. 1999)....................................................................14

*McSparran v. Larson*,
   No. 04 C 0041, 2006 U.S. Dist. LEXIS 3787 (N.D. Ill. 2006)................................33

*Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies, Inc.*,
   854 A.2d 121 (Del Ch. 2004)................................................................................35

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding
   Corp.*,
   320 F.3d 920 (9th Cir. 2003) ...........................................................................30, 31

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..................................................................................17

*O'Reilly v. Transworld Healthcare, Inc.*,
   745 A.2d 902 (Del. Ch. 1999)..........................................................................36, 37

*Oberly v. Kirby*,
    592 A.2d 445 (Del. 1991) ...................................................................................36

*Republic Property Trust v. Republic Properties Corp.*,
    540 F.Supp.2d (D.D.C 2008) ...........................................................................31

*Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.*,
    42 F. Supp. 2d 423 (D. Del. 1999)......................................................................19

*Robinson v. Nussbaum*,
    11 F. Supp. 2d 8 (D.D.C. 1997) .........................................................................17

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) .............................................................................16

*Ryan v. Gifford*,
    918 A.2d 341 (Del. Ch. 2007)..................................................................... passim

*San Mateo County Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*,
    979 F.2d 1356 (9th Cir. Cal. 1992)....................................................................14

*Sanders v. Wang*,
    No. 16640, 1999 WL 1044880 (Del Ch. Nov. 8, 1999) .....................................41

*Schock v. Nash*,
    732 A.2d 217 (Del. 1999) ..................................................................................40

*Sea Star Line LLC. v. Emerald Equipment Leasing, Inc.*,
    C.A. No. 05-245-JF, 2006 U.S. Dist. LEXIS 2797 (D. Del. 2006) ..................41, 42

*Second Amendment Found. v. United States Conf. of Mayors*,
    274 F.3d 521 (D.C. Cir. 2001) ...........................................................................15

*Strougo v. Carroll*,
    C.A. No. 8040, 1991 Del. Ch. LEXIS 11 (Del. Ch. Jan. 29, 1991).........................39

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007)................................................................................23, 24

*United States v. City of Redwood City*,
    640 F.2d 963 (9th Cir. 1981) .............................................................................16

*Water & Sand Int'l Capital v. Capacitive Deionization Tech. Sys.*
    No. 08-88 (RCL), 2008 U.S. Dist. LEXIS 51949 (D.D.C. July 7, 2008).......................11, 12

*Weiss v. Swanson*,
    948 A.2d 433 (Del. Ch. 2008).............................................................................9

*Zatkin v. Primuth*,
    551 F. Supp. 39 (S.D. Cal. 1982)...........................................................................17

*Zimmerman v. Braddock*,
    No. CIV.A. 18473-NC, 2005 WL 2266566 (Del. Ch. 2005), *overruled on other*
    *grounds*, 906 A.2d 776 (Del. 2006) ....................................................................38

## STATUTES

15 U.S.C. 78u-4(b)(2) ........................................................................................22

15 U.S.C. §78t(a) ...............................................................................................30

15 U.S.C. §78u-4(b)(1) ......................................................................................16

D.C. Code § 13-423(a) (2008) ...........................................................................12

Fed. R. Civ. P. 9(b) ............................................................................16, 17, 19, 23

## OTHER AUTHORITIES

Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*
    §1828, at 62 (2d ed. 1986) ...............................................................................10

## I.    **INTRODUCTION**

Plaintiffs submit this Memorandum in opposition to the motions by the Individual Defendants,[1] David G. Bradley and Bradley B. Rush (collectively, the "Individual Defendants") to dismiss the Amended Consolidated Complaint for want of personal jurisdiction and for failure to state actionable and timely claims.  In the Amended Consolidated Complaint, a shareholders' derivative complaint filed on behalf of nominal defendant Sunrise Senior Living, Inc. ("Sunrise" or the "Company"), Plaintiffs seek to recover damages from the Individual Defendants for their deceit, fraud and rampant breaches of fiduciary duties of loyalty, good faith and candor owed to the Company.  The Individual Defendants' liability arises from a decade's long scheme to manipulate Sunrise's financial statements and enrich themselves at the Company's expense.  The Individual Defendants improperly manipulated the Company's accounting of its stock option grants and otherwise improperly accounted for some of the Company's real-estate ventures such that certain expenses disappeared and reported profits were materially misstated.  With Sunrise's stock price consequently propped up, the Individual Defendants then capitalized by selling stock at inflated stock prices and by exercising backdated stock options, realizing millions of dollars in illicit personal profits.  The Company has been left holding the proverbial bag, having downwardly restated its historical net income by more than $116 million.

The Court should deny the Individual Defendants' motions.  They have subjected themselves to this Court's personal jurisdiction through their repeated activities in the District of Columbia, and any inconvenience to them is minimal in any event.  Moreover, their improper

---

[1] Plaintiffs define the Individual Defendants as: Paul J. Klaassen ("P. Klaassen"), Teresa M. Klaassen ("T. Klaassen"), Ronald V. Aprahamian ("Aprahamian"), Craig R. Callen ("Callen"), Thomas J. Donohue ("Donohue"), J. Douglas Holladay ("Holladay"), William G. Little ("Little"), David G. Bradley ("Bradley"), Peter A. Klisares ("Klisares"), Scott F. Meadow ("Meadow"), Robert R. Slager ("Slager"), Thomas B. Newell ("Newell"), Tiffany L. Tomasso ("Tomasso"), John F. Gaul ("Gaul"), Bradley B. Rush ("Rush"), Carl Adams ("Adams"), David W. Faeder ("Faeder"), Larry E. Hulse ("Hulse"), Timothy S. Smick ("Smick"), Brian C. Swinton ("Swinton") and Christian B. A. Slavin ("Slavin").

accounting manipulations and their repeated false statements concerning the Company's accounting methods and the Company's periodic financial results continued until at least March 2006, well within the limitations period for Plaintiffs' claims under the Securities Exchange Act of 1934. Plaintiffs' state-law claims, too, are timely. Clear precedent, furthermore, establishes that Plaintiffs' claims are legally sufficient and actionable. In short, there is no basis for dismissal. The Individual Defendants should be directed to answer the Amended Consolidated Complaint forthwith.

## II.   PROCEDURAL HISTORY

This Action was commenced on January 19, 2007, with the filing of the first of three federal shareholders' derivative complaints on behalf of Sunrise against the Company's current and former officers and directors, alleging violations of state and federal law relating to a myriad of accounting violations.[2] Plaintiffs Catherine Molner ("Molner") and Robert Anderson ("Anderson") filed complaints raising substantially similar factual and legal claims on January 31, 2007 and February 5, 2007, respectively. The Court consolidated these cases under the above caption on May 9, 2007. On June 29, 2007, Plaintiffs filed a Consolidated Complaint.

On August 27, 2007, Defendants moved to dismiss the Consolidated Complaint. On October 26, 2007, Plaintiffs filed an Amended Consolidated Complaint incorporating allegations based on information previously unavailable to Plaintiffs, which was accepted for filing by this

---

[2] As Sunrise notes, there are a number of other dismissed or pending shareholder derivative actions brought on behalf of Sunrise against certain of the Individual Defendants. On August 11, 2006 a derivative action styled *Von Guggenberg v. Klaasen, et al.,* Case No. CI-2006-10174, (the "*Von Guggenberg* action") was filed in the Virginia Circuit Court for Fairfax County (the "State Court") naming P. Klaassen, Faeder, Smick, Newell, Swinton, Slavin, Hulse, Tomasso, Aprahamian, Callen and Donahue as defendants (the "State Defendants"). On September 15, 2006, the *Von Guggenberg* action was dismissed without prejudice and with no explanation of the basis for the State Court sustaining the State Defendants' demurrer. *See* Sunrises' Memo., Exhibit 4 at 1. Additionally, on March 6, 2007, a derivative action styled *Young, et al. v. Klaassen, et al.*, C.A. No. 2770-N (the "Delaware Action") was filed in the Delaware Chancery Court, which was "virtually identical" to the Action. *See* Sunrise's Memo. at 8; Plaintiffs' Omnibus Reply Memorandum in Further Support of Their Motion to Partially Lift Discovery Stay [Docket No. 66] at 5 n.2. All parties to the Delaware Action have fully briefed motions to dismiss the Delaware Action, which are currently pending before the Delaware Chancery Court.

Court's Order dated March 28, 2008. Then on May 16, 2008, Plaintiffs filed a Motion to Partially Lift Discovery Stay, which has been fully briefed by both Plaintiffs and Defendants and is currently pending before the Court.[3] On June 16, 2008, Defendants filed four separate motions to dismiss encompassing more than 135 pages, to which Plaintiffs now respond

## III.    <u>STATEMENT OF THE FACTS</u>

From 1997 through 2006 (the "Relevant Period") the Individual Defendants engaged in a concerted scheme to improperly inflate the Company's financial results, thereby artificially inflating the Company's stock price, which allowed certain of the Individual Defendants to reap over $174 million in illicit proceeds from their illegal inside sales of Sunrise stock. Amended Consolidated Complaint at ¶2, 241-42 (hereinafter, ¶__ or ¶¶__). As a result of the Individual Defendants' accounting manipulations, Sunrise has been subjected to massive damages and was forced to restate its historical financial results for fiscal years 2002 through 2005, reducing the Company's gross income before taxes by over $180 million, or in terms of the Company's net income, a reduction of over $116 million. *See* Excerpts of Sunrise's March 24, 2008 Form 10-K, attached hereto as Exhibit 1.

From 1997 through 2001, the Stock Option Committee of the Board (the "Stock Option Committee")[4] granted millions of backdated and otherwise *ultra vires* stock options to themselves and Company insiders in direct violation of the Company's shareholder-approved stock option plans. ¶¶7, 73-74, 77-131. The pattern of backdating Sunrise's stock options is undeniable. From 1997 through 2001, the Stock Option Committee backdated 13 of 21 total grants – 62% – often to dates on which Sunrise's stock closed at prices at or near monthly,

---

[3] Plaintiffs respectfully request that this Court rule on Plaintiffs' Motion to Partially Lift Discovery Stay prior to rendering a decision on any of the Defendants' motions to dismiss.
[4] The Amended Consolidated Complaint reflects the membership of Sunrise's Board as of the commencement of the original complaint in this Action.

quarterly and yearly lows.[5]   ¶¶7, 69, 130-132.[6]   To confirm the common-sense conclusion that

this pattern was the result of intentional backdating, Plaintiffs conducted two separate statistical

analyses option granting patterns at the Company, one following the methodology of a Merrill

Lynch analysis endorsed by numerous courts in this context and one based on a statistical

analysis performed by Service Employees International Union Master Trust ("SEIU"), a large

institutional shareholder of Sunrise.   ¶¶70-72.   Both analyses show that recipients of Sunrise

stock options received returns substantially exceeding those enjoyed by ordinary investors.   As

these analyses show, such extremely favorable returns on common shares underlying Sunrise's

stock options strongly indicate that the exercise prices of Sunrise's stock options were

established with 20/20 hindsight to achieve favorable exercise prices for option recipients.

These in-the-money grants of stock options required the Company to recognize a

compensation expense; however, by backdating the stock options so that they were apparently

granted on favorable dates, the Individual Defendants knowingly understated the Company's

compensation expense and thereby overstated the Company's net income. ¶7, 243-253.  In 2002,

with the passage of the Sarbanes-Oxley Act ("SOX"), the Individual Defendants were required to

report all stock options grants within two days of the grant date by filing Forms 4 with the SEC,

effectively ending the Individual Defendants' ability to backdate stock options by more than two

days.

While the Individual Defendants could no longer grant or receive backdated stock options

after SOX's enactment, the Individual Defendants had devised another way to inflate the

Company's reported income and keep Sunrise's stock price at inflated levels, which would allow

---

[5] In the Amended Consolidated Complaint, Plaintiffs allege a backdating pattern of 13 of 16 discretionary stock option grants because five of the 21 total grants made during the relevant period did not give the Stock Option Committee the discretion to choose the grant date and therefore could not have been backdated.  ¶132.
[6] During this period, the Stock Option Committee also made two grants that violated the Company's stock option plans, and as such were *ultra vires*.

them to realize benefits from backdated or otherwise *ultra vires* stock options at the Company's expense. Starting at least as early as 2002, but likely as far back as 1999, the entire Board, comprised at certain times of current director defendants P. Klaassen, T. Klaasen, Aprahamian, Donohue, Callen, Holladay and Little as well as former defendant directors Bradley, Klisares, Meadow, Slager and Faeder, along with certain of the other Individual Defendants, knowingly caused or allowed Sunrise to improperly account for a myriad of real-estate related transactions, a core part of Sunrise's business. ¶¶5-6, 56-57. Certain of these improper accounting mechanisms employed by the Individual Defendants included: (i) improper application of the Hypothetical Liquidation at Book Value methodology in accounting for joint ventures with equity partners; (ii) the use of excess insurance reserves to cover earnings shortfalls; (iii) improper accounting treatment of gains on the sale of real estate assets which were subject to guarantees and commitments; and (iv) improper accounting treatment for losses relating to construction projects under development. ¶¶3, 10. As a result, the Company's periodic financial reports approved by current defendant directors P. Klaassen, T. Klaasen, Aprahamian, Donohue, Callen, Holladay and Little, former director defendants Bradley, Klisares, Meadow and Slager, and former Chief Financial Officers Rush, Hulse and Faeder, were completely fraudulent as demonstrated by the vast disparity in net income for each year of Company's restated financial results for 2002 through 2004.[7] ¶¶144-202.

To ensure that Sunrise's stock price would stay inflated, certain of the Individual Defendants, additionally, made false and materially misleading public statements regarding the Company's "successful" real estate operations. These Individual Defendants made those false

---

[7] In 2002, the Company originally reported its net income as $54.661 million, which was restated to $28.314 million. In 2003, the Company originally reported its net income as $47.473 million, which was restated to $14.705 million. In 2004, the Company originally reported its net income as $49.573 million, which was restated to $1.114 million, nearly eliminating Sunrise's reported income for that year. *See* Excerpts of Sunrise's March 24, 2008 Form 10-K, attached hereto as Exhibit 1.

and misleading statements despite knowing that the Company, at the behest of these same Individual Defendants, was improperly accounting for income from the Company's real estate ventures. ¶¶44-57. Moreover, in an effort to further inflate the Company's stock price, and enable the Individual Defendants to reap even greater profits from their exercise of backdated or otherwise *ultra vires* stock options, the Board authorized the repurchase of more than $202.1 million worth of Sunrise common stock between 2000 and 2005. ¶312.

On December 11, 2006, the Company formed a Special Committee of the Board (the "Special Committee") with the stated purpose of investigating both (i) recent sales of the Company's common stock by Company insiders and (ii) the Company's historical stock option granting practices. ¶229. On March 2, 2007, the Company announced that the Special Committee's mandate had been expanded to investigate accounting issues leading to Sunrise's restatement. ¶232. Finally, on September 28, 2007, the Company reported that the Special Committee had completed its "fact-finding." Among the disclosed purported findings regarding the Company's historical stock option grants, the Special Committee indicated that there were:

- Three grants in which the exercise price for the options was set at the closing price for the Company's stock on the date of the grant, rather than at the closing price of the trading date immediately prior to the date of the grant, as contemplated by the terms of the Company's stock option plans.

- Certain grants which lacked sufficient documentation to determine when the stock option grant was authorized.

- Certain grants in connection with which the Company corrected administrative errors retroactively, which included adding grants to new hires who had been inadvertently omitted from a recommendation list and correcting the number of options granted to individuals.

- Certain grants in which the Company modified the terms of a grant after it was made.

¶237.  Despite these reported findings, the Company disclosed that the Special Committee concluded that there was no evidence of intentional misconduct.  *Id.*

The Individual Defendants' continuous and systematic scheme to benefit themselves at the Company's expense has caused the Company to suffer millions of dollars in damages, while the Individual Defendants have realized millions of dollars in illicit profits.  ¶11.[8]

## IV.  ARGUMENT

### A.  PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

#### 1.  Plaintiffs' Federal Securities Law Claims Under Section 10(b) And 20(a) Are Not Time- Barred

The Individual Defendants acknowledge that a two-year statute of limitations and a five-year statute of repose applies to Plaintiffs' claims under Section 10(b) of the Securities Exchange Act of 1934, 28 U.S.C. § 1658(b), and that a timely 10(b) claim results in a timely claim under Section 20(a) of the Exchange Act.  In seeking dismissal of Plaintiffs' Section 10(b) claims as untimely, the Individual Defendants incorrectly look only to Plaintiffs' allegations of improper backdating of stock options and improper granting of *ultra vires* stock options.  The Individual Defendants speciously ignore that they more recently issued false statements regarding their accounting manipulations of Sunrise's real-estate ventures in furtherance of their improper scheme.  Indeed, Plaintiffs specifically allege that the Individual Defendants' accounting manipulations regarding Sunrise's real-estate operations resulted in materially false statements in Sunrise's annual reports on Forms 10-K for the years 1999-2005.  ¶¶ 157-202.  The most recent of those Forms 10-K was filed with the SEC on March 16, 2006.  ¶198.

---

[8] For a detailed procedural history, please refer to Plaintiffs' Memorandum of Law in Opposition to Nominal Defendant Sunrise Senior Living Inc.'s Motion to Dismiss or, in the Alternative, Stay Plaintiffs' Amended Consolidated Complaint, submitted contemporaneously herewith, at pages 2-3.

Since this Action commenced on January 19, 2007, Plaintiffs' Section 10(b) and 20(a) claims are well within both the two-year limitations period and the five-year repose period. *See In re Dynex Capital Sec. Litig.*, No. 05 Civ. 1897 (HB), 2006 U.S. Dist. LEXIS 4988, at *13 (S.D.N.Y. Feb. 10, 2006) ("[i]n a case like this one, in which a series of fraudulent misrepresentations is alleged, the period of repose [or limitations] begins when the last alleged misrepresentation was made"). Accordingly, Plaintiffs' Section 10(b) and Section 20(a) claims are timely.

### 2.    Plaintiffs' Fiduciary Duty Claims Are Not Time Barred

As Defendants concede, the three year limitations period for fiduciary duty claims "may be tolled if the plaintiffs did not know, nor reasonably could have known, the facts giving rise to the cause of action." Ind. Defs.' Mem. at 35, citing *Filloramo v. Johnston, Lemon & Co.,* 700 F. Supp. 572, 578 (D.D.C. 1988) and *King v. Kitchen Magic, Inc.,* 391 A.2d 1184, 1186 (D.C. 1978). Here, the "facts were 'so hidden that a reasonable person could not have made timely discovery of an injury necessary to file a complaint.'" *Ryan v. Gifford*, 918 A.2d 341, 359 (Del. Ch. 2007). In *Ryan*, the Delaware Court of Chancery stated unequivocally that the misdating of stock option grants and misrepresentations that the grants complied with the Company's stock option plans was an affirmative act of concealment to prevent the shareholders from learning of the fraud. 918 A.2d at 360. "Inaccurate public representations as to whether directors are in compliance with shareholder-approved stock option plans constitute fraudulent concealment of wrongdoing sufficient to toll the statute of limitations." *Id.* That is exactly what Plaintiffs allege occurred at Sunrise from 1997 into 2006: Defendants actively concealed the backdating scheme, until at least August 11, 2006, when the first derivative action was filed concerning Sunrise's historical stock option granting practices. Plaintiffs could not reasonably have discovered Defendants' breaches of fiduciary duties before that date. ¶¶ 229-239. Indeed, from 2003-2006,

Defendants filed numerous documents with the SEC that falsely reported the dates of stock option grants, with the purpose and effect of concealing the improper backdating scheme. ¶218(a)-(ppp).

Defendants argue that Plaintiffs' allegations of improper backdating are premised on information including "grant dates, grant prices, and stock market closing prices that were publicly disclosed years ago." Ind. Defs.' Mem. at 35. As a result, defendants contend that Plaintiffs were on inquiry notice of the terms of the options grants and the resulting cause of action. *Id.* This exact argument was squarely rejected in *Weiss v. Swanson*, 948 A.2d 433, 445 (Del. Ch. 2008). In *Swanson,* the court found that the doctrine of equitable tolling applied and that the plaintiff was not on inquiry notice of the injury prior to disclosure of the company's backdating practices. *Id.* at 445. The court stated:

> It would be inappropriate to infer, as the defendants argue, that Weiss was on inquiry notice of his claims simply because he could have pieced together the alleged practice of timing option grants from publicly available information . . . [T]he information needed to put Weiss on notice of his claims did not appear in one document. In order to discover the alleged pattern of timing, Weiss would have had to cull through the company's Form 4s each time they were filed, compare the grant dates of the options with the timing of the quarterly earnings releases, and then conduct a statistical analysis in order to uncover the alleged malfeasance. Such an investigation is beyond "reasonable" diligence.

*Id. See also Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1019 (N.D. Cal. 2007) (plaintiffs are "under no duty to conduct the kind of analysis necessary to uncover backdating particularly in view of defendants' alleged efforts to conceal it").

Similarly, here, the information contained in Sunrise's filings did not permit Plaintiffs to discover Defendants' backdating scheme, particularly given the Company's active concealment of their activities, *see Ryan*, 918 A.2d at 359 (discussing the defendants' concealment of their options backdating), and the fact that the concept of backdating was not widely known until at

least 2006.  ¶¶ 273-280.  The earliest plaintiffs here could have been on notice of their claim was August 11, 2006, as discussed above.    Thus, plaintiffs' fiduciary duty claims are not time-barred.

### B.    PLAINTIFFS HAVE PROPERLY ALLEGED STANDING

Defendants contend that because Plaintiffs have not alleged ownership of Sunrise shares dating back to 1997, Plaintiffs have failed to satisfy the continuous ownership requirements of Fed. R. Civ. P. 23.1.  Def's. Memo at 6-7.  Defendants are simply wrong.  The Complaint plainly states that plaintiffs were Sunrise shareholders "at the time of the wrongdoing alleged herein." ¶¶ 14-17, 283.  Nothing more is required.  *Galdi v. Jones*, 141 F.2d 984, 992 (2d Cir. 1944) (holding that on a motion to dismiss, it is sufficient if the allegations follow the precise language of Federal Rule 23); 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1828, at 62 (2d ed. 1986) ("an allegation that merely employs the language of the rule has been held sufficient to sustain the complaint against a motion to dismiss, although the pleader may be required to furnish greater specificity at some later point in the proceedings").  Even if Plaintiffs had not alleged that they held continuously throughout the relevant period, here, where Plaintiffs have alleged a course of conduct and a continuing scheme of wrongdoing by the members of the board, the Complaint "should not be dismissed on defendants' contention that the claims actually arose prior to the time that plaintiff acquired stock." *In re Bank of New York Derivative Litig.*, 173 F. Supp. 2d 193, 198 (S.D.N.Y. Nov. 2001); *citing Bateson v. Magna Oil Corp.*, 414 F.2d 128, 130 (5th Cir. 1969).

The appropriate test is not whether a particular transaction occurred prior to plaintiffs acquiring the stock, but instead, "whether the wrong complained of is in reality a continuing wrong . . . ." *Bank of New York*, 173 F. Supp. 2d at 198.  Here, while some of the transactions constituting part of the ongoing scheme to mislead and conceal facts from shareholders occurred

in 1997, recurring backdating of stock option grants including the continuing concealment of the ongoing fraudulent conduct continued through to 2005. Moreover, the Individual Defendants continued their scheme to inflate the Company's financial results through the use of other accounting manipulations related to Sunrise's real estate ventures. The artifices employed by the Individual Defendants from 1997 to 2006 were all part of the same scheme to unjustly profit at the expense of the Company and its shareholders. The Individual Defendants backdated stock options and improperly accounted for numerous types of real estate transactions so that the Individual Defendants could exercise their improperly granted backdated stock options and/or sell other Sunrise common stock at inflated prices. Accordingly, Plaintiffs have adequately pled their standing.

C. **PERSONAL JURISDICTION EXISTS OVER DEFENDANTS RUSH AND THE INDIVIDUAL DEFENDANTS**

In considering a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing a prima facie case that personal jurisdiction exists. *Dooley v. United Technologies Corp.*, 786 F. Supp. 65, 70 (D.D.C. 1992). However, "[t]his burden is only a minimal one." *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 104 (D.D.C. 2002) (citing *Abramson v. Wallace*, 706 F. Supp. 1, 2 (D.D.C. 1989) (internal quotations omitted). In determining whether a basis for personal jurisdiction exists, all factual disputes concerning jurisdiction must be resolved in favor of plaintiffs. *Id.* Furthermore, "courts may rely upon matter outside the pleadings in determining jurisdictional facts." *Water & Sand Int'l Capital v. Capacitive Deionization Tech. Sys.*, No. 08-88 (RCL), 2008 U.S. Dist. LEXIS 51949, at *7 (D.D.C. July 7, 2008). A court in the District of Columbia may exercise personal jurisdiction over a defendant as to a claim for relief arising from the defendant's:

(1)    transacting any business in the District of Columbia;

(2)    contracting to supply services in the District of Columbia;

(3)    causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4)    causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

D.C. Code § 13-423(a) (2008).   The District of Columbia's "long-arm statute permits the exercise of personal jurisdiction to the fullest extent permissible under the due process clause." *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 28 (D.D.C. 2006).   The constitutional due process test is typically met if the defendant has "minimum contacts" with the District of Columbia "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Water & Sand Int'l Capital*, 2008 U.S. Dist. LEXIS 51949 at *8 (internal quotations and citations omitted).   This analysis "requires courts to determine whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hailed into court here.'"  *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)).

In addition, the Court should consider seven principles in examining whether there exists a basis for personal jurisdiction over a defendant:

This Court's analysis is informed by the seven principles guiding personal jurisdiction jurisprudence, as discussed by the District of Columbia Court of Appeals in *Shoppers Food Warehouse v. Moreno*, 746 A. 2d 320 (D.C. 2000). These principles are: (1) section 13-423(a)(1) is coextensive in reach with the personal jurisdiction allowed by the due process clause of the United States Constitution; (2) there are no "mechanical tests" or "talismanic formulations" for determining personal jurisdiction, and the facts of each case must be weighed against the notions of fairness, reasonableness, and substantial justice; (3) a court must examine the quality and nature of a nonresident defendant's contacts with the District and whether those contacts are voluntary and deliberate or only random, fortuitous, tenuous, and accidental; (4) where a nonresident defendant

has purposefully availed itself of the benefits and protections of the District in engaging in business activity in the forum jurisdiction, it is fair and reasonable to expect it to anticipate being sued in that jurisdiction; (5) in examining the nonresident defendant's contacts with the District, the focus is placed on the relationship among the defendant, the forum, and the litigation; (6) it is reasonable and fair to exercise specific jurisdiction where a nonresident defendant has purposefully directed its activities at District residents, and claims against it by a District resident "arise out of or relate to" or have "a substantial connection" with the business transacted in the District; and (7) the District has a manifest interest for providing a convenient forum in which residents may seek relief against nonresidents, especially where litigation would not impose an undue burden on the nonresident defendant. *Id.* at 329.

*Jacobsen*, 201 F. Supp. 2d at 104-105.

Here, Defendants maintain that the case should be dismissed under Rule 12(b)(2) because the Amended Complaint fails to plead that this Court has personal jurisdiction over Defendant Rush or the Individual Defendants. Ind. Defs.' Mem. at 7-10; Rush Mem. at 24-27. Sunrise, however, has continuous and systematic business contacts with the District of Columbia. According to the Company's most recent annual filing with the SEC, Sunrise currently operates three retirement communities in the District of Columbia.[9] This voluntary, deliberate and continuous business activity and contact with this jurisdiction unquestionably confers general jurisdiction over the Company. *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002) ("District of Columbia law also permits courts to exercise 'general jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is 'doing business' in the District.") (citations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there").

---

[9] *See* Sunrise Form 10-K 2007, Operating Communities at p. 21 (filed March 24, 2008).

The Individual Defendants and Defendant Rush are control persons of the Company by virtue of their positions during the Relevant Period as officers and/or directors of Sunrise with the power to influence or control the direction of the management and policies of the Company. *See* Am. Comp. ¶¶ 13, 19-43.  As such, Sunrise's jurisdictional contacts can and should be imputed on Defendant Rush and the Individual Defendants, thus providing for personal jurisdiction over these defendants.  *See San Mateo County Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. Cal. 1992) (personal jurisdiction exists when a plaintiff makes "a non-frivolous allegation" that the defendants were control persons); *see also McNamara v. Bre-X Minerals, Ltd.*, 46 F. Supp. 2d 628, 636 (E.D. Tex. 1999) ("the Court has personal jurisdiction over any Defendant as to which the Plaintiffs make a *prima facie* showing of control person liability."); *see also Derensis v. Coopers & Lybrand Chtd. Accountants*, 930 F. Supp. 1003, 1014 (D.N.J. 1996) ("Plaintiffs have made a prima facie showing that [individual defendants] are 'controlling persons' who allegedly approved and disseminated financial statements. . . . Consequently, [individual defendants] are subject to the jurisdiction of this court.); *Landry v. Price Waterhouse Chartered Accountants*, 715 F. Supp. 98, 102 (S.D.N.Y. 1989) (finding that a Canadian defendant was subject to court's jurisdiction where plaintiff made a prima facie showing that defendant was a "controlling person").[10]

By virtue of their positions as control persons of the Company, Defendant Rush and the Individual Defendants knew of and were involved in the fraud of which Plaintiffs complain. This control person status gives rise to the existence of personal jurisdiction over these

---

[10] While this Court declined to confer personal jurisdiction on the basis of control person liability in *In re Baan Co. Secs. Litig.*, 245 F. Supp. 117, 130 n. 16 (D.D.C. 2003) ("Baan I"), the Court did so because of the defendants' *foreign* nationality.  In fact, the Court specified that the Ninth Circuit's reasoning in *San Mateo* "can be distinguished as it involved a domestic corporation, not a foreign one. . . .it would not necessarily follow that the same approach would apply to foreign defendants."  Moreover, as discussed in further detail below, the Court noted that culpable participation by a non-resident defendant could be a "permissible basis for personal jurisdiction."  *Id.* at 130 n. 18.

defendants.  *Baan I*, 245 F. Supp. 2d at 130 n. 18 ("if personal jurisdiction *is* backed by a supported allegation of culpable participation, as in *Derensis*, what we have is actually a form of *specific* jurisdiction, as the defendant's contacts (its knowledge of and control over the allegedly unlawful conduct) would themselves give rise to the plaintiff's action.  The Court agrees that this is a permissible basis for personal jurisdiction.").

Finally, Defendants face no burden by appearing in this Court.  The Company's headquarters in McLean, Virginia is approximately 16 miles from this Court.  Therefore, while jurisdiction may be appropriate in Virginia, "dismissal or transfer would only delay the progress of this case."  *Grabert v. New Palace Casino, L.L.C.,* C.A. No. 03-382, 2003 U.S. Dist. LEXIS 15412 at *12 (E.D. La. 2003) (noting that while jurisdiction may be appropriate in another forum, should minimum contacts exist with the forum in question, it would be judicially inefficient and wasteful for a court not to exercise personal jurisdiction).  This is especially true considering the time and expense already expended in this Action in this Court as well as that in the Securities Class Action, which is also pending before this Court.  Accordingly, Defendants' arguments that this Court does not have personal jurisdiction over Defendant Rush and the Individual Defendants are without merit.[11]

---

[11] Moreover, Plaintiffs are entitled to discovery regarding any additional connections that Sunrise, the Individual Defendants or Defendant Rush have with this jurisdiction, and Plaintiffs should be able to present any evidence gleaned from that discovery to the Court prior to any dismissal based on a lack of personal jurisdiction.  *See Second Amendment Found. v. United States Conf. of Mayors*, 274 F.3d 521, 525 (D.C. Cir. 2001) ("Certainly, '[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery[.]') (citations omitted).

Additionally, the appropriate remedy under these circumstances, instead of dismissal for lack of personal jurisdiction, would be to transfer the case to the Eastern District of Virginia, where Sunrise is headquartered.  Should the Court nevertheless dismiss the case on grounds of lack of personal jurisdiction, Plaintiffs respectfully request that the Court do so without prejudice to Plaintiffs re-filing in Virginia.

### D.  THE COMPLAINT PLEADS PARTICULARIZED FACTS ALLEGING VIOLATIONS OF FEDERAL SECURITIES LAWS

#### 1.  Defendants Must Meet a High Standard to Prevail on Their Motion to Dismiss

A motion to dismiss for failure to state a claim shall be denied unless it appears "'beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'"  *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997); *In re Fed. Nat'l Mortgage Ass'n Sec., Derivative, and "ERISA" Litig.* ("*In re Fannie Mae*"), 503 F. Supp. 2d 25, 31 (D.D.C. 2007).[12]  All allegations of material fact within the complaint are taken as true and construed in the light most favorable to the plaintiff.  *Id.*  "Unless reasonable inferences from circumstances suffice to get a case to a jury, the welfare of victimized investors and the integrity of the stock market may be insufficiently protected from deceptive manipulators."  *Ronconi v. Larkin*, 253 F.3d 423, 428 (9th Cir. 2001).  Applying these standards, only "extraordinary" circumstances warrant dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *see also In re Baan Co. Securities Litigation*, 103 F.Supp.2d 1, 12 (D.D.C. 2000) ("*Baan II*").

On a motion to dismiss §10(b) claims, courts will consider Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") as well as the Private Securities Litigation Reform Act ("PSLRA") pleading standards.  Under the PSLRA, a complaint must allege with particularity: (1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed.  15 U.S.C. §78u-4(b)(1).  Where a complaint sets forth these facts with adequate corroborating details, it satisfies the pleading requirements of Rule 9(b) and the PSLRA.  *See Levine v. Metal Recovery Techs., Inc.*, 182 F.R.D. 108, 111 (D. Del. 1998) (requiring fraud to be pled with particularity does not require an

---

[12]  Here, as throughout, all citations are deemed omitted and all emphasis is deemed added unless otherwise noted.

exhaustive cataloging of facts but, rather, only *sufficient* factual specificity to provide assurance that plaintiff has investigated the alleged fraud and reasonably believes that a wrong has occurred); *Novak v. Kasaks*, 216 F.3d 300, 313-14 (2d Cir. 2000); *see also Robinson v. Nussbaum*, 11 F. Supp. 2d 8, 9 (D.D.C. 1997) (Rule 9(b) requires pleading of sufficient facts to notify defendants of nature of the claim); *Ghandour v. John H. Sheperd & Assocs.*, No. 88-0809, 1988 WL 90113, at *1 (D.D.C. Aug. 5, 1988) ("Rule 9(b) does not require mathematical precision, but only sufficient facts to put a party on notice of the charges that he must defend.")

Defendants argue that Plaintiffs have failed to comply with the particularity requirements of Rule 9(b).  *See* Ind. Defs.' Mem. at 15.  However, the particularity requirement of Rule 9(b) must "be read in conjunction with Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires a short and plain statement of a claim…. Rule 9(b) does not require plaintiffs to plead detailed evidentiary matters."  *In re Prison Realty Sec. Litig.*, 117 F. Supp. 2d 681, 686 (M.D. Tenn. 2000); *see also Zatkin v. Primuth*, 551 F. Supp. 39, 42 (S.D. Cal. 1982).[13]   As set forth more fully below, even a cursory review reveals that Plaintiffs' Amended Consolidated Shareholder Complaint (the "Complaint") satisfies the particularity requirements of the applicable pleading standards.  Plaintiffs allege with requisite particularity specific details regarding the scheme to inflate Sunrise's financial results through backdating and real estate accounting manipulations that occurred at the Company, including the manner in which backdating and the other accounting manipulations occurred, the false financial statements subsequently filed with the Securities and Exchange Commission (the "SEC") and the

---

[13]   Additionally, Rule 9(b) may be relaxed considering that all the evidence is in Defendants' exclusive possession and, therefore, "the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage."  *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995); *See also ABF Capital Mgmt., et al. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1327 (S.D.N.Y. 1997); *Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301, 1311 (S.D.N.Y. 1996) ("in cases of corporate fraud, the requirements of Rule 9(b) are relaxed as to matters particularly within the opposing party's knowledge")

participants in the backdating and accounting improprieties. Accordingly, the Individual Defendants' Motions to Dismiss should be denied.

### 2. Plaintiffs Adequately Plead a Claim for Violation of Section 10(b) and Rule 10b-5

To state a claim for a primary violation under Section 10(b) of the Securities and Exchange Act of 1934 ("§10b") and Rule 10b-5 of the Code of Federal Regulations ("Rule 10b-5"), a plaintiff must plead: (1) that defendants made a material misrepresentation or omission; (2) the misrepresentation was in connection with the purchase or sale of a security; (3) that the misrepresentation caused plaintiff's loss; (4) that plaintiff relied on the misrepresentation or omission; (5) that defendants acted with scienter; and (6) that plaintiff suffered damages. *See In re Fannie Mae*, 503 F. Supp. 2d at 38. In the instant case, Plaintiffs have pled all of the elements necessary to state a claim pursuant to Rule 10b-5(b).[14] *See, e.g.*, *In re Brooks Automation, Inc. Sec. Litig.*, No. 06-11068-RWZ, 2007 WL 4754051 (D. Mass. Nov. 6, 2007) (denying motion to dismiss and finding plaintiff pled all necessary elements to sustain §10(b) claim for defendants' stock option backdating); *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 240 (S.D.N.Y. 2007) (allegations that defendants served on Compensation Committee which granted backdated stock options and subsequently signed documents misrepresenting Company's finances relating to options sufficient to state claim under §10(b) and withstand motion to dismiss) *Baan II*, 103 F.Supp.2d at 12-15 (denying motion to dismiss Section 10(b) claims based on misrepresentations of GAAP compliance and accounting manipulations that resulted in an inflated stock price).

---

[14] Rule 10b-5 states: It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

While the Individual Defendants are correct in stating that to satisfy Rule 9(b), Plaintiffs must satisfy the "who, what, where, when and how" standard, Ind. Defs.' Mem. at 15, what is required is "factual specificity regarding the 'neutral circumstances' of the alleged misstatement (the 'who, what, where, when, and how') and the reasons why the misstatements were in fact false." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1266 (N.D. Cal. 2000). Describing the relevant circumstances of the claims alleged suffices to meet the requirements of Rule 9(b). *See Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 441 (D. Del. 1999) (allegations that "'[d]efendants, acting on their own, among themselves or with others, defrauded' [p]laintiff by concealing assets and proceeds from a joint venture and making other misrepresentations, sufficient to meet the requirements of Rule 9(b)"). The Complaint need not contain an exhaustive catalogue of facts, but need only allege with sufficient factual specificity that Plaintiffs have investigated the fraud and reasonably believe it occurred. *See id.*; *In re Veritas Software Corp. Sec. Litig.*, No. 04-831-SLR, 2006 WL 1431209, *8 (D. Del. 2006); *In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Ret. Accounts) II, L.P. Sec. Litig.*, 848 F. Supp. 527, 555 (D. Del. 1994). Moreover, "courts should apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 368-69 (D.N.J. 1999) (citing *Rolo v. City Inv. Co., Liquidating Trust*, 155 F.3d 644, 658 (3d Cir.1998)). As demonstrated below, Plaintiffs have met these pleading requirements**.**

Plaintiffs adequately allege with sufficient particularity: (1) the details and scope of Defendants' stock option backdating scheme (¶¶7, 64-139); (2) the details and scope concerning Defendants' improper accounting of partnership profits derived from joint ventures and improper accounting of the sale of real estate subject to guarantees (¶¶5, 10, 44, 57, 142, 179, 186, 201,

227, 236, 238); (3) the manner in which Defendants executed these schemes (¶¶5-7, 44-280); and (4) the damage the Company suffered as the result of Defendants' improper actions (¶¶11, 243-267). Plaintiffs plead the "what" concerning both improper option manipulation and improper real estate accounting. Defendants backdated Company stock options and misrepresented the grant dates of those options in order to provide the Option Recipient Defendants with "in the money" stock option compensation, and reap tax benefits in violation of their fiduciary duties. ¶¶62-63. Further, for at least seven years, Defendants improperly accounted for joint venture real estate developments in which the Company had a minority stake and gave preferential distributions and financial guarantees to the Company's majority partners and financiers. *E.g.,* ¶5.

As to the "how," the Complaint identifies numerous options granted between 1997 to 2001, including the purported grant date, the exercise price and the stock option plan under which each was granted, demonstrates that the suspicious grants were dated either near the Company's lowest stock price of a particular period or prior to a substantial rise in the Company's stock price, and further identifies almost five million shares with gross proceeds of over *$174 million* sold by the Insider Selling Defendants from 1997 through 2006. ¶241. As to the "how" regarding improper accounting, under applicable accounting rules, if Sunrise structured its joint ventures with preferential guarantees and distributions to its partners, Sunrise, as the managing entity in the joint venture, was required to absorb 100% of the early period or start-up losses of the new facilities, rather than just its minority share, and was allowed to recoup those early period losses only when the joint venture's facility was operating successfully and profitably and/or was sold. ¶5, 57. Additionally, Sunrise could not record profits on sales of

facilities if it provided financial guarantees in connection with the sale. The Complaint alleges in detail how Sunrise's financial statements violated GAAP. ¶¶143-202, 243-255.

Plaintiffs also plead the "who." The Complaint alleges who was responsible for the backdating and or issuance of false financial information and what each Individual Defendant's role was, by specifying committee membership and the obligations and duties of the Individual Defendants (¶¶19-43), as well as each of the Individual Defendant's involvement in approving each of the improper grants and disseminating the false financial statements and proxy statements to the SEC and the public. ¶¶73-220. Further, the Complaint alleges which Sunrise officers and directors, including the members of its Audit Committee, knowingly caused or allowed Sunrise to report inflated profits from at least 1999-2005 and, by the Company's own disclosure, report over $100 million in improperly accounted for profits and conceal significant joint venture losses, which enabled Sunrise insiders to pocket large and unjustified cash bonuses and to personally profit by insider trading to take advantage of the artificially inflated price of Sunrise's common stock. ¶57. The Complaint further alleges the harm done to the Company in the form of restatements of past financial statements, tax liabilities and substantial investigatory and restatement expenses. ¶¶243-267

> **a.    Plaintiffs Have Pled Facts Giving Rise to a Strong Inference of Scienter**

Despite the Individual Defendants' argument to the contrary,[15] the simple fact that Defendants backdated options strongly suggests that they did so knowingly, and thus possessed the required state of mind. Under virtually identical circumstances and faced with a similar argument, the Delaware Chancery Court stated that "it is difficult to understand how a plaintiff can allege that directors backdated options *without* simultaneously alleging that such directors

---

[15]  *See* Ind. Defs.' Mem. at 20; Bradley Mem. at 6; Rush Mem. at 13.

*knew* that the options were being backdated" because "any grant of options had to have been approved by the committee, and that committee can be reasonably expected to know the date of the options as well as the date on which they actually approve a grant." *Ryan v. Gifford*, 918 A. 2d at 355 n.35,[16] (emphasis in original). Last year, in *Conrad v. Blank*, 940 A.2d 28 (Del. Ch. 2007) the Delaware Chancery Court again endorsed *Ryan's* ruling that knowledge on behalf of grantors is presumed because:

> [I]t is difficult to understand how a plaintiff can allege that directors backdated options without simultaneously alleging that such directors knew that the options were being backdated. After all, any grant of options had to have been approved by the compensation committee, and that compensation committee can be reasonably expected to know the date of the options as well as the date on which they actually approve a grant.

*Id*. at \*9 (citing *Ryan*, 918 A.2d at 355).

To sustain an action under §10(b) and Rule 10b-5, a plaintiff "shall, with respect to each act or omission … state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. 78u-4(b)(2). The state of mind required to sustain an action under §10(b) and Rule 10b-5 is one that embraces an "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). In the context of stock option backdating, "scienter is properly alleged when the complaint alleges both false statements and the defendants' close involvement in the preparation of those statements." *In re Zoran*, 511 F. Supp. 2d at 1013 (holding that backdating stock options meets the requisite standard for scienter under §10(b)). Indeed, in similar cases, courts have repeatedly upheld Section 10(b) claims as to defendants who approved or received backdated options, then signed and disseminated false and misleading financial statements. *See, e.g., In re Openwave*, 528 F. Supp. 2d at, 248-52 (finding valid 10(b) claims as to those defendants who signed false

---

[16] Like this action, *Ryan* was a derivative action where pleading with "particularity" was required.

statements and backdated stock options); *In re Brooks*, 2007 WL 4754051, at **7 (same); *Belova v. Sharp*, No. CV 07-299-MO, 2008 U.S. Dist. LEXIS 19880, at **16-17 (D. Or. Mar. 13, 2008) (upholding plaintiffs' federal claims as the company relied on defendants' statements in granting backdated options); *In re Atmel Derivative Litig*., No. 06-4592, slip op. at 14-17 (N.D. Cal. June 25, 2008) (upholding 10(b) claims against grantors of backdated stock option grants, recipients of backdated stock option grants, and defendants who knowingly disseminated false financial statements).    Additionally, Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

To determine whether a plaintiff has adequately pled scienter, the inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) (emphasis in original).    The "inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Id.* at 2510.    Instead, the inference of scienter need only be "*at least as likely as* any plausible opposing inference." *Id.* at 2513 (emphasis in original).    Plaintiffs' Complaint not only sets forth allegations of the Individual Defendants' improper backdating practices and real estate joint venture accounting improprieties with particularity, but, as described below, also adequately demonstrates the Individual Defendants' knowledge of this fraud.

Here, the Individual Defendants caused the Company to disclose that its own accounting review revealed it had been improperly accounting for its joint venture investments and operations and for certain real estate sales, and that it would no longer engage in real estate sales with guarantees and other ongoing financial commitments. ¶227.  Sunrise also announced that it

would need to restate past financials, and that the cumulative impact of the restatement was anticipated to reduce net income for all periods impacted, including 1999 through 2005, by approximately **$98** to **$107 million**, figures that were later increased.  ¶¶227, 231.

Further, Defendants were the primary beneficiaries of the diversion of millions of dollars of Sunrise's corporate assets, because they received backdated stock options and then turned around and sold their holdings for combined insider sales of over **$174 million**.  ¶¶241.  The Complaint details, through Defendants' high-level executive positions and Board membership, as well as their participation on the Stock Option and Audit Committees, that they were, at best, consciously reckless in permitting backdating and accounting violations to occur and to go unreported, or, more likely, deliberately concealing these improper practices, content to reap the benefits of their ill-gotten gains.  ¶¶184, 189, 194, 203-220, 317, 319.

Plaintiffs allege that in their roles as officers, directors, Stock Option Committee members and/or Audit Committee members, the Individual Defendants colluded with each other to backdate stock option grants and disseminate false financial statements.  ¶¶2, 10, 269.  The Complaint alleges that, on information and belief, the Stock Option Committee members, including Defendants Callen, Donohue, Bradley and Meadow, who issued the grants, and Defendants Klaassen, Aprahamian, Callen, Donohue, Bradley, Slager, Newell, Tomasso, Adams, Faeder, Hulse, Smick, Swinton and Slavin, who received backdated stock option grants, would review historical stock prices before issuing stock options to determine the date upon which stock prices were significantly below the current market price.  ¶77.  They would then falsify the relevant documents to make it appear as if the stock options were granted on the earlier date.  *Id.*

The Complaint also alleges that the members of the Audit Committee, at a bare minimum, knowingly disregarded their personal responsibility to ensure the accuracy of

Sunrise's options accounting. ¶¶114, 144, 152, 157, 168, 175, 183, 188, 193, 198. This sufficiently establishes scienter, as "[i]t is reasonable to infer that [committee members], by virtue of their almost exclusive administration of the stock option plans, either knew of the alleged backdating or recklessly ignored the evidence thereof." *In re Brooks Automation, Inc. Sec. Litig.*, 2007 WL 4754051 at *11; *see also Zoran*, 511 F. Supp. 2d at 1013 (holding that granting backdated options sustains and preparing and signing false financial statements sustains 10(b) claim); *In re Openwave Sys. Secs. Litig.*, 528 F. Supp. at 248-52 (finding valid 10(b) claims as to those defendants who signed false statements and backdated stock options); *In re Brooks*, 2007 WL 4754051, at **7 (same); *Belova*, 2008 U.S. Dist. LEXIS 19880, at **16-17 (upholding plaintiffs' federal claims as the company relied on defendants' statements in granting backdated options); *In re Atmel*, No. 06-4592, slip op. at 14-17 (upholding 10(b) claims against grantors of backdated stock option grants, recipients of backdated stock option grants, and defendants who knowingly disseminated false financial statements).

Further, the Complaint alleges the precise terms of the options granted to the recipients of backdated stock options from 1997 to 2001, and that those options were backdated. ¶¶80-132. The recipients of backdated stock options were consciously reckless, if not intentionally deceitful, when they disregarded the fact that the options they received were "fortuitously" timed over and over again. ¶69. Thus, there is no basis for the Individual Defendants' suggestion that Plaintiffs inadequately allege the basis of the Individual Defendants' knowledge of their own misconduct.[17] *See, e.g., Ryan*, 918 A.2d at 355 n.25; *Conrad*, 940 A2d. 28.

---

[17] The Individual Defendants claim Plaintiffs improperly employ "group pleading" here. Ind. Defs.' Mem. at 18; Rush Mem. at 11. This is wrong. Plaintiffs have alleged with particularity how each of the Individual Defendants individually violated §10(b) and Rule 10b-5. ¶¶316-321. The Complaint alleges that each of the defendant directors backdated stock option grants and/or disseminated false financial statements in their roles as directors, high-ranking executives, Stock Option Committee and/or Audit Committee members. ¶¶2, 10, 269.

### b. The Company's GAAP Violations Support a Strong Inference of Scienter

"[C]ourts have found GAAP violations to be extremely probative of scienter." *Baan II*, 103 F. Supp. 2d at 21; *In re Daou Sys., Inc.*, 411 F.3d 1006, 1016 (9th Cir. 2005) ("Violations of GAAP standards can also provide evidence of scienter."); s*ee also Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 79, 83 (1st Cir. 2002) (finding scienter sufficiently alleged where defendants violated Financial Accounting Standards 48 and their own internal revenue recognition policies); *Malone v. Microdyne Corp.*, 26 F.3d 471, 478 (4th Cir. 1994) (same); *In re Seitel, Inc. Sec. Litig.*, 447 F. Supp. 2d 693, 707 (S.D. Tex. 2006) (alleged misleading nature of GAAP violations contributed to a strong inference of scienter). A violation of GAAP standards occurs when a company awards "in-the-money" stock options without recording an appropriate compensation expense in its corresponding financial statements. ¶¶58. Defendants also violated GAAP by their improper accounting for real estate joint ventures. ¶¶3, 5-6, 10, 268.

The Complaint plainly alleges that the backdating of stock option grants violated Sunrise's stock option plans and that the "in-the-money" grants were not recorded in the Company's financial statements in conformity with GAAP. ¶¶7, 10, 65-67, 73-74, 76, 133-134, 243-254. As a result, Sunrise's financial statements failed to fairly present the Company's financial condition because they failed to account for the Individual Defendants' "in-the-money" grants as compensation expense and, thus, materially understated compensation expenses, overstated net income or materially understated its net loss. *Id.* Further, the Individual Defendants' failure to properly account for proceeds from their real estate joint ventures and their improper recognition of gains on real estate sales violated GAAP because Sunrise was required to absorb all of the early period or start-up losses of their new joint venture facilities, rather than Sunrise's investment amount only, since the Company structured its joint ventures

with preferential guarantees and distributions to its partners.   ¶¶243-245, 268.  This is precisely why the Company had to restate its earnings.

The Individual Defendants argue that the Complaint does not allege facts showing the Individual Defendants' knowledge of their false statements.  Ind. Defs.' Mem. at 23.  However, as explained above, the Complaint states with more than the requisite specificity that the Individual Defendants deliberately engaged in improper stock option manipulation and joint venture and real estate accounting practices. ¶¶44-139, 144-202.  As a result, the Individual Defendants knowingly made false and misleading public statements concerning the Company's financials.  "The fact that the defendants published statements when they knew facts suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter." *Aldridge*, 284 F.3d at 83.

### c.    The Insider Selling Defendants' Insider Trading Supports a Strong Inference of Scienter

Finally, the Complaint identifies certain Insider Selling Defendants (as defined in the Complaint) who committed illegal insider trading by exercising options and selling shares of Sunrise common stock based on insider information pertaining to the condition of the Company. ¶¶241.  The scienter requirement may also be satisfied by indirect evidence of a culpable mind state, such as suspicious insider trading activity.  *See Daou*, 411 F.3d at 1015; s*ee also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).  Here, the Complaint alleges that based on their knowledge of the improper accounting of joint real estate ventures, the issuance of the backdated grants and the disclosure that a restatement of past financials was required, the Insider Selling Defendants sold more than *$174 million* in Sunrise stock from 1997 to 2006.  ¶241.

Moreover, the Insider Selling Defendants' sales were unusual with respect to their timing and amount. For example, P. Klaassen and T. Klaassen sold 600,000 shares in twelve (12) transactions between December 19, 2005 and May 2, 2006 garnering more than $21 million in proceeds.[18] The most recent of those sales occurred just *seven days* before the Company was forced to announce that it would have to reschedule its earnings release. ACC at ¶¶221, 241. It is reasonable to infer that P. Klaassen and T. Klaassen knew about material non-public information at least when they made the most recent sale. *See Guttman v. Huang*, 823 A.2d 492, 503-04 (Del. Ch. 2003) (noting that suspicious timing and pattern of trades may support an inference of insider selling).

Additionally, Defendants Aprahamian, Gaul, Newell, Donohue, Callen and Holladay and Rush's timing and amount of stock sales were similarly suspicious. Aprahamian, Gaul and Newell sold stock on April 18, 2006, April 20, 2006 and April 24, 2006, respectively, less than a month before the Company's announcement. ACC at ¶¶221, 241. Holladay sold stock on March 21, 2006, approximately a month and a half before the announcement. ACC at ¶¶221, 241. Callen and Donohue, long-standing members of the Board, sold 144,378 shares (Callen – 10,000, Donohue 134,378) of Sunrise stock between January 29, 2004 and November 21, 2005, and they had never before sold any Sunrise stock. ACC at ¶241. Similarly, Rush sold nearly 7,000 shares of stock over the five day period from September 8, 2005 to September 12, 2005, having never sold stock before or since. ACC at ¶241. Additionally, the other Insider Selling Defendants (with the exception of Klisares) were all recipients of backdated stock options and it can be inferred that they sold their stock on the basis of that knowledge.

---

[18] The Klaassens' sale of 600,000 shares over this six month period accounted for approximately 42% of all the shares the Klaassens sold over the period from December 1997 through May 2006. ACC ¶241-242. To put it another way, in the six months leading up to Sunrise's announcement of its accounting problems, the Klaassens sold roughly as much stock as they had in the preceding 8 years.

In considering the totality of the above, Plaintiffs sufficiently allege that the Individual Defendants acted knowingly and deliberately, and therefore easily satisfy the pleading requirements for scienter

### d.    Plaintiffs Allege Reliance with the Requisite Specificity

Plaintiffs allege that Sunrise was defrauded when it issued stock options to the recipients of backdated stock options because those stock options carried exercise prices that were lower than the proper exercise prices of those grants.  ¶¶73-75, 77-139  As a result of these backdated grants, Sunrise suffered damages, as the Company: (1) sold stock to the recipients of backdated options for less than the Company was entitled to receive for those shares; and (2) granted the recipients stock options with value greater than if the options had been properly granted. See ¶¶7-8,11, 129, 268-272, 313-315.   Accordingly, Sunrise has suffered a loss as a result of the award of backdated stock options to the recipients of backdated stock options. *See Zoran*, 511 F. Supp. 2d  at 1012.

Plaintiffs have alleged that, at all relevant times, the Stock Option Committee was responsible for determining the salaries, incentive compensation, and stock options awards for executive officers of Sunrise, and for administering the Company's stock option plans.  ¶¶68, 73-75, 77-139.  By granting the recipients stock options with exercise prices equal to less than the fair market value of the Company's common stock on the date of grant, the members of the Stock Option Committee defrauded Sunrise, by causing the Company to sell stock to its officers and directors for less than the Company was entitled to receive for those shares.  *Zoran*, 511 F. Supp. 2d at 1012.  As to unexercised options, the Company was defrauded by the members of the Stock Option Committee, who caused the Company to award options of more value to the recipients than authorized.  *Id*. at 1012.   Because Plaintiffs have pled that the members of the Stock Option Committee exercised authority in setting option prices, Plaintiffs have adequately

pled that the Company relied on the members of the Stock Option Committee's false representations that the grants were at-the money as of the measurement date. Thus, Plaintiffs have pled the elements of transactional causation and reliance.

### 3.    The Complaint Adequately Pleads a Claim Under §20(a)

Section 20(a) of the Securities Exchange Act of 1934 ("§20(a)") extends joint and several liability to "[e]very person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder." 15 U.S.C. §78t(a). To make out a prima facie case under §20(a), Plaintiffs must allege: (1) a primary violation of federal securities laws; and (2) that Defendants exercised actual power or control over the primary violator. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003). Defendants dispute that they exercised control over Sunrise. *See* Ind. Defs.' Mem. at 30; Bradley Mem. at 13. "Control" is defined in the regulations as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies" of the person or company. *No. 84 Employer*, 320 F.3d at 945. To establish control person liability at the pleading stage, Plaintiffs need only allege that the Defendants had the status of control persons. *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990). This is satisfied by pleading who they are alleged to control and what acts or statuses indicate such control. *In re 3Com Sec. Litig.*, 761 F. Supp. 1411, 1418 (N.D., Cal. 1990). "[C]ourts generally agree that the plaintiff need only show the power to control ... and not the exercise of that power." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1306 n.8 (10th Cir. 1998).[19]

---

[19] Defendants cite to *In re Fannie Mae* for the proposition that "plaintiffs must adequately plead 'culpable participation' on the part of the defendants in the [alleged] underlying primary securities violation" in order to allege a violation §20(a). Ind. Defs.' Mem. at 32. However, *In re Fannie Mae* noted that "[c]ourts are divided, however, over the prima facie elements of a Section 20(a) claim…. our Circuit Court has not ruled on this issue to date." *In re*

The control allegations here present the classic scenario for which §20(a) was constructed – certain individuals are liable for fraud where their positions at a company render them in control, and Plaintiffs' allegations provide that the Individual Defendants themselves controlled and perpetuated the fraudulent options backdating and accounting scheme. ¶329. "Although a person's being an officer or director does not create any *presumption* of control, it is a sort of red light." *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1397 (9th Cir. 1993) (finding an officer a controlling person where he was an active participant on a management committee with authority to issue the securities at issue) (emphasis in original). Even then, a court is to consider "a wide range of potentially relevant factors" because whether a defendant is a control person can be answered only on a case by case basis. *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 343 (N.D. Cal. 1985).

Here, the Individual Defendants were obliged to exercise reasonable supervision over the Company, and to maintain accurate internal controls. ¶¶39-43. Because Plaintiffs have adequately alleged control status, the burden is on the Individual Defendants to prove good faith – a question of fact which cannot be resolved on a motion to dismiss. *See No. 84 Employer*, 320 F.3d at 945-46; *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (defendant must show he acted in good faith and did not directly or indirectly induce the violations). Given the allegations that the Individual Defendants engaged in unlawful backdating of stock options, they cannot possibly show they did not induce the violations or that they acted in good faith.

---

*Fannie Mae*, 503 F. Supp. 2d at 43-44; *see also Republic Property Trust v. Republic Properties Corp.*, 540 F.Supp.2d 144, 163, n. 7 (D.D.C. 2008) ("A split of authority exists among the Courts of Appeals concerning the precise elements of this cause of action, and the question remains an open one in this Circuit").

Plaintiffs have properly plead a prima fade case for violations of §10(b) and, therefore, Plaintiffs' §20(a) claims survive.[20]

### E.     Plaintiffs Adequately Plead Breach of Fiduciary Duty Claims

The Individual Defendants argue that Plaintiffs have not stated a claim for breach of fiduciary duty. See Ind. Defs.' Mem. at 37; Bradley Mem. at 15; Rush Mem. at 18. They are wrong. The Complaint details the Individual Defendants' clear violations of their fiduciary duty to Sunrise for stock option backdating and improper joint venture accounting and the resulting issuance of false and misleading statements concerning the Company's financial statements.

### 1.     Stock Option Backdating

It is well established that the officers and directors of a Delaware corporation have a fiduciary relationship with the corporation they serve and its stockholders. *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 386 (Del. Ch. 1999) (directors); *Arnold v. Society for Savings Bancorp*, Inc., 678 A.2d 533, 539 (Del. 1996) (officers). "This duty has been consistently defined as 'broad and encompassing,' demanding of a director 'the most scrupulous observance.'" *BelCom, Inc. v. Robb*, No. Civ. A. 14663, 1998 WL 229527, at *3 (Del. Ch. Apr. 28, 1998) (citing *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)). As the Delaware Supreme Court has explained:

> The director's fiduciary duty to both the corporation and its shareholders has been characterized by this Court as a triad: due care, good faith, and loyalty. That tripart fiduciary duty does not operate intermittently but is the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided.

*Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998). A director's liability for breaching his or her duty of good faith "can be established by showing a sustained or systematic failure to exercise

---

[20]  Defendants argument that Plaintiffs' §20(a) claim fails because the Complaint does not plead "culpable participation" on the part of any Individual Defendants fails for the same reasons. *See* Ind. Defs.' Mem. at 32.

oversight." *In re Oxford Health Plans, Inc.*, 192 F.R.D. at 111, 117 (S.D.N.Y. 2000). Moreover, "a board's extreme indifference or failure to act may create individual liability for board members." *McSparran v. Larson*, No. 04 C 0041, 2006 U.S. Dist. LEXIS 3787, at *14 (N.D. Ill. 2006). Thus, the Complaint's particularized allegations also evidence that the inaction of the Board, in permitting the improper backdating of stock options, breached their duty of good faith.

The Individual Defendants' backdating of stock options is a clear violation of fiduciary duties. In a stock options backdating case with similar allegations to this case, the Delaware Chancery court stated:

> Based on the allegation of the complaint, and all reasonable inferences drawn therefrom, I am convinced that the intentional violation of shareholder approved stock option plan, coupled with fraudulent disclosures regarding the directors' purported compliance with that plan, constitute conduct that is disloyal to the corporation and is therefore an act in bad faith. Plaintiffs alleged the following conduct: Maxim's directors affirmatively represented to Maxim's shareholders that the exercise price of any option grant would be no less than 100% of the fair value of the shares, measured by the market price of the shares on the date the option is granted. Maxim shareholders, possessing an absolute right to rely on those assurances when determining whether to approve the plans, in fact relied upon those representations and approved the plans. Thereafter, Maxim's directors are alleged to have deliberately attempted to circumvent their duty to price the shares at no less than market value on the option grant dates by surreptitiously changing the dates on which the options were granted. To make matters worse, the directors allegedly failed to disclose this conduct to their shareholders, instead making false representations regarding the option dates in many of their public disclosures.

*Ryan*, 918 A.2d at 358 (emphasis added). As the *Tyson* court similarly noted, because the "backdating of options always involves a factual misrepresentation to shareholders" the "issuance of options in conjunction with such deception, and against the background of a shareholder-approved stock-incentive program, amounts to a disloyal act taken in bad faith." *In re Tyson Foods, Inc.*, 919 A.2d 563, 592 (Del. Ch. 2007). "Thus, where plaintiff alleges particularized facts sufficient to prove demand futility under the second prong of *Aronson*, that

plaintiff *a fortiori* rebuts the business judgment rule for the purpose of surviving a motion to dismiss pursuant to Rule 12(b)(6)." *Ryan*, 918 A.2d at 357.

Just as in *Ryan*, the Complaint alleges that: (1) Sunrise's directors affirmatively represented to the Company's shareholders that the exercise price of any stock option was 100% of fair market value; (2) Sunrise's shareholders had an absolute right to rely on these assurances when approving the stock option plans, and did so by approving the plans; (3) Sunrise's directors deliberately attempted to circumvent their duties by surreptitiously changing the actual grant dates; and (4) Sunrise's directors failed to disclose their conduct and instead, deliberately concealed their actions by stating that the options were properly granted. ¶¶74-77, 203-205. Defendants cannot ignore these detailed allegations concerning the duties of Sunrise directors, especially the duties the Stock Option and Audit Committees, had with respect to granting stock options and filing accurate financial and proxy statements. ¶¶39-43, 68, 343. Indeed, the Stock Option Committee and Compensation Committee had a duty to use compensation to incentivize "management to increase shareholder value ... [in] [a]cting as Administrator of the Company's equity compensation plans," but failed to do so. *Id.* In cases involving similar particularized allegations of stock option backdating, courts have likewise found that such particularized factual assertions appropriately alleged claims arising under state law, including breach of fiduciary duties. *See, e.g., In re THQ, Inc. Deriv. Litig.*, No. BC357699, 2007 WL 4990689, slip op. (Cal. Super. Ct. Oct. 11, 2007); *Belova*, 2008 U.S. Dist. LEXIS 19880, at **21-26; *Zoran*, 511 F. Supp. 2d at 1017-19.

### 2. Plaintiffs Allege Facts that Support a Breach of Fiduciary Duty Claim as to Misleading SEC Filings as a Result of Backdating

The Individual Defendants next contend that Plaintiffs allege no facts to support a disclosure-based breach of fiduciary duty claim. Ind. Defs.' Mem. at 39. Yet again, the

- 34 -

Individual Defendants summarily ignore Plaintiffs well-pled allegations identifying the particulars of the Individual Defendants' wrongful backdating and joint venture accounting schemes. ¶¶19-280. As explained, *supra*, Plaintiffs' Complaint more than sufficiently alleges that defendants breached their fiduciary duties of loyalty and good faith by purposely disseminating to the market knowingly inaccurate and misleading information regarding Sunrise's financial condition and future business prospects. The inaccuracies in Sunrise's accounting procedures were known to the Individual Defendants, yet throughout the Relevant Period, they caused or allowed the Company to issue patently false and misleading press releases and to file demonstrably inaccurate financial statements with the SEC. Under Delaware law:

> When the directors are not seeking shareholder action, but are deliberately misinforming shareholders about the business of the corporation, either directly or public statement, there is a violation of fiduciary duty. That violation may result in derivative claim on behalf of the corporation or a cause of action for damages.

*Malone v. Brincat*, 722 A.2d 5 at 10-14.

The fact that not one of the press releases and/or filings disseminated over the course of nearly ten years contained any information as to Sunrise's true financial condition, but only information the Individual Defendants knew to be patently distorted, was a clear breach of their fiduciary duty of loyalty and good faith to the Company. *Id*. at 10-11; *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies, Inc*., 854 A.2d 121, 153 (Del Ch. 2004) (director breaches fiduciary duty of loyalty under *Malone* when he learns that earlier public communications were false and intentionally remains silent). As explained in the Complaint and herein, the Individual Defendants pursued a course of conduct to maximize the benefits to themselves without regard for the harm such a course of conduct would ultimately cause Sunrise. Thus, the Individual Defendants breached their fiduciary duties to Sunrise and its shareholders by disseminating the knowingly false information in bad faith.

### 3.   Plaintiffs Adequately Plead a Breach of Fiduciary Duty Claim for the Individual Defendants' Improper Joint Venture Accounting

Defendants also argue that Plaintiffs have not pled sufficient facts to state a claim regarding Individual Defendants' joint venture accounting practices. Ind. Defs.' Mem. at 39; Rush Mem. at 19. However, the Complaint pleads facts more than sufficient for a breach of fiduciary duty claim.

It is beyond dispute that under Delaware law that the officers of a corporation owe a fiduciary duty to the corporation and its shareholders. *See Malone*, 722 A.2d at 10 ("The directors of Delaware corporations stand in a fiduciary relationship not only to the stockholders but also the corporations upon whose boards they serve.") Specifically, officers and directors owe the corporation and its shareholders fiduciary duties to act with the utmost loyalty and good faith. *Id.* Further, a fiduciary must act in the highest good faith toward his principal and shall not seek to obtain any advantage over him by the slightest misrepresentations or concealment. *Oberly v. Kirby*, 592 A.2d 445, 463 (Del. 1991). Whenever directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, loyalty and good faith. *Malone*, 722 A.2d at 10-11; s*ee also Jackson Nat'l Life*, 741 A.2d at 389; *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 916-17 (Del. Ch. 1999).

Here, the Complaint states that Sunrise directors and officers improperly accounted for joint venture real estate developments in which the Company had a minority stake and gave preferential distributions and financial guarantees to the Company's majority partners and financiers. ¶¶5, 10, 44-57. Under applicable accounting rules, if Sunrise structured its joint ventures with preferential guarantees and distributions to its partners, Sunrise, as the managing entity in the joint venture, was required to absorb 100% of the early period or start-up losses of

- 36 -

the new facilities, rather than just its minority share, and was allowed to recoup those early period losses only when the joint venture's facility was operating successfully and profitably and/or was sold. *Id.*  Additionally, Sunrise could not record profits on sales of facilities if it provided financial guarantees in connection with the sale.

As alleged in the Complaint, Defendants pursued an improper course of business that misled Sunrise's investors. ¶¶6, 10, 44-57.  Instead of following the required accounting rules and principles, Sunrise's top officers and directors, including the members of its Audit Committee, knowingly caused or allowed Sunrise to report inflated profits from at least 1999-2005 and, by the Company's own admission, report over $100 million in improperly accounted for profits and conceal significant joint venture losses.  This enabled Sunrise insiders to pocket large and unjustified cash bonuses and to personally profit by insider trading to take advantage of the artificially inflated price of Sunrise's common stock.  ¶¶ 4, 5, 6, 7, 56, 57.

Finally, on July 31, 2006, Defendants caused a press release to issue admitting the Company had been ***improperly accounting for its joint venture investments and operations and for certain real estate sales***, and that it would no longer engage in real estate sales with guarantees and other ongoing financial commitments. ¶227.  These accounting improprieties contributed to the Company stating that it would restate historic net income by approximately $117 million.  ¶238.  These facts are more than sufficient to give rise to a breach of fiduciary duty claim.

### F. Plaintiffs Adequately Plead a Claim for Insider Trading and Misappropriation of Information

Plaintiffs' insider trading allegations state a sufficient claim to satisfy the applicable pleading requirements.  It is well-established under Delaware law that a fiduciary has a duty not to use for personal gain information acquired during the course of the fiduciary relationship.

*Brophy v. Cities Serv. Co.*, 70 A.2d 5 (Del. Ch. 1949). In keeping with *Brophy*, courts have upheld allegations that a defendant profited "because of his knowledge of material non-public financial information which he had access to as a result of his position as a fiduciary" as a sufficient basis for insider trading claims. *Davidge v. White*, 377 F. Supp. 1084, 1089 (S.D.N.Y. l974).

Defendants argue that the Complaint fails "to plead a claim for insider trading because the amended complaint lacks allegations related to specific transactions." Ind. Defs.' Mem. at 42. *See also* Rush Mem. at 20. Defendants go on to state that, "[w]ith one exception [Callen], Plaintiffs do not plead specific facts regarding individual sales undertaken by each [defendant]." *Id*. Defendants cite no authority that requires this.

A review of the Complaint demonstrates that insider trading is sufficiently pled. The Complaint alleges directly, and by imputation, that the Insider Selling Defendants had knowledge of material information and made their trades on that basis. ¶¶241-42.

The Insider Selling Defendants directly profited from their knowledge of and participation in the concealed backdating scheme, by selling millions of their personal shares of Sunrise stock at artificially inflated prices, reaping huge profits from their own misconduct and breaching their fiduciary duties to the Company. ¶¶241-242, 268, 270, 272. As explained herein, Plaintiffs have adequately pled facts creating a reasonable inference that the Insider Selling Defendants had "knowledge – directly and by imputation – of [the Company's] problems," which is sufficient to sustain common law insider trading claims. *Zimmerman v. Braddock*, No. CIV.A. 18473-NC, 2005 WL 2266566 at *8 (Del. Ch. 2005), *overruled on other grounds*, 906 A.2d 776 (Del. 2006). The Complaint also alleges that while in possession of the undisclosed material adverse information regarding the backdating of stock options and improper

accounting, the Insider Selling Defendants collectively sold nearly five million shares of Sunrise stock, some of which they obtained through the exercise of improperly backdated stock options, totaling more than ***$174 million*** in proceeds.  *See* ¶¶241.  Such allegations are sufficient to support a finding of liability for insider trading under Delaware insider trading law.  *See Belova*, 2008 U.S. Dist. LEXIS 19880, at *23-24 (participation in a backdating scheme and trading on that knowledge sustains a claim for insider selling under Delaware law); *Zoran*, 511 F. Supp. 2d at 1018 (holding that plaintiffs stated a claim for insider trading when they alleged participation in a backdating scheme and subsequent sale of stocks).

Defendants argue that the insider trading must be dismissed because Sunrise has purportedly suffered no harm as a result of the insider trades.  *Ind.* Defs.' Mem. at 43 (citing to *In re Cray Inc. Derivative Litig.*, 431 F.Supp. 2d 1114 (W.D. Wash. 2006) and *Freeman v. Decio*, 684 F.2d 186, 192-195 (7th Cir. 1978)).  However, the Delaware courts have routinely rejected this argument.  *See, e.g., Cooke v. Oolie*, C.A. No. 11134,  2000 Del. Ch. LEXIS 89 at *60 (Del. Ch. May 24, 2000) ("Inside information is a corporate asset; its misuse give rise to a derivative claim, not a class claim."); *Strougo v. Carroll*, C.A. No. 8040, 1991 Del. Ch. LEXIS 11 (Del. Ch. Jan. 29, 1991) ("It also may be true that the corporation did not suffer any monetary loss as a result of the transactions at issue. However, fiduciaries are accountable for all profits they obtain through breaches of trust regardless of whether the corporation suffers any harm.") (citations omitted).  Moreover, none of the cases Defendants cite are controlling authority here to the extent they contradict Delaware insider trading principles or can be read to require more than Delaware law requires; thus, they should be rejected.

### G.    Plaintiffs State a Claim for Unjust Enrichment

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or the

retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (citing *Fleer Corp. v. Topps Chewing Gum. mc*, 539 A.2d 1060, 1062 (Del. 1988)).  The elements of a claim for unjust enrichment under Delaware law are: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Jackson Nat'l Life*, 741 A.2d at 393.  Essentially, to obtain restitution, Plaintiffs are "required to show that the defendants were unjustly enriched, that the defendants secured a benefit, and that it would be unconscionable to allow them to retain that benefit." *Schock*, 732 A.2d at 232 (quoting *Fleer*, 539 A.2d at 1063).  Here, as in *Ryan*, Defendants were unjustly enriched by the mere receipt of backdated options regardless of whether they sold such shares. *See Ryan*, A.2d at 1063 (finding that receipt of backdated options even without exercise constitutes unjust enrichment); *see also Zoran*, 511 F. Supp. at 1017-19 (upholding a claim for unjust enrichment); *Belova*, 2008 U.S. Dist. LEXIS 19880, at *25-26 (same).

The recipients of backdated options have benefited to the detriment of the Company by improperly receiving substantial excess compensation in the form of backdated stock options. ¶¶144, 152, 157, 168, 175, 349.  Not only did this form of excess compensation violate the express terms of all three shareholder approved stock option plans, it defeated the Company's very purpose in giving employees the grants and, thus, the inherent incentives from the award are lost.  ¶18.  There was no justification for this practice besides surreptitiously lining the recipients' pockets without accounting for the added compensation expense. *Id*.  Non-disclosure of the backdated grants resulted in a loss of revenue to the Company upon execution of the options and undisclosed compensation expenses in the millions of dollars.  ¶10-11, 268-271.

Thus, the recipients of backdated options were unjustly enriched, the Company was harmed, and it would be unjust for these Defendants to keep excess compensation they secured as a result of backdated stock options.

### H.    Plaintiffs Plead Proper Equitable Claims for Rescission and Accounting

The Individual Defendants' quibbling over the equitable claims pled in the Complaint should be rejected.  Ind. Defs.' Mem. at 44.  But the decision "[w]hether equitable jurisdiction should be exercised is a decision committed to the sound discretion of the Court."  *Sea Star Line LLC. v. Emerald Equipment Leasing, Inc.*, C.A. No. 05-245-JF, 2006 U.S. Dist. LEXIS 2797, at *2627 (D. Del. 2006) (relating to a claim for an accounting).  Here, the Court should exercise equitable jurisdiction over Plaintiff's equitable claims for rescission and for an accounting.

### 1.    Plaintiffs' Claims for Rescission Should Be Sustained

The Delaware Court of Chancery has emphasized that as a matter of policy, it is necessary to enforce strict compliance with shareholder-approved compensation plans.  *Sanders v. Wang*, No. 16640, 1999 WL 1044880, at * 12 (Del Ch. Nov. 8, 1999).  The Complaint states a claim for rescission because, here, Defendants did not comply with the strict terms of the plans.  ¶¶7, 10, 65-78, 134, 352-353, 359.  The Complaint alleges in detail the relevant terms of the stock option plans that were violated and that any stock options that were backdated when granted were thus induced by backdating improprieties.  ¶¶65-78.  The Complaint further alleges in detail the inequitable manner in which the Defendants obtained ill-gotten gains from their backdating schemes.  *Id.*, ¶¶80-132.  In quarrelling over Plaintiffs' equitable claims brought to recover these improperly induced options and the resultant ill-gotten option contracts, Defendants do not and cannot articulate any theory, in law or in equity, that would support their apparent view that they should be permitted to keep these ill-gotten gains.  And there is no such theory.

Here, rescission is an available claim because the options granted to the recipients of backdated options were illegal and not authorized by either their employment agreements or the stock option plans. ¶¶56, 65-79, 142, 352-353, 359. Moreover, the terms of Sunrise stock option plans were blatantly violated when the Stock Option Committee members approved backdated stock option grants. ¶¶80-132. The rescission claim is also based upon the recipient's abuse of their control of the Company. These Defendants abused their positions of control by facilitating approval of the stock option plans according to one set of terms, and then manipulating the stock option grant dates according to another set of undisclosed terms. ¶7, 19-38, 64-132. This backdating scheme continued for ten years and without the Defendants taking any remedial measures. These facts demonstrate that the recipients of backdated stock options never intended to comply with the plan terms. Thus, the Complaint states a claim for recessionary relief to the extent that the recipients of backdated stock options are still in position to receive shares pursuant to the exercise of backdated options or have yet to exercise backdated options.

## 2. Plaintiffs Are Entitled to an Accounting

An accounting is an equitable claim that is available when the amount in question is not readily ascertainable. *Sea Star*, 2006 U.S. Dist. LEXIS 2797, at *26 (declining to dismiss the claim for an accounting even where plaintiffs asserted claims for money damages in other counts). An action for an accounting is appropriate in a number of instances, including when there are allegations of fraud, there is a fiduciary relationship between the parties accompanied by a duty on the part of the defendant to render an account, and when there is a need for discovery. *Id*. at *26.

Here, fiduciary duties are involved. The directors and officers of the Company had a fiduciary relationship with Sunrise's shareholders and Defendants also have a duty to render an accounting. ¶¶331, 335. Further, there is need for discovery of the actual grant dates, the

amounts and recipients of option grants that were not publicly disclosed, the exercise date of the stock options granted to the Defendants and the disposition of proceeds received by the Defendants for the sale or other disposition of the backdated stock option grants. ¶7, 9-10, 203-220, 335. Thus, the claim for an accounting is adequately stated.

## V.    <u>CONCLUSION</u>

Plaintiffs' claims are timely, this Court has personal jurisdiction over all defendants, and all of Plaintiffs' claims are actionable. Accordingly, the Court should deny the Individual Defendants' motions to dismiss and direct them to answer the Amended Consolidated Complaint forthwith.


DATED: July 24, 2008                               Respectfully submitted,

                                                   DAVIS, COWELL & BOWE, LLP


                                                   ___/s/ Mark Hanna_____
                                                   George R. Murphy (DC Bar 75200)
                                                   Mark Hanna (DC Bar 471960)
                                                   Joni S. Jacobs (DC Bar 493846)
                                                   1701 K Street NW, Suite 210
                                                   Washington, DC 20006
                                                   Telephone:  (202) 223-2620
                                                   Facsimile:  (202) 223-8651

                                                   *Liaison Counsel*

                                                   SCHIFFRIN BARROWAY
                                                   TOPAZ & KESSLER, LLP
                                                   Lee D. Rudy
                                                   Michael C. Wagner
                                                   J. Daniel Albert
                                                   280 King of Prussia Road
                                                   Radnor, PA  19087
                                                   Telephone:  (610) 667-7706
                                                   Facsimile: (610) 667-7056

                                                   SAXENA WHITE P.A.

Maya Saxena
Joseph White
Christopher Jones
2424 North Federal Highway, Suite 257
Boca Raton, FL  33431
Telephone:  (561) 394-3399
Facsimile:  (561) 394-3382

ROBBINS, UMEDA, & FINK LLP
Jeffrey P. Fink
Felipe J. Arroyo
Ashley R. Palmer
610 West Ash Street, Suite 1800
San Diego, CA  92101
Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991

*Co-Lead Counsels for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | ) | |
| In Re SUNRISE SENIOR LIVING, INC. | ) | **Civil Action No. 07-00143** |
| Derivative Litigation | ) | |
| _____ | ) | |
| | ) | |
| This Document Relates To: | ) | |
| | ) | |
| | ) | |
| ALL ACTIONS | ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies, under penalty of perjury, that the foregoing was

served electronically via ECF on counsel for Defendants on July 24, 2008, and that no

Defendant needs to be served by mail.

July 24, 2008                                  /s/ Mark Hanna_____