UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: SUNRISE SENIOR LIVING, INC.<br>Derivative Litigation<br><br>This Document Relates To:<br><br>ALL ACTIONS | :<br>:<br>:<br>:   Civil Action No. 07-00143<br>:                     (RBW)<br>:<br>:<br>: |

**REPLY MEMORANDUM IN SUPPORT OF
<u>DEFENDANT DAVID G. BRADLEY'S MOTION TO DISMISS</u>**

Philip A. Sechler (D.C. Bar No. 426358)
Scott K. Dasovich (D.C. Bar No. 975575)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)

*Counsel for Defendant David G. Bradley*

Dated: August 18, 2008

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | | Plaintiffs Do Not State a § 10(b) or § 20(a) Claim Against Bradley. | 3 |
| | A. | Plaintiffs Do Not State a § 10(b) or § 20(a) Claim Against Bradley for Alleged Backdating. | 3 |
| | B. | Plaintiffs Do Not State a § 10(b) or § 20(a) Claim Against Bradley for Statements in Forms 10-K Regarding Accounting for Real-Estate Joint Ventures. | 5 |
| | C. | Plaintiffs' § 10(b), 14(a), and 20(a) Claims Related to Stock Option Backdating Are Time-Barred. | 10 |
| II. | | Because Plaintiffs Fail to State a Federal Claim, the Court Should Dismiss All Claims Against Bradley. | 11 |
| III. | | Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Against Bradley. | 11 |

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004) ..............................4

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) ........................................................................9

*Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697 (N.D. Ill. 2005) ............................................................7

*DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002)..........................9

*Fidel v. Farley*, 392 F.3d 220 (6th Cir. 2004)..................................................................................8

*In re Affiliated Computer Servs. Derivative Litig.*, 540 F. Supp. 2d 695 (N.D. Tex. 2007)..........10

*In re Atmel Corp. Derivative Litig.*, 2007 WL 2070299 (N.D. Cal. July 16, 2007) ......................10

*In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708 (N.D. Ill. July 12, 2006) .........................7

*In re BearingPoint, Inc. Sec. Litig.*, 525 F. Supp. 2d 759 (E.D. Va. 2007).....................................7

*In re Comshare Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999) .......................................................8

\*   *In re Fed. Nat. Mortgage Ass'n Sec., Derivative, and "ERISA" Litig.*, 503 F. Supp. 2d
     25 (D.D.C. 2007) ..............................................................................................3, 8, 9, 10

*In re Livent Inc.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001).................................................................8

*In re Verisign, Inc. Deriv. Litig.*, 2007 WL 2705221 (N.D. Cal. Sept. 14, 2007) ..........................7

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, __ F.3d __, 2008
     WL 2894793 (5th Cir. July 29, 2008)...............................................................................8

*Key Equity Investors, Inc. v. Sel-Leb Mktg. Inc.*, 246 Fed. Appx. 780 (3d Cir. 2007) ...................8

*Pedroli v. Bartek*, 2008 WL 901203 (E.D. Tex. Mar. 31, 2008) .....................................................6

*Pirraglia v. Novell, Inc.*, 339 F.3d 1182 (10th Cir. 2003) ...............................................................8

*Rep. Prop. Trust v. Rep. Props. Corp.*, 540 F. Supp. 2d 144 (D.D.C. 2008)................................11

*Wojtunik v. Kealy*, 394 F. Supp. 2d 1149 (D. Ariz. 2005)..........................................................5, 6

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001).......................................................9

\*Authorities on which we chiefly rely are marked with asterisks.


**STATE CASES**

\* *Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) ................................................... 11, 12, 13

*In re Tyson Foods, Inc.*, 919 A.2d 563 (Del. Ch. 2007) ............................................................... 12

*Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007) ........................................................................... 12

**OTHER AUTHORITIES**

28 U.S.C. § 1367(c) ....................................................................................................................... 11

**INTRODUCTION**

Plaintiffs' opposition to the individual defendants' motions to dismiss ("Opposition" or "Opp'n Mem.") contains no serious answer to Bradley's arguments that the Amended Consolidated Complaint ("Am. Compl.") fails to state a claim against Bradley. Indeed, Plaintiffs' fifty-four page opposition barely mentions Bradley's name. Instead, Plaintiffs, echoing the generic and conclusory nature of their Amended Complaint, continue to assert non-particularized allegations regarding "Defendants," many of which are simply nonsensical when applied to Bradley. As set forth below, and in Bradley's opening brief, such group-pleaded allegations are wholly insufficient to state any claim against Bradley.

Moreover, Plaintiffs effectively concede that their federal claims concerning alleged backdating at Sunrise are time-barred. In fact, Plaintiffs nowhere dispute that (1) their § 14(a) claims are time-barred in their entirety and (2) their § 10(b) and § 20(a) claims based on alleged backdating at Sunrise are similarly time-barred. Instead, Plaintiffs can only claim that § 10(b) and § 20(a) claims concerning statements made in Forms 10-K related to accounting for "real-estate joint ventures"—claims wholly distinct from their backdating allegations—are not time-barred. However, just as Plaintiffs fail to satisfy the heightened pleading standards of the PSLRA and Rule 9(b) regarding their time-barred backdating claims, they similarly fail to allege any particularized facts that state a claim regarding those Form 10-K statements against defendant David G. Bradley. For the same reasons, Plaintiffs fail to state a claim for breach of fiduciary duty against Bradley for their fraud-based allegations of backdating and accounting improprieties at Sunrise. All claims against Bradley should be dismissed.

# ARGUMENT

**I.     Plaintiffs Do Not State a § 10(b) or § 20(a) Claim Against Bradley.**

Though essentially conceding that their backdating claims are time-barred, *see infra* section I.C, Plaintiffs nevertheless continue to argue that they have stated a claim against defendants for § 10(b) and § 20(a) violations for alleged backdating. Plaintiffs also assert that they have stated a claim for federal securities laws violations based on another issue entirely: statements made in Sunrise Forms 10-K related to accounting for "real-estate joint ventures." Plaintiffs fail to allege particularized facts sufficient to state a claim against Bradley under either theory.

As set forth in Bradley's opening brief, "[c]omplaints brought under Section 10(b) and Rule 10b-5 are governed by special pleading standards adopted by Congress in the PSLRA. These pleading standards are unique to securities fraud cases and were adopted in an attempt to curb abuses of this type of litigation." *In re Fed. Nat. Mortgage Ass'n Sec., Derivative, and "ERISA" Litig.*, 503 F. Supp. 2d 25, 36 (D.D.C. 2007) ("*In re Fannie Mae*"). In particular, "Congress stated . . . that a plaintiff's complaint must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* Plaintiffs' Amended Complaint fails to do so here.

      **A.     Plaintiffs Do Not State a § 10(b) or § 20(a) Claim Against Bradley for Alleged Backdating.**

In their opposition, Plaintiffs fail to point to any particularized facts regarding Bradley's involvement in alleged backdating at Sunrise. Instead, they offer only generalized arguments regarding "Defendants'" role in alleged backdating. Opp'n Br. at 16-32. As an initial matter, those arguments often do not apply to Bradley. Plaintiffs claim, for instance, that "Defendants . . . received backdated stock options and then turned around and sold their holdings for

combined insider sales of over $174 million." Opp'n Br. at 24. That argument is at odds with the allegations in Plaintiffs' Amended Complaint itself, in which Plaintiffs do not name Bradley as an "Insider Selling" Defendant, and do not allege he sold any backdated options. *E.g.*, Am. Compl. ¶¶ 241-42.

Plaintiffs' remaining generalized assertions do not state a claim for backdating against Bradley. Plaintiffs principally claim that they have alleged scienter because "the Complaint alleges that, <u>on information and belief</u>, [eighteen individual defendants, including Bradley] . . . would review historical stock prices before issuing stock options to determine the date upon which stock prices were significantly below the current market price. They would then falsify relevant documents . . . ." Opp'n Br. at 24 (emphasis added). However, Plaintiffs fail to explain how those allegations are sufficient under the PSLRA, even though they recognize that "if an allegation regarding [a] statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." § 78u-4(b)(1); Opp'n Br. at 16. Moreover, Plaintiffs do not address the holdings of numerous Courts of Appeal that a plaintiff should, to satisfy this standard, "provid[e] sufficient documentary evidence and/or a sufficient description of the personal sources of the plaintiff's beliefs." *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004) (holding plaintiff's allegations, which included citations to documentary evidence and references to confidential sources, failed to meet requirements of PSLRA); *see also* Mem. P. & A. Support Def. David G. Bradley's Mot. Dis. ("Bradley Br.") at 13-14 (collecting cases). Plaintiffs do not (and cannot) point to any such pleaded evidence or facts on which their "information and belief" is based or formed, a clear indication that the Amended Complaint fails to satisfy this express requirement of the PSLRA. Moreover, Plaintiffs' failure to plead any such facts in the Amended Complaint, despite having

filed that amended pleading well over a year after initiating this action, removes any doubt that Plaintiffs lack any articulable factual basis for those assertions. Plaintiffs' generalized and unsupported assertions do not state a claim against Bradley for alleged backdating.

>   **B.    Plaintiffs Do Not State a § 10(b) or § 20(a) Claim Against Bradley for Statements in Forms 10-K Regarding Accounting for Real-Estate Joint Ventures.**

Plaintiffs' opposition also fails to point to any particularized allegations that support their claims against Bradley based upon statements regarding Sunrise's real-estate joint ventures in Sunrise Forms 10-K for the years 2001-2004.[1] Instead, Plaintiffs spend nearly the entirety of their ten-page argument regarding scienter discussing alleged backdating, allegations that are time-barred and that are entirely unrelated to their real-estate joint venture accounting claims. Opp'n Br. at 21-30. Indeed, the only—group-pleaded—facts Plaintiffs urge regarding the Form 10-K statements at issue are that (1) "the Individual Defendants caused the Company to disclose . . . that the cumulative impact of the [backdating and accounting] restatement was anticipated to reduce net income . . . by approximately *$98* to *$107 million*," Opp'n Br. at 23-24 (emphasis in original); (2) Sunrise's accounting "for proceeds from their real estate joint ventures . . . violated GAAP," *id.* at 26; and (3) certain Defendants were Board members and served on the audit committee. From those bare factual allegations, Plaintiffs conclude that "through Defendants' . . . Board membership, as well as their participation on the . . . Audit Committee[], [Defendants] were, at best, consciously reckless in permitting . . . accounting violations to occur . . . ." Opp'n Br. at 24. As numerous courts have recognized, such generic and conclusory assertions do not state a claim against Bradley.

---

[1] Plaintiffs' claims regarding Sunrise's 1999 and 2000 Forms 10-K are time-barred. *See infra* n.2. Plaintiffs do not plead that Bradley signed the Form 10-K for fiscal year 2005 (filed after he left the Sunrise Board). Am. Compl. ¶¶ 198-202.

For example, in *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149 (D. Ariz. 2005), the court rejected plaintiff's argument that "it would 'defy credulity' for the outside directors, especially the three . . . who served on the board audit committee, to argue that they did not know about the accounting fraud given the allegations about how widespread and widely known the accounting fraud was within [defendant company] . . . ." *Id.* at 1168-69. The court, dismissing § 10(b) claims against outside-director defendants, including the audit committee members, held that "[s]cienter for PSLRA purposes . . . cannot rest on speculation," and noted that plaintiffs failed to allege any facts concerning "what information was presented to the outside directors about any of the alleged . . . GAAP violations . . . that put them on actual or constructive notice of fraudulent activity," such as "what the audit committee's role was, how many board meetings each outside director attended, when they attended them, what information or reports were provided to them concerning [defendant company's] financial affairs, the contents of such information, etc." *Id.* at 1168-69. Here, too, Plaintiffs do not state what information was presented to Bradley (or any defendant) about any of the alleged GAAP violations, how Bradley was put on actual or constructive notice of fraudulent activity, any facts regarding Bradley's role in the accounting for real-estate joint ventures (or in formulating Form 10-K statements regarding those ventures), how many board meetings Bradley attended, when he attended them, what information or reports were provided to him concerning Sunrise's financial affairs, or the contents of such information. *See also Pedroli v. Bartek*, 2008 WL 901203, at *9 (E.D. Tex. Mar. 31, 2008) (dismissing § 10(b) claims against audit committee members and finding "there is no mention of how the audit committee learned of . . . alleged improper accounting, who presented it with the information, when or how the committee members' response, or lack thereof, rendered them active participants in [the] wrongdoing").

Moreover, Plaintiffs' reliance on group pleading leads to a nonsensical result. For instance, Plaintiffs claim that "the Individual Defendants caused the company to disclose that its own accounting review revealed it had been improperly accounting for its joint venture investments," and thus all defendants had knowledge of "real estate joint venture accounting improprieties" in the past. Opp'n Br. at 23. According to the Amended Complaint, however, Bradley was not a member of the Sunrise Board on July 31, 2006, when Plaintiffs allege he caused Sunrise to disclose its accounting review. *Compare* Am. Compl. ¶ 227 (citing a Sunrise July 31, 2006 announcement) *with id.* ¶ 25 ("Bradley . . . served as a director of Sunrise from August 1997 to 2005 . . . .").

In any event, courts have consistently refused to draw inferences of scienter from similar examples of the "classic 'fraud by hindsight' allegation." *In re BearingPoint, Inc. Sec. Litig.*, 525 F. Supp. 2d 759, 776-77 (E.D. Va. 2007). As the *BearingPoint* court held, "Plaintiff cannot piggyback an inference of scienter for the false financials on a subsequent determination by the Audit Committee that the internal controls were inadequate." *Id.* Indeed, "the mere fact that a corporation restates its financial statements does not give rise to a strong inference that any individual defendant acted with intent to defraud." *In re Verisign, Inc. Deriv. Litig.*, 2007 WL 2705221, at *30 (N.D. Cal. Sept. 14, 2007); *see also In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *7 (N.D. Ill. July 12, 2006) (dismissing § 10(b) claims and noting "hindsight conclusions . . . do not assist in determining the state of mind behind the misstatements at the time they were made"); *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005) ("Permutations of 'fraud by hindsight' do not create an inference, much less a strong inference, of scienter."). Thus, an announcement made in July 2006 by Sunrise provides no basis for an inference that any defendant acted with scienter years before.

Plaintiffs' other generic allegations also fail to support an inference of scienter against any defendant, including Bradley. For example, Plaintiffs imply that the magnitude of Sunrise's accounting restatement can form the proper basis for an inference of scienter. Opp'n Br. at 24 ("[T]he cumulative impact of the [backdating and accounting] restatement was anticipated to reduce net income . . . by approximately ***$98* to *$107 million*** . . . ." (emphasis in original)). However, as this Court has found, "[a]llowing an inference of scienter based on the magnitude of fraud would eviscerate the principle that accounting errors alone cannot justify a finding of scienter." *In re Fannie Mae*, 503 F. Supp. 2d at 41-42 (quoting *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004)); *see also Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, __ F.3d __, 2008 WL 2894793, at *9 (5th Cir. July 29, 2008) ("Plaintiffs also assert that the magnitude and egregiousness of [defendant's] premature revenue recognition create an inference of scienter . . . . Such bold statements cannot substitute for factual assertions connecting the corporate executives to . . . accounting . . . practices that led to the alleged overstatements."); *In re Livent Inc.*, 151 F. Supp. 2d 371, 434 (S.D.N.Y. 2001) (rejecting argument "that the magnitude of the fraud itself suffices to satisfy the scienter requirement as to the Audit Committee"). Here, notwithstanding their choice of an emphatic typeface, Plaintiffs' recitation of the figure "***$98* to *$107 million***" does not support an inference of scienter regarding any defendant.

Plaintiffs also claim that an allegation of a GAAP violation is itself sufficient to establish scienter. Opp'n Br. at 26. They are wrong. As numerous courts have recognized, "[t]he failure to follow GAAP is, by itself, insufficient to state a securities fraud claim." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999); *see Key Equity Investors, Inc. v. Sel-Leb Mktg. Inc.*, 246 Fed. Appx. 780, 786 (3d Cir. 2007) (affirming district court's dismissal of § 10(b)

-8-

complaint as lacking particularized facts sufficient to establish scienter despite district court's conclusion that "complaint adequately identified" materially misleading earnings statements); *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1191 (10th Cir. 2003) ("Claims of accounting irregularities or violations of [GAAP] support a claim of scienter only when coupled with evidence that the violations or irregularities were the result of the defendant's fraudulent intent to mislead investors." (internal quotation marks omitted)); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) ("[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter." (internal quotation marks omitted)); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1208 (11th Cir. 2001) (same); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) (same).

     Plaintiffs rely on *In re Baan Co. Securities Litigation*, in which this Court determined that specific statements attributed to specific defendants, specific allegations regarding the involvement of particular defendants on both sides of the disputed transaction, and particularized allegations of defendants' intimate involvement with the day-to-day operations of the company, in addition to a violation of GAAP, supported an inference of scienter. 103 F. Supp. 2d 1, 20-24 (D.D.C. 2000). Here, Plaintiffs attribute no particular statements to former outside director Bradley regarding real-estate joint ventures (or any other allegation in the Complaint), fail to (and cannot) allege any day-to-day involvement by him with Sunrise, and do not offer any facts whatsoever that could support an inference he knew of any accounting issues related to those joint ventures. Thus, Plaintiffs' pleadings are far more similar to those at issue in *In re Fannie Mae*, in which this Court held that "*generic* allegations that Fannie Mae's accounting treatment violated GAAP and was restated," 503 F. Supp. 2d at 42 (emphasis in original), did not support an inference of scienter under the PSLRA as to either corporate officers or "audit committee

directors." *See* 503 F. Supp. 2d at 39-42.  Similarly, Plaintiffs' bare allegations here of a GAAP violation and board committee membership do not support an inference of scienter against Bradley.

Finally, as this Court has recognized, Plaintiffs' allegation that Bradley was a member of the Sunrise Audit Committee is not a particularized allegation that can support an inference of scienter.  In *In re Fannie Mae*, this Court held allegations that "[t]he Audit Committee Defendants were in charge of ensuring that the Company had adequate and effective internal controls," and that they "failed miserably in the performance of [their] duties" are not specific facts that can support an inference of scienter.  503 F. Supp. 2d at 40-41.  The Court held that the plaintiffs failed to "specify: (1) what facts, if any, were brought to the attention of the Audit Committee; (2) when these facts were brought; or (3) what, if anything, the Audit Committee did in response.  Without such specific allegations, the E & F plaintiffs' allegations, at best, rise to the level of negligence on that part of the Audit Committee, but do not demonstrate the required state of mind of extreme recklessness." *Id.*  Plaintiffs' § 10(b) and 20(a) claims against Bradley should be dismissed.

    **C.**    **Plaintiffs' § 10(b), 14(a), and 20(a) Claims Related to Stock Option Backdating Are Time-Barred.**

Plaintiffs offer no response to the argument that, as set forth in Bradley's opening brief, their § 14(a) claims are completely time-barred, or that their § 10(b) and § 20(a) stock option backdating claims are untimely.  Opp'n Br. at 7-8.  Instead, Plaintiffs state that they have timely filed § 10(b) and § 20(a) claims based on "materially false statements in Sunrise's annual reports on Forms 10-K for the years 1999-2005" regarding "Sunrise's real-estate operations." *Id.*  Of course, any claim based on 10-K statements regarding accounting for "real-estate operations" does not resurrect Plaintiffs' § 10(b) and 20(a) backdating claims. *See, e.g.*, *In re Affiliated*

*Computer Servs. Derivative Litig.*, 540 F. Supp. 2d 695, 700-01 (N.D. Tex. 2007) (distinguishing time-barred § 10(b) backdating claims from non-barred § 10(b) claims alleging misstatements in Forms 10-K); *In re Atmel Corp. Derivative Litig.*, 2007 WL 2070299 (N.D. Cal. July 16, 2007) (holding plaintiffs "may not avoid the effect of the statute of limitations by combining allegations of recent financial statements and time-barred option back-dating"). The Court should dismiss as time-barred Plaintiffs' § 14(a) claims against Bradley, as well as Plaintiffs' § 10(b) and 20(a) claims to the extent those claims are based on alleged backdating at Sunrise.[2]

**II.  Because Plaintiffs Fail to State a Federal Claim, the Court Should Dismiss All Claims Against Bradley.**

As set forth in the defendants' opening briefs, because Plaintiffs fail to state a federal claim against defendants, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. *See* 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction over pendant claims after dismissing claims over which it has original jurisdiction); *Rep. Prop. Trust v. Rep. Props. Corp.*, 540 F. Supp. 2d 144, 164 (D.D.C. 2008) (declining to exercise supplemental jurisdiction over remaining claims after dismissing federal § 10(b) claims).

**III.  Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Against Bradley.**

Plaintiffs' sparse and generalized allegations regarding Bradley do not state a claim for breach of fiduciary duty. Just as their Amended Complaint pleads only general facts regarding the defendants' roles in alleged backdating, Plaintiffs' Opposition similarly fails to point to even

---

[2] Plaintiffs' allegations concerning Forms 10-K for the years 1999 and 2000 are also barred. Under the operative five-year period of repose applicable to § 10(b) and § 20(a) claims, *see* Opp'n Br. at 7, claims based on Forms 10-K filed prior to January 19, 2002 are untimely. Thus, Plaintiffs' claims concerning Sunrise 1999 and 2000 Forms 10-K are barred. *See* Am. Compl. ¶ 157 (alleging Sunrise 1999 Form 10-K filed around March 30, 2000); *id.* ¶ 168 (alleging Sunrise 2000 Form 10-K filed around March 30, 2001).

a single particularized fact "specific to" Bradley, as required to support their claims. *See Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007). Instead, Plaintiffs quote extensively from the facts of another case entirely—*Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007), where the court found well-pleaded allegations of "surreptious[]" backdating and "false representations regarding the option dates"—to argue that they have stated a claim against defendants here. Opp'n Br. at 33. However, the facts of *Ryan* are easily distinguished from the allegations of the Amended Complaint.

In *Ryan*, the plaintiffs pled that "every challenged option grant occurred during the lowest market price of the month or year in which it was granted." *Id.* at 358. Here, Plaintiffs fail to allege a similar pattern of stock option grants. Instead, Plaintiffs can allege only that several of the grants at issue were variously made at "one of" the low prices of the fiscal quarter, Am. Compl. ¶ 94 or "near" a quarterly low, Am. Compl. ¶ 106. Moreover, as set forth in Sunrise's opening brief, many of the challenged grants coincide with specific corporate events that rebut any inference of backdating. For that reason alone, *Ryan* is inapposite. Thus, Plaintiffs' reliance on *Ryan* and *In re Tyson Foods, Inc.*, 919 A.2d 563 (Del. Ch. 2007), for the proposition that "issuance of options in conjunction with such deception . . . amounts to a disloyal act taken in bad faith" has no bearing here, where Plaintiffs have failed to allege issuance of options with deception in the first instance. Opp'n Br. at 33.

Moreover, Delaware courts have rejected precisely the type of broad-brush application of *Ryan* and *In re Tyson* that Plaintiffs urge here. Indeed, courts should take a "cautious, non-generic approach to addressing" backdating claims, particularly those in which, as here, "[p]laintiff . . . has pled no facts to suggest even the hint of a culpable state of mind on the part of any director." *Desimone*, 924 A.2d at 931. In particular, Delaware courts have held that in order

to state a claim for a breach of the duty of loyalty in the backdating context, a plaintiff must plead facts sufficient to show "that [a] compensation committee [member] knew that the options violated the stock option plan and that the options were being accounted for in a manner that was improper, or that their failure to obtain that information resulted from their knowing abdication of their directorial duties." *Desimone*, 924 A.2d at 933.  Instead of pointing to any such facts in their Amended Complaint (which they cannot), Plaintiffs, who ignore *Desimone* entirely, argue only that "the Stock Option Committee . . . had a duty to use compensation to incentivize management to increase shareholder value." Opp'n Br. at 34 (internal quotation mark omitted). That generalized statement presents no fact suggesting that Bradley knew that any options grants violated a stock option plan, that he knew they were being accounted for in an improper manner, or that he knowingly abdicated his directorial duties.  *See Desimone*, 924 A.2d at 938 (finding "vague and conclusory statement [that outside directors served on compensation committee] does not suggest in any way that the Compensation Committee was involved in or had knowledge of any backdating").

Plaintiffs also fail to point to any facts regarding Bradley's role in alleged improper joint venture accounting.  In their Opposition, Plaintiffs cite ¶¶ 5, 10, and 44-57 of the Amended Complaint as containing facts concerning Defendants' role in improper accounting for "joint venture real estate developments." Opp'n at 36.  As set forth in Bradley's opening brief—and, again, not even addressed by Plaintiffs in their Opposition—the Complaint does not refer to Bradley once in those paragraphs. *See* Am. Compl. ¶¶ 5, 10, 44-57 (alleging that "the Klaassens, Newell, Gaul, Rush, Aprahamain, Callen and Donohue forced the Company to make material misrepresentations regarding the overall performance of the Company and specifically the performance of Sunrise's real estate joint ventures in relationship to the Company's overall

performance"). Having effectively conceded their failure to plead any facts regarding Bradley's involvement in alleged improper accounting, Plaintiffs' claims based on improper accounting against Bradley should be dismissed.[3]

## CONCLUSION

For the foregoing reasons, as well as those stated in Bradley's opening brief, the Complaint should be dismissed.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

/s/      Scott K. Dasovich
Philip A. Sechler (D.C. Bar No. 426358)
Scott K. Dasovich (D.C. Bar No. 975575)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)

*Counsel for Defendant David G. Bradley*

Dated: August 18, 2008

---

[3] Because Plaintiffs have failed to state a claim against Bradley regarding either alleged backdating or accounting issues at Sunrise, their claims of unjust enrichment, rescission, and accounting against Bradley should also be dismissed. Moreover, Plaintiffs fail to address Bradley's additional arguments regarding Plaintiffs' failure to state a claim for unjust enrichment. As set forth in Bradley's opening brief, Bradley did not receive backdated options on February 25, 2000, when Sunrise's board approved the 2000 stock option plan, *see, e.g.*, Am. Compl. at 50 n.12, or "ultra vires" options on May 11, 2001, when he received no grants at all. Bradley Br. at 20-21.

## CERTIFICATE OF SERVICE

        I hereby certify that, on August 18, 2008, copies of the foregoing Reply in Support of David G. Bradley's Motion To Dismiss were served via electronic filing and/or first-class United States mail, postage pre-paid, upon the following:

| | |
|---|---|
| HOGAN & HARTSON, LLP<br>George H. Mernick, III<br>Columbia Square<br>555 Thirteenth Street, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 637-5726<br>Facsimile: (202) 637-5910<br><br>N. Thomas Connally<br>Jon M. Talotta<br>8300 Greensboro Drive, Suite 1100<br>McLean, VA  22102<br>Telephone: (703) 610-6100<br>Facsimile: (703) 610-6200<br><br>*Counsel for Nominal Defendant Sunrise Senior Living, Inc.* | GIBSON, DUNN & CRUTCHER LLP<br>John C. Millian<br>Matthew R. Estabrook<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036<br>Telephone: (202) 955-8500<br>Facsimile: (202) 467-0539<br><br>*Counsel for Defendants Carl Adams*, *Ronald V. Aprahmian*, *Craig R. Callen*, *Thomas J. Donohue*, *Richard A. Doppelt*, *David W. Faeder*, *John F. Gaul*, *J. Douglas Holladay*, *Larry E. Hulse*, *Paul L. Klaassen*, *Teresa M. Klaassen*, *Pete A. Klisares*, *William Little*, *J. Willard Marriott, Jr.*, *Scott F. Meadow*, *Darcy Moore*, *Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton* and *Tiffany L. Tomasso* |
| DAVIS, COWELL & BOWE, LLP<br>George R. Murphy<br>Mark Hanna<br>Joni S. Jacobs<br>1701 K Street NW, Suite 210<br>Washington, DC  20006<br>Telephone: (202) 223-2620<br>Facsimile: (202) 223-8651<br><br>*Liaison Counsel for Plaintiffs* | AKIN GUMP STRAUSS HAUER & FELD, LLP<br>John M. Dowd<br>Paul W. Butler<br>Jeffrey M. King<br>1333 New Hampshire Avenue, NW<br>Washington, DC  20036<br>Telephone: (202) 887-4000<br>Facsimile: (202) 887-4288<br><br>*Counsel for Defendant Bradley B. Rush* |

-2-

SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP
Lee Rudy
Eric Lechtzin
J. Daniel Albert
280 King of Prussia Road
Radnor, PA  19087
Telephone (610) 667-7706
Facsimile: (610) 667-7056

SAXENA WHITE, P.A.
Maya Saxena
Joseph E. White, III
2424 North Federal Highway, Suite 257
Boca Raton, FL 33431
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

ROBBINS, UMEDA & FINK, LLP
Brian J. Robbins
Felipe J. Arroyo
Ashley R. Palmer
610 West Ash Street, Suite 1800
San Diego, CA  92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

*Co-Lead Counsels for Plaintiff*

                                             /s/     Scott K. Dasovich                    
                                             Scott K. Dasovich