UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re SUNRISE SENIOR LIVING, INC.<br><br>Derivative Litigation. | **Civil Action No. 07-00143** |

This Document Relates To:

ALL ACTIONS

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP
John C. Millian
Matthew R. Estabrook
Elise Kochtitzky Jacques
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

*Counsel for the Individual Defendants*
*(Paul J. Klaassen, Carl Adams, Ronald V.*
*Aprahamian, Craig R. Callen, Thomas J.*
*Donohue, David W. Faeder, J. Douglas*
*Holladay, Larry E. Hulse, Teresa M. Klaassen,*
*Peter A. Klisares, Thomas B. Newell, Robert R.*
*Slager, Christian B.A. Slavin, Timothy S. Smick,*
*Brian C. Swinton  and Tiffany L. Tomasso)*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. ARGUMENT ................................................................................................... 1

    A.    Plaintiffs Have Failed to Establish That Demand Is Excused, Nor Shown
        Why the Case Should Not Be Stayed if Not Dismissed Outright ......................... 1

    B.    Plaintiffs Fail Adequately to Allege Standing, and Cannot Do So ...................... 2

    C.    Plaintiffs Have Not Adequately Pled That This Court Has Personal
        Jurisdiction Over the Individual Defendants ...................................................... 5

    D.    Plaintiffs' Federal Law Claims Are Barred by the Statute of Limitations ............ 7

        1.    Plaintiffs' § 10(b) Claims Are Time-Barred ............................................ 7

        2.    Plaintiffs' § 14(a) Claim Is Time-Barred ................................................. 9

    E.    Plaintiffs Fail to State a Claim for Any Federal Securities Law Violation ........... 9

        1.    Plaintiffs Failed to Allege Adequately That Any Individual
            Defendant Committed Misconduct ........................................................... 9

        2.    Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of
            Scienter with Respect to Alleged Backdating .......................................... 10

        3.    Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of
            Scienter With Regard to the Alleged GAAP Violations .......................... 11

        4.    Plaintiffs' Conclusory Assertions of Insider Trading Do Not Cure
            Their Failure to Allege Facts Giving Rise to a Strong Inference of
            Scienter ................................................................................................. 12

        5.    Plaintiffs Do Not Allege Reliance With the Requisite Specificity .......... 16

        6.    Plaintiffs Do Not Dispute That They Have Failed to Plead a § 14(a)
            Claim .................................................................................................... 17

        7.    Plaintiffs Fail to Plead Adequately a § 20(a) Claim .............................. 17

    F.    Because Plaintiffs Fail to State Any Federal Claim, the Court Must
        Dismiss the Entire Case for Lack of Subject Matter Jurisdiction ....................... 18

G.  Each of Plaintiffs' Pendant State Law Claims Is Also Subject to Dismissal on the Merits ........................................................................................... 18

1.  Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty ................. 19

a.  To the Extent Their Claim Is Based On Stock Option Backdating, Plaintiffs Fail to Justify Tolling the Limitations Period .......................................................................................... 19

b.  Plaintiffs' Opposition Fails to Justify Their Inadequate Allegations of Stock Option Backdating ..................................... 21

c.  Plaintiffs Fail to Adequately Allege Facts to Support a Claim for Breach of the Duty of Loyalty Regarding Allegedly Misleading SEC Filings ............................................... 22

d.  Plaintiffs Fail to Adequately Allege Facts to Support a Claim for Breach of the Duty of Loyalty Regarding Joint Venture Accounting .................................................................... 23

2.  Plaintiffs Fail to Adequately Plead a Claim for Insider Trading and Misappropriation of Information .............................................................. 24

3.  Plaintiffs' Unjust Enrichment Claims Must Fail Because Plaintiffs Fail to Adequately Plead an Underlying Breach of Fiduciary Duty ........ 24

4.  The Rescission Counts and the Accounting Count Must Be Dismissed Because These Are Remedies, Not Claims ........................... 24

III.  CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Acito v. IMCERA Group*,
    47 F.3d 47 (2d Cir. 1995) ................................................................. 14

*Adams v. Kinder-Morgan, Inc.*
    340 F.3d 1083 (10th Cir. 2003) ....................................................... 18

*Began v. Dixon*,
    547 A.2d 620 (Del. Super. 1998) ..................................................... 20

*Burman v. Phoenix Worldwide Indus. Inc.*,
    437 F. Supp. 2d 142 (D.D.C. 2006) .............................................. 5, 12

*City of Monroe Employee Ret. Sys. v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005) ............................................................. 6

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007) ........................................................... 4

*DSAM Global Value Fund v. Altris Software, Inc.*,
    288 F.3d 385 (9th Cir. 2002) ........................................................... 12

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ......................................................................... 18

*FDIC v. Milken*,
    781 F. Supp. 226 (S.D.N.Y. 1991) ................................................... 6

*Galdi v. Jones*,
    141 F.2d 984 (2d Cir. 1944) ............................................................... 2

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. 2003) ......................................................... 15

*Higginbotham v. Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) ........................................................... 13

*In re 3Com Sec. Litig.*,
    761 F. Supp. 1411 (N.D.Cal. 1990) ................................................ 17

*In re Adelphia Communc'ns Corp. Sec. & Derivative Litig.*,
    398 F. Supp. 2d 244 (S.D.N.Y. 2005) ............................................ 17

*In re Advanta Corp. Sec. Litig.*,
    180 F.3d 525 (3d Cir. 1999) ............................................................ 15

*In re Baan Co. Sec. Litig.*,
    245 F. Supp. 2d 117 (D.D.C. 2003) ............................................. 6, 7

*In re Bank of New York Derivative Litig.*,
    173 F. Supp. 2d 193 (S.D.N.Y. 2001), *aff'd*, 320 F.3d 291 (2d Cir. 2003) ................... 3, 4

*In re Burlington Coat Factory*,
   114 F.3d 1410 (3d Cir. 1997)........................................................................ 14

*In re Computer Scis. Corp. Derivative Litig.*,
   CV 06-05288 MRP (Ex), 2007 WL 1321715 (C.D. Cal. Mar. 26, 2007) ........................ 3

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
   355 F. Supp 2d. 1069 (N.D. Cal. 2005) ........................................................... 23

*In re Dean Witter P'ship Litig.*,
   C.C.A. No. 14816, 1998 Del. Ch. LEXIS 133 (July 17, 1998) ................................... 20

*In re Dynex Capital Sec. Litig.*,
   No. 05 Civ. 1987 (HB), 2006 U.S. Dist. LEXIS 4988 (S.D.N.Y. Feb. 10,
   2006) ................................................................................................... 9

*In re Fed. Nat'l Mortgage Ass'ns Sec. Derivative & "ERISA" Litig.*,
   503 F. Supp. 2d 25 (D.D.C. 2007) ................................................... 10, 11, 12, 18

*In re Financial Corp. of Am. Shareholder Litig.*,
   796 F.2d 1126 (9th Cir. 1986) ..................................................................... 8

*In re IAC/InterActiveCorp Sec. Litig.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007) .............................................................. 15

*In re Int'l Rectifier Corp. Sec. Litig.*,
   Case No. CV 07-02544 JPW(VBKY), 2008 U.S. Dist. LEXIS 44872
   (C.D. Cal. May 23, 2008) ............................................................................ 15

*In re Oracle Corp. Deriv. Litig.*,
   867 A.2d 904 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005).................................... 24

*In re PEC Solutions, Inc. Sec. Litig.*,
   418 F.3d 379 (4th Cir. 2005) ...................................................................... 14

*In re Sagent Tech., Inc. Derivative Litig.*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ............................................................. 3

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ...................................................................... 14

*Kushner v. Beverly Enters., Inc.*,
   317 F.3d 820 (8th Cir. 2003) ...................................................................... 12

*Little Switzerland, Inc. v. Destination Retail Holdings Corp.*,
   Civ. Action No. 98-315 SLR, 1999 U.S. Dist. LEXIS 5058 (D. Del. Mar.
   31, 1999) ............................................................................................ 6

*Malone v. Brincat*,
   722 A.2d 5 (Del. 1997) ............................................................................. 22

*Metro Communication Corp BVI v. Advanced Mobilecomm Technologies, Inc.*,
   854 A.2d 121 (Del. Ch. 2004)....................................................................... 22

*Quinto v. Legal Times of Wash., Inc.*,
   506 F. Supp. 554 (D.D.C. 1981) ................................................................... 6

iv

*Ryan v. Gifford*,
    918 A.2d 341 (Del. Ch. 2007).............................................................. 10, 19, 21

*San Mateo County Transit District v. Dearman, Fitzgerald & Roberts, Inc.*,
    979 F.2d 1356 (9th Cir. 1992) ................................................................ 5

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
    549 U.S. ____, 128 S. Ct. 761 (2008) ...................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007)......................................................................... 12

*Tracinda Corp. v. Daimlerchrysler* AG,
    197 F. Supp. 2d 86 (D. Del. 2002)......................................................... 6

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................. 23

*Wiggins v. Equifax, Inc.*,
    853 F. Supp. 500 (D.D.C. 1994) .......................................................... 6

*Winters v. Stemberg*,
    529 F. Supp. 2d 337 (D. Mass. 2008) ................................................... 10

## Other Authorities

7C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND
    PROCEDURE § 1828 ............................................................................ 3

# I.  INTRODUCTION

The Individual Defendants' opening memorandum in support of their motion to dismiss established numerous independent grounds upon which plaintiffs' Amended Consolidated Derivative Complaint (the "Amended Complaint") must be dismissed.   As we discuss below, plaintiffs' Omnibus Memorandum in Opposition to the Individual Defendants' Motions to Dismiss (the "Opposition") fails to refute any of these points; rather, a close examination of plaintiffs' arguments only confirms that (1) this action must be dismissed on numerous "threshold" grounds, including failure to make pre-suit demand, lack of standing by plaintiffs, and lack of personal jurisdiction over the Individual Defendants; (2) plaintiffs' federal law "counts" are barred by the statute of limitations; (3) even if not time-barred, those federal law counts are subject to dismissal for failure to state a claim; (4) absent any viable federal law claim, this case should be dismissed for lack of subject matter jurisdiction; and (5) finally, should the Court reach plaintiffs' pendant state law claims, those claims are also barred by the applicable statute of limitations and in any event subject to dismissal for failure to state a claim.

# II.  ARGUMENT

## A.     Plaintiffs Have Failed to Establish That Demand Is Excused, Nor Shown Why the Case Should Not Be Stayed if Not Dismissed Outright

As addressed in the separate Reply Memorandum of Points and Authorities in Support of the Motion to Dismiss the Or, In the Alternative, to Stay By Nominal Defendant Sunrise Senior Living, Inc. (the "Sunrise Reply"), plaintiffs have failed to make the case that a demand on Sunrise's board would have been futile and is excused.  Accordingly, this action should be dismissed.  Similarly, plaintiffs have failed to show that, even if their claims were to survive a motion to dismiss, this Court should not stay the present action until the related securities class

action litigation also pending before this Court is finally resolved.  The Individual Defendants hereby join in the arguments on these points set forth in the Sunrise Reply.

**B.    Plaintiffs Fail Adequately to Allege Standing, and Cannot Do So**

The Individual Defendants noted in their motion to dismiss plaintiffs' initial consolidated complaint that plaintiffs critically failed to allege ownership of Sunrise shares dating back to 1997—the start of the purported backdating scheme at the heart of their complaint—and thus fail the "continuous ownership" standing requirement of Fed. R. Civ. P. 23.1.  If plaintiffs in fact *had* owned their stock since 1997, they plainly would have "fixed" this standing problem simply by alleging in the Amended Complaint when in 1997 (or earlier) they acquired their stock.  They did not do so, and nor do they suggest in their Opposition that they could.  Accordingly, it is plain that plaintiffs have not and cannot plead that they have owned Sunrise stock continuously since 1997, as necessary to demonstrate standing under Rule 23.1.

Faced with this dilemma, plaintiffs offer two arguments that attempt to get around their obligation to plead facts showing that they meet the continuous ownership requirement. Plaintiffs' Opposition first argues that their ethereal, boilerplate allegations that they were Sunrise shareholders "at the time of the wrongdoing alleged herein," Am. Compl. ¶ 14-17, 283— a mere parroting of the language of Rule 23.1—are sufficient, without the need to plead any particular facts that, if true, would show this to be the case.  The only authority cited for this proposition, however, is (1) a single, sixty-four year-old case, *Galdi v. Jones*, 141 F.2d 984, 992 (2d Cir. 1944), that appears to be an "orphan" decision never followed by any other court, and (2) Wright & Miller's description of *Galdi*, presumably cited to suggest that this decision has been endorsed by the treatise.  This is not, however, the case; to the contrary, Wright & Miller's view of the law *contradicts* the position asserted by plaintiffs here:

> The pleading requirement in Rule 23.1(b)(1) is best satisfied by allegations with respect to each separate claim set forth in the complaint as to: (1) the dates of the events that are the subject of the action; (2) *the dates on which plaintiff acquired shares*; and (3) plaintiff's continuous ownership of the shares since their acquisition.

7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1828 (3d ed. 2008) (emphasis added and footnotes omitted).

Consistent with Wright & Miller's preferred approach, more recent cases in the backdating context relevant here have held that plaintiffs must identify when they purchased stock in the company. *See In re Computer Scis. Corp. Derivative Litig.*, Lead No. CV 06-05288 MRP (Ex), 2007 WL 1321715, at *15 (C.D. Cal. Mar. 26, 2007) (rejecting as insufficient allegations that each plaintiff "is, and was during the relevant period," or "is, and was at all times relevant" a shareholder of nominal defendant (internal citation and quotation omitted)); *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1096 (N.D. Cal. 2003). Logic, of course, also supports this result—it simply makes no sense to hold that vacuous "at all relevant times" assertions are sufficient to plead the existence of standing, when requiring that specific facts regarding plaintiffs' stock ownership be plead might instead show that standing <u>does not</u> exist. Plaintiffs cannot sufficiently plead the existence of standing by <u>avoiding</u> pleading when they in fact first acquired Sunrise stock.

Plaintiffs' Opposition also argues that the continuous ownership rule does not in any event apply where, as here, they have supposedly alleged the existence of a "continuing wrong." According to plaintiffs, the "continuing wrong" doctrine counsels that, when a course of conduct is alleged, a complaint "should not be dismissed on defendants' contention that the claims actually arose prior to the time that plaintiff[s] acquired stock." Opp. 10 (citing and quoting *In re Bank of New York Derivative Litig.*, 173 F. Supp. 2d 193, 198 (S.D.N.Y. 2001), *aff'd*, 320 F.3d 291 (2d Cir. 2003) ). Again, however, plaintiffs' own authority undermines their argument,

and additional authority makes clear that the "continuing wrong" doctrine, whatever its merits in other contexts, does not apply here.

As an initial matter, application of this doctrine *presupposes* that the date on which the plaintiffs acquired the stock is known—and in fact the date of purchase was known in *Bank of New York*. *See id*. Here, even if warranted, the "continuing wrong" analysis cannot be conducted because plaintiffs have not alleged the date on which they purchased Sunrise stock. The continuing wrong doctrine therefore does not excuse plaintiffs from their duty to allege standing in accord with Rule 23.1.

Beyond this fatal flaw, plaintiffs also fail to demonstrate why any "continuing wrong" doctrine should apply in <u>this</u> case. As *Bank of New York* makes clear, the doctrine "has not been universally adopted by the federal courts," and has been used sparingly by those courts that have adopted it; indeed, it was not applied in that case. *Id.* (internal quotations omitted). And the doctrine has been explicitly rejected in the backdating context:

> [T]he doctrine is a narrow one that typically is applied only in unusual situations, such as where a plaintiff acquires his stock after a particular transaction has begun but before it is completed. What is clear is that it is not, as the plaintiff would seek to characterize it, a sweeping exception to the contemporaneous ownership requirement of § 327. Importantly, the continuing wrong doctrine does not bestow standing upon a stockholder to challenge transactions occurring before he bought his stock simply because they are similar or related to transactions or other conduct that occurred later.
> . . .
> The problem for [plaintiffs] is that each of the wrongs, if they be that, he claims occurred after he became a stockholder can be easily segmented from any wrongs that occurred before. . . . *[T]he granting of a stock option is an individual transaction that is completed the moment the options are granted.*

*Desimone v. Barrows*, 924 A.2d 908, 925-26 (Del. Ch. 2007) (declining to apply "continuing wrong" doctrine) (emphasis added). Thus, plaintiffs cannot avoid the pleading requirements of Rule 23.1 by deferring to a seldom-used and oft-rejected "continuing wrong" doctrine, and must

plead when they purchased Sunrise stock, which they have not done.  Because plaintiffs have

failed to allege facts that would prove standing, their claims must be dismissed.

**C.    Plaintiffs Have Not Adequately Pled That This Court Has Personal Jurisdiction Over the Individual Defendants**

Plaintiffs apparently do not dispute that they have failed to allege specific facts regarding

any of the Individual Defendants (let alone all of them) on which personal jurisdiction can be

based.  *Burman v. Phoenix Worldwide Indus. Inc*., 437 F. Supp. 2d 142, 147 (D.D.C. 2006)

(Walton, J.).  As with their standing argument, plaintiffs instead choose to argue that no such

allegations are needed.  Specifically, plaintiffs argue that Sunrise's ties to the District of

Columbia are sufficient to extend personal jurisdiction over the Individual Defendants, whom

they summarily allege to be control persons.  Opp. 14.  Even assuming, *arguendo*, that the

Individual Defendants were adequately alleged to be control persons (which is not the case, as

discussed below), plaintiffs' view is at odds with the courts in this Circuit—and many others—

and must be rejected.

The leading case in support of plaintiffs' theory is *San Mateo County Transit District v.*

*Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992).  In *San Mateo*, the

Ninth Circuit held that personal jurisdiction is appropriate if the plaintiff makes "a non-frivolous

allegation that the defendant controlled a person liable for the fraud."  *Id*.  The court reasoned

that if a suit is to "enforce a liability created by the Securities Act, the court has jurisdiction of

the defendant wherever he may be found."  *Id*.

This Court has carefully considered and rejected the Ninth Circuit's reasoning because it

is in tension with the Constitutional due process considerations that drive the personal

jurisdiction analysis:

> The Court agrees that the broad understanding of control person liability adopted
> by the Securities Act cannot on its own support personal jurisdiction. This

approach impermissibly conflates statutory liability with the Constitution's command that the exercise of personal jurisdiction must be fundamentally fair. Congress'[s] decision to make a broad group of persons liable under the securities laws cannot on its own discharge the responsibility of the federal courts to ensure that such persons have sufficient connection to the [forum] to render jurisdiction over them compatible with the Due Process Clause. The Fifth Amendment is made of sterner stuff. Moreover, imputing the jurisdictional contacts of a controlled entity to the control person runs afoul of the general rule that a defendant corporation's contacts with a forum may not be attributed to shareholders, affiliated corporations, or other parties.

*In re Baan Co. Sec. Litig.*, 245 F. Supp. 2d 117, 129 (D.D.C. 2003) (internal quotations and citations omitted). The Court thus explicitly rejected the Ninth Circuit's holding in *San Mateo*, stating that "it simply goes too far to hold, as the Ninth Circuit did in *San Mateo*, that mere control status is sufficient to create personal jurisdiction." *Id.*[1] This Court is not alone in reaching this conclusion. *See, e.g.*, *City of Monroe Employee Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 667-68 (6th Cir. 2005); *Tracinda Corp. v. Daimlerchrysler* AG, 197 F. Supp. 2d 86, 99 (D. Del. 2002); *FDIC v. Milken*, 781 F. Supp. 226, 234 (S.D.N.Y. 1991) (holding that the question of control person liability was "not germane to the issue of personal jurisdiction"); *cf. Little Switzerland, Inc. v. Destination Retail Holdings Corp.*, Civ. Action No. 98-315 SLR, 1999 U.S. Dist. LEXIS 5058 at *10 (D. Del. Mar. 31, 1999) (finding "no evidence that plaintiff's

---

[1] As plaintiffs observe, the court in *Baan* recognized that *San Mateo* could also be distinguished as involving a domestic, rather than foreign, corporation, the distinction was made while nonetheless rejecting the Ninth Circuit's reasoning. *Baan*, 245 F. Supp. 2d at 130 n.16. But this was not the basis of the Court's ruling. Rather, "the Court disagree[d] with the Ninth Circuit's holding in *San Mateo* that the standard for personal jurisdiction is identical to the standard for control person liability." *Id.* Furthermore, in considering the issue in cases involving domestic corporations, this Court has found that "a court does not have jurisdiction over individual officers and employees of a corporation just because the court has jurisdiction over the corporation." *Wiggins v. Equifax, Inc.*, 853 F. Supp. 500, 503 (D.D.C. 1994). Rather, "[p]ersonal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity." *Id.*; *see also Quinto v. Legal Times of Wash., Inc.*, 506 F. Supp. 554, 558 (D.D.C. 1981).

'controlling person' theory has found acceptance in Delaware as an alternate basis for asserting personal jurisdiction over a nonresident"). Therefore, the jurisdictional contacts of Sunrise cannot be imputed to the Individual Defendants, and their claims against the Individual Defendants must be dismissed for failure to allege personal jurisdiction.

The *Baan* Court, as plaintiffs note, contemplated that personal jurisdiction could be exercised over a defendant where "personal jurisdiction is backed by a supported allegation of culpable participation[,] . . . as the defendant's contacts [with the forum] . . . would themselves give rise to the plaintiff's action." *Baan*, 245 F. Supp. at 130 n.18. To allege specific jurisdiction in this manner, plaintiffs must allege that the Individual Defendants "knew about and thus culpably participated in the fraudulent activity." *Id.* at 132. As discussed throughout the Individual Defendants' opening brief and this reply, the Amended Complaint makes no such allegation with the requisite particularity. Indeed, even the Opposition relies exclusively on the bare—and wholly inadequate—claim that "*[b]y virtue of their positions as control persons* of the Company, . . . the Individual Defendants knew of and were involved in the fraud of which Plaintiffs complain. This *control person status gives rise to the existence of personal jurisdiction*." Opp. 14 (emphasis added). Plaintiffs' failure to allege the culpable participation of any Individual Defendant dooms their effort to claim that they have properly alleged personal jurisdiction, and is yet another reason that plaintiffs' claims must be dismissed.

**D.    Plaintiffs' Federal Law Claims Are Barred by the Statute of Limitations**

**1.    Plaintiffs' § 10(b) Claims Are Time-Barred**

Tellingly devoting only two paragraphs to the critical statute of limitations issue, plaintiffs' Opposition does not even attempt to dispute that their § 10(b) claims based on alleged stock option backdating and alleged *ultra vires* stock options are time-barred because they accrued more than five years before the Complaint was filed, outside the applicable statute of

repose. *See* Ind. Def. Br. 10-13; Opp. 7. Plaintiffs assert, however, that the Individual

Defendants "speciously ignore" their purported § 10(b) claim with regard to alleged "accounting

manipulations of Sunrise's real-estate ventures" that resulted in materially false statements in

Sunrise Form 10-K filings made "within the two-year limitations period and five-year repose

period." Opp. 7-8. This argument plainly fails because a mere false statement, standing alone,

cannot support a claim under § 10(b).

      To plead a § 10(b) claim adequately requires, among other elements, factual allegations

establishing "transaction causation"—*i.e.*, that the plaintiff (Sunrise) *purchased or sold* securities

*in reliance upon* the allegedly false statements. *Stoneridge Investment Partners, LLC v.

Scientific-Atlanta, Inc.*, 549 U.S. ____, 128 S. Ct. 761, 768 (2008) ("In a typical [Section] 10(b)

private action a plaintiff must prove . . . a connection between the misrepresentation or omission

and the purchase or sale of a security [and] reliance upon the misrepresentation or omission[.]");

*see also In re Financial Corp. of Am. Shareholder Litig.*, 796 F.2d 1126, 1129-32 (9th Cir. 1986)

("To state a claim for relief under section 10(b), however, the plaintiffs must set out facts to

support, among other things, the requirement that the fraud was 'in connection with' a securities

transaction. This requires that a certain relationship be established between the fraud and the

transaction that resulted in the injury complained of.") (holding that "allegedly fraudulent advice

concerning [] accounting treatment" is not a fraud in connection with the purchase or sale of a

security). Here, however, there are no allegations that Sunrise purchased or sold securities in

reliance upon any Form 10-K filings made within the five years prior to the filing of this lawsuit

in 2007, nor could there be. Rather, the only purchase or sale transactions to which Sunrise is

even alleged to have been a party are the stock option grants made during 1997-2001, which

obviously were not entered into in reliance on later-filed Form 10-Ks. As the very case cited by

plaintiffs makes clear, where "the sole relevant securities transaction[s] had occurred more than five years before plaintiff filed suit," any § 10(b) claim based on those transactions are time-barred. *In re Dynex Capital Sec. Litig.*, No. 05 Civ. 1987 (HB), 2006 U.S. Dist. LEXIS 4988, at *14 n.4 (S.D.N.Y. Feb. 10, 2006). Plaintiffs' § 10(b) claim is thus time-barred in its entirety.

**2.    Plaintiffs' § 14(a) Claim Is Time-Barred**

Plaintiffs also offer no response to the Individual Defendants' argument that the § 14(a) claim is time-barred because all of the allegedly misleading proxies fall outside the applicable three-year statute of repose. *See* Ind. Def. Br. 13-14. Plaintiffs' § 14(a) claim therefore must be dismissed.

**E.    Plaintiffs Fail to State a Claim for Any Federal Securities Law Violation**

**1.    Plaintiffs Failed to Allege Adequately That Any Individual Defendant Committed Misconduct**

As plaintiffs recognize, they are required to allege the "who, what, where, when, and how" of the alleged fraud in order to meet the requirements of Rule 9(b) and the PSLRA. Opp. 19. Plaintiffs argue that they adequately plead the "who" in the alleged fraud "by specifying committee membership and the obligations and duties of the Individual Defendants, as well as each of the Individual Defendant's involvement in approving each of the improper grants and disseminating the false financial statements and proxy statements to the SEC and the public." Opp. 21 (internal citations omitted). But this reasoning relies, as does the Amended Complaint, on the "group pleading" doctrine (not to mention impermissible "fraud by title" allegations). As explained in the Individual Defendants' opening brief, "group pleading," or attempting to facilitate the pleading of fraud based on group-published information, has been held not to meet the heightened PSLRA pleading standards. *See In re Fed. Nat'l Mortgage Ass'ns Sec.*

9

*Derivative & "ERISA" Litig.*, 503 F. Supp. 2d 25, 40 (D.D.C. 2007) ("*In re Fannie Mae*").

Plaintiffs never confront this argument, and therefore their §10(b) claims must be dismissed.

Moreover, plaintiffs' claim that the Amended Complaint describes "each" Individual

Defendant's involvement in the alleged improper grants and alleged misstatements, Opp. 21, is

belied by the fact—detailed in our opening brief—that many of the Individual Defendants were

not even affiliated with Sunrise during some or all of the alleged securities law violations.  *See*

Ind. Def. Br. 20 (providing examples of allegations in the Amended Complaint that assert that

Individual Defendants performed actions when they were not even at the company).  Plaintiffs

ignore this argument as well, and their §10(b) claims must be dismissed for this additional

reason.

### 2.    Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter with Respect to Alleged Backdating

Plaintiffs' Opposition argues that scienter is properly alleged when a complaint alleges

that defendants "approved or received backdated options, then signed and disseminated false and

misleading financial statements."  Opp. 22.  Plaintiffs rely heavily on *Ryan v. Gifford* for this

proposition.  918 A.2d 341, 355 n.35 (Del. Ch. 2007).  However, *Ryan*'s analysis has weaknesses

that limit its applicability here, as discussed below.  Moreover, as noted in the opening brief, this

argument is inherently circular:  plaintiffs support their allegation that Individual Defendants

engaged in fraud with allegations that they knowingly made misstatements; Plaintiffs support

their allegation that the Individual Defendants knowingly made misstatements with the allegation

that they engaged in fraud.  This circular reasoning has been rejected.  *See Winters v. Stemberg*,

529 F. Supp. 2d 237, 337, 251 (D. Mass. 2008).  "[W]hether the filings contained misstatements

is contingent on whether the alleged backdating occurred."  *Id.*

Plaintiffs repeat their "fraud by title" allegations by arguing that it is reasonable to infer that certain officers "knew" that alleged backdating and accounting manipulations occurred. Opp. 24-25. Scienter simply cannot be inferred solely because a defendant is a corporate officer or director. *See In re Fannie Mae*, 503 F. Supp. 2d at 40. Similarly, the Opposition relies on general claims that the Individual Defendants were "consciously reckless" and acted knowingly. Opp. 25. As discussed in our opening brief, such general claims do not properly allege scienter. Ind. Def. Br. 15-26. Plaintiffs must allege *facts* supporting the notion of scienter, not merely make the sweeping statement that the Individual Defendants had "knowledge of their own misconduct." Opp. 25. Nowhere in the Amended Complaint, other than the "fraud by title" allegations, do the Plaintiffs allege *how* the Individual Defendants "knew" or could know of the alleged backdating.

Finally, plaintiffs make much of the apparent magnitude of the restatement, Opp. 24, but this has no bearing on scienter. *See In re Fannie Mae*, 503 F. Supp. 2d at 41-42 (the magnitude of the alleged fraud does not create an inference of scienter, because to do so "would eviscerate the principle that accounting errors alone cannot justify a finding of scienter") (internal quotations ad citation omitted). For these reasons, plaintiffs have failed to allege facts giving rise to a strong inference of scienter, and their § 10(b) claims must be dismissed.

3.    **Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter With Regard to the Alleged GAAP Violations**

As shown above, plaintiffs' attempts to plead securities fraud fail because they do not plead facts with particularity and do not plead facts giving rise to an inference of scienter. Plaintiffs are left to argue in their Opposition that the mere existence of accounting errors— which were voluntarily disclosed—somehow is sufficient to plead scienter and state a claim under § 10(b). The law, however, is otherwise.

Plaintiffs cite to numerous cases for the proposition that GAAP violations can be probative of scienter, *see* Opp. 26 (citing cases), but plaintiffs cite *no cases* in which allegations of GAAP violations *alone* are sufficient to support a strong inference of scienter. To the contrary, "the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter." *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002). Merely "showing in hindsight that the statements were false does not demonstrate fraudulent intent." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 827 (8th Cir. 2003); *see also In re Fannie Mae*, 503 F. Supp. 2d at 42 (GAAP violations that were restated, alone, do not sufficiently allege scienter). This rule makes sense, because GAAP violations are at least as likely to arise from innocent error as from fraud, and scienter is adequately alleged only when "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007). To hold that GAAP violations alone are sufficient to plead scienter would open the floodgates of "fraud by hindsight" litigation in which every error, no matter how benign, becomes the subject of unnecessarily and unproductive securities and derivative litigation. The PSLRA was enacted specifically to deter such litigation. *See, e.g., Burman v. Phoenix Worldwide Indus.*, 384 F. Supp. 2d 316, 334 (D.D.C. 2005).

Accordingly, because GAAP violations alone are not sufficient to allege scienter, plaintiffs' § 10(b) claims must be dismissed.

### 4. Plaintiffs' Conclusory Assertions of Insider Trading Do Not Cure Their Failure to Allege Facts Giving Rise to a Strong Inference of Scienter

Plaintiffs argue that the Individual Defendants' sales of Sunrise stock are sufficiently "suspicious" as to raise an inference of scienter. Opp. 27-28. This argument is unpersuasive.

First, the Opposition only attempts to defend its scienter allegations with respect to certain of the Individual Defendants; allegations regarding the remaining Individual Defendants therefore should be ignored.  Second, the fact that no insider trades are alleged for many of the Individual Defendants within the relevant timeframe weighs against drawing an inference of scienter against those for whom such trades are alleged.  Third, despite plaintiffs' protestations to the contrary, their allegations are too vague to support an inference of scienter.

As an initial matter, plaintiffs' Opposition attempts to "defend" their insider selling allegations only as to the Klaassens, Apprahamian, Gaul, Newell, Donohue, Callen, and Holladay.[2]  Plaintiffs do not even address the inadequacies identified in our opening brief with respect to their allegations regarding Adams, Faeder, Hulse, Slager, Slavin, Smick, Swinton, and Tomasso, thus conceding the arguments in the opening brief and providing another reason to dismiss the claims against these defendants.

Next, many of the Individual Defendants—Adams, Faeder, Klisares, Slavin, Smick, and Swinton—are not alleged to have sold any Sunrise stock within even a year of the Company's May 9, 2006 announcement rescheduling its earnings release.  *See* Am. Compl. ¶ 241.  This fact weighs against an inference of scienter on the part of all of the Individual Defendants.  *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007) ("[o]ne possible inference [from] the absence of sales by other managers who would have [allegedly] been in the know…implies that nothing was thought to be out of the ordinary…the absence of any demonstration that the [period in question] was an unusual period . . . means that the complaint

---

[2] Plaintiffs' Opposition claims to have identified "certain Insider Selling Defendants," Opp. 27, but that term is not defined in the Amended Consolidated Complaint filed March 28, 2008.  That complaint purports to list stock sales by all of the Individual Defendants.  *See* Am. Compl. ¶ 241.

lacks the required 'strong' demonstration of scienter"); *see also, e.g., In re Burlington Coat Factory*, 114 F.3d 1410, 1423 (3d Cir. 1997) (inference of scienter on the part of all defendants diminished by the fact that two of five defendants did not sell any stock during the class period); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1428 (9th Cir. 1994) (inference of scienter on the part of all defendants diminished where several defendants "who supposedly possessed inside information did not sell at all") (internal citations and quotations omitted).

Even as to the defendants whose transactions the Opposition does attempt to address—the Klaassens, Apprahamian, Gaul, Newell, Donohue, Callen, and Holladay—the plaintiffs have failed to allege facts that, if true, would show that the alleged stock sales were suspicious. Plaintiffs emphasize certain trades of Sunrise founders Paul and Theresa Klaassen, pointing out that they sold 600,000 shares in twelve transactions between December 19, 2005 and May 2, 2006, with the last of those transactions occurring seven days before the Company announced that it would reschedule its earnings release. Opp. 28. However, the plaintiffs fail to allege whether these sales were made disproportionately at the beginning of the specified date range, disproportionately at the end of the range (close to the Company's announcement), or evenly throughout. Without this information, it is impossible to assess whether any of "the trades were made at times and in quantities that were suspicious enough to support the necessary strong inference of scienter." *In re Burlington Coat Factory*, 114 F.3d at 1424. Moreover, plaintiffs fail to allege what proportion of the Klaassens' holdings was sold during the period they identify, and therefore provide no reason to believe that it was more than *de minimis* in comparison to their total holdings. *See, e.g., Acito v. IMCERA Group*, 47 F.3d 47, 54 (2d Cir. 1995) (sale of less than 11% of defendant's holdings did not support an inference of scienter); *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 390 (4th Cir. 2005) (sale involving 13% of defendant's

holdings was "de minimis" and did not support an inference of scienter).  Finally, plaintiffs fail to allege that the Klaassens' stock sales were not made pursuant to a 10b5-1 automatic trading plan, further undermining plaintiffs' attempts to plead scienter.  *See, e.g., In re Int'l Rectifier Corp. Sec. Litig.*, Case No. CV 07-02544 JPW(VBKY), 2008 U.S. Dist. LEXIS 44872, *60-62 (C.D. Cal. May 23, 2008); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 604-05 (S.D.N.Y. 2007).

Plaintiffs allegations regarding the stock sales of Apprahamian, Gaul, Newell, Donohue, and Holladay are similarly flawed.  Plaintiffs fail to allege specific facts regarding the amount of any particular trade.[3]  They do not allege facts from which one can infer that any of the defendants sold more than a *de minimis* amount.  And they fail to allege that the sales they cite were not made pursuant to a 10b5-1 automatic trading plan.  All that remains, therefore, are general allegations that some defendants sold some Sunrise stock in the months before Sunrise announced that it would reschedule its earnings release.  This is not suspicious and does not raise a strong inference of scienter.  *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 541 (3d Cir. 1999) ("[A] large number of today's corporate executives are compensated in terms of stock and stock options.  It follows then that these individuals will trade those securities in the normal course of events.") (citations and quotations omitted); *Guttman v. Huang*, 823 A.2d 492, 502 (Del. Ch. 2003) ("As a matter of course, company insiders sell company stock.").

---

[3]  Plaintiffs do allege facts regarding defendant Callen's single sale on May 26, 2005.  This sale occurred nearly a year before Sunrise announced that it was rescheduling its earnings release; there is no reason to consider this sale to be suspicious.  *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 541 (3d Cir. 1999).

### 5.      Plaintiffs Do Not Allege Reliance With the Requisite Specificity

Plaintiffs' Opposition argues that "the Company relied on the members of the Stock Option Committee's false representations that the [allegedly backdated option] grants were at-the money as of the measurement date." Opp. 30. This allegation appears no where in the Amended Complaint, which contains only the vague assertion that "[t]he Company relied upon the [Individual Defendants'] fraud in granting the recipients of backdated and ultra vires stock options [the right] to purchase shares of the Company's common stock, and the improper accounting treatment for the recognition of profits from real estate joint ventures and gains on the sale of real estate[.]" Am. Compl. ¶ 320. If anything, plaintiffs' attempt to reformulate their allegations in the Opposition suggests the recognition that the initial allegations are insufficient.

Importantly, the Opposition does not even attempt to argue that any of the Individual Defendants who did not serve on the Stock Option Committee made any misstatements upon which Sunrise relied. Opp. 29-30. For this reason, the § 10(b) claims against the remaining Individual Defendants must be dismissed.

Finally, plaintiffs' argument fails to address the fundamentally nonsensical nature of the premise on which the claim is based, namely that "Sunrise," which can only hear, read, think and act through management, *i.e.*, the Individual Defendants, was somehow misled into entering securities transactions in "reliance" on misstatements supposedly made by those very same people. For these reasons, plaintiffs have failed to allege reliance, and their § 10(b) claims must be dismissed.

**6.      Plaintiffs Do Not Dispute That They Have Failed to Plead a § 14(a) Claim**

Plaintiffs' Opposition does not even dispute that the Amended Complaint fails to plead a § 14(a) claim.  Accordingly, Plaintiffs' § 14(a) claim should be dismissed for the reasons set forth in the Individual Defendants' Memorandum.  Ind. Def. Br. 26-30.

**7.      Plaintiffs Fail to Plead Adequately a § 20(a) Claim**

Plaintiffs' efforts to avoid dismissal on their § 20(a) claim are equally unavailing, for three independent reasons.  First, because plaintiffs' § 20(a) claim is premised on an underlying securities violation, their failure to state a claim under either § 10(b) and § 14(a) obviously dooms their § 20(a) claim, which thus must also be dismissed.

Second, plaintiffs simply fail to allege adequately that Faeder, Hulse, Slavin, or any of the Director Defendants is a controlling person.  By Plaintiffs' own admission, pleading that a defendant is a control person requires alleging <u>who</u> they "control <u>and what acts</u> or statuses indicate such control."  Opp. 30 (citing *In re 3Com Sec. Litig.*, 761 F. Supp. 1411, 1418 (N.D.Cal. 1990) (emphasis added).  Plaintiffs assert that their "allegations provide that the Individual Defendants themselves controlled and perpetuated the fraudulent options backdating and accounting scheme," Opp. 31 (citation omitted), but the Amended Complaint does no such thing.  Instead, it contains nothing but a mere recitation of the various Individual Defendants' titles and the boilerplate allegation that each is a controlling person "by virtue of their positions with Sunrise and their specific acts," which themselves are never described with the required particularity.  This does not satisfy the *3Com* standard cited by plaintiffs, nor does it satisfy the standards articulated by other courts.  *See, e.g., In re Adelphia Communc'ns Corp. Sec. & Derivative Litig.*, 398 F. Supp. 2d 244, 262 (S.D.N.Y. 2005)("[a] person's status as an officer, director, or shareholder, absent more, is not enough to trigger liability under § 20") (internal

citation and quotation omitted); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003) ("[t]he assertion that a person was a member of a corporation's board of directors, without any allegation that the person individually exerted control or influence over the day-to-day operations of the company, does not suffice to support an allegation that the person is a control person within the meaning of the Exchange Act").

Finally, plaintiffs dispute that they are required to plead "culpable participation" on the part of the defendants in the alleged underlying securities violation, noting a split in the circuits on this point.  Opp. 30 n.19.  They ignore, however, the fact that the leading authority in this Circuit requires this element because § 20(a) is a "state-of-mind provision" requiring proof of "something more than negligence," and hence triggering the particularity requirements of the PSLRA.  *See In re Fannie Mae*, 503 F. Supp. 2d at 44 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)).  Plaintiffs' bare allegations of "fraud by title" do not meet this standard.  Plaintiffs' § 20(a) claim therefore should be dismissed.

**F.     Because Plaintiffs Fail to State Any Federal Claim, the Court Must Dismiss the Entire Case for Lack of Subject Matter Jurisdiction**

Because plaintiffs fail to allege adequately any federal securities claims, these claims must thus be dismissed.  As a result, this Court lacks original jurisdiction to hear the pendant state law claims, and they should be dismissed as well.  Ind. Def. Br. at 33.  The Court need go no further.

**G.     Each of Plaintiffs' Pendant State Law Claims Is Also Subject to Dismissal on the Merits**

Should the Court for some reason determine to exercise jurisdiction over the pendant state law claims, each of them must be dismissed for the reasons set forth below.

1.      **Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty**

    a.      **To the Extent Their Claim Is Based On Stock Option Backdating, Plaintiffs Fail to Justify Tolling the Limitations Period**

Plaintiffs do not dispute in their Opposition that all of the challenged grants occurred outside the three-year statute of limitations period applicable to a claim for breach of fiduciary duty.  Nor do they dispute that, as stated our in our initial Memorandum, their entire claim is based *solely* upon information as to grant dates, grant prices, and stock market prices that was publicly disclosed many years ago, and that the only newly-discovered "fact" is plaintiffs' theory of recovery, *i.e.*, that the previously-disclosed option grant data is "indicative of a pattern of back-dating."  *See* Am. Compl. ¶ 71; Indiv. Def. Mem. at 33-36; Opp. at 8-9.  On these facts, as we have shown, plaintiffs' claims are time-barred.

Plaintiffs seek to avoid this result under the doctrine of equitable tolling, relying upon decisions by the Delaware state courts that have used this doctrine to "save" breach of fiduciary duty claims in other stock option backdating cases.  These decisions, however, even if otherwise well founded, do not apply here.

*Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007), upon which plaintiffs principally rely, recognized that the basis used for equitably tolling the statute of limitations in that case— "fraudulent concealment" based on allegedly false SEC filings regarding stock option grants— applies only "until plaintiff is placed on inquiry notice that such filings were fraudulent."  *Id.* at 360.  The *Ryan* court concluded that, in that case, a "complicated statistical analysis" was necessary to discern a "pattern" of backdating, and since in the court's view a shareholder was not "required" to conduct such an analysis in order to have exercised "reasonable diligence," the shareholder was not on inquiry notice of its claims.  *Id.*  Here, however—taking the allegations

of the Amended Complaint as true for present purposes—a different story is presented.  While plaintiffs do include purported statistical information in their Amended Complaint, they ask the Court to find a sufficient inference that backdating occurred based *primarily* on simple comparisons of publicly-disclosed record dates and exercise prices for Sunrise stock option grants, and the closing prices of Sunrise stock during the same time period.[4]

Assuming *arguendo* that this information is sufficient to state a claim for backdating (which we dispute below), then it must be the case that plaintiffs have been on inquiry notice of their claims from very shortly after the option grants were first disclosed, since the information upon which the claim is based was readily available at that time—without resort to any "complicated statistical analysis."  The information upon which plaintiffs' claims are based was thus neither "inherently unknowable" to plaintiffs, nor "fraudulently concealed."  *See In re Dean Witter P'ship Litig.*, C.A. No. 14816, 1998 Del. Ch. LEXIS 133, at *40 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999).  The only thing "new" is the *argument* that this data demonstrates that backdating must have occurred, but the invention of a novel legal theory, especially one based on an analysis of information that has long been in the public domain, is insufficient to overcome the statute of limitations.  *See, e.g., Began v. Dixon*, 547 A.2d 620, 623-24 (Del. Super. Ct. 1988).  Because plaintiffs were on inquiry notice of the facts that underlie

---

[4] *See, e.g.,* Am. Compl. ¶¶ 83, 87 (grants "coincided with Sunrise's second lowest closing price for the fiscal quarter"); ¶¶ 95, 108, 128 (grants "coincided with one [or two] of the lowest closing prices of Sunrise Stock for the fiscal quarter"); ¶ 100 (grant "coincid[ed] with the lowest closing price . . . for the fiscal quarter"); ¶ 120 (grant "coincided with the lowest closing price of Sunrise stock for the month of September and one of the lowest closing prices of the fiscal quarter"); ¶ 110 (grant on date "when Sunrise's stock was near its yearly low");  ¶¶ 91, 104 (grants preceded "a dramatic rise" or "a significant rise" in the price of Sunrise stock).

their claims, they cannot argue that the limitations period should be tolled, and plaintiffs' claims

must be dismissed as time-barred.

> **b.    Plaintiffs' Opposition Fails to Justify Their Inadequate Allegations of Stock Option Backdating**

Plaintiffs' Opposition continues to lump the Individual Defendants together as if each

played an equal—and entirely unspecified—role in the alleged backdating scheme.  As explained

in our opening brief, nowhere do plaintiffs make a specific factual allegation regarding the

conduct of any particular Individual Defendant, let alone any allegation from which to infer that

any defendant was acting in bad faith.  For this reason, plaintiffs have failed to state a claim for

breach of the duty of loyalty.

Plaintiffs' response is to seek to rely on cases that are inapposite here, primarily *Ryan v.

Gifford.*  That case did, indeed, conclude that the plaintiffs there stated a claim for breach of

fiduciary duty, but nothing in that decision addressed the pleading problem presented here:  the

utter failure to make specific factual allegations as to particular defendants.  Rather, *Ryan* turned

on a different question, whether allegations of "intentional violation of a shareholder approved

stock option plan, coupled with fraudulent disclosures regarding the directors' purported

compliance with that plan, constitute conduct that is disloyal to the corporation and is therefore

an act of bad faith."  *Id.* at 356-58.  *Ryan* answered this question "yes," *if* the complaint contains

"well-pleaded allegations of such conduct."  *Id.* at 358.

Even accepting *Ryan* as correctly decided for present purposes, it does not help plaintiffs

because in this instance the Amended Complaint does not contain "well-pleaded allegations of

such conduct," as we have demonstrated; instead, it simply lumps every defendant together and

asserts the wholly conlcusory and obviously impossible proposition that all of them conspired together on everything.

   **c.**  **Plaintiffs Fail to Adequately Allege Facts to Support a Claim for Breach of the Duty of Loyalty Regarding Allegedly Misleading SEC Filings**

  As discussed in our opening brief, the Amended Complaint fails to identify with particularity what role any—let alone all—of the designated Accounting Defendants played in making purportedly false statements in Sunrise securities disclosures, which is fatal to their claim that such misstatements constitute a breach of fiduciary duty.  Ind. Def. Br. at 39.  Plaintiffs' group pleading is inadequate because, among other things, it ignores the fact that the various Accounting Defendants served Sunrise in different capacities at different times.  *See id.* at 40.

  In response, plaintiffs' Opposition makes additional unsupported allegations—for example, that "*not one* of the press releases and/or filings disseminated over the course of nearly ten years contained *any* information as to Sunrise's true financial condition, but only information the Individual Defendants knew to be patently distorted," Opp. 35 (emphasis added)—but they only serve to magnify the stark inadequacy of the original allegations rather than to remedy it.  Nor do plaintiffs' authorities support their argument that their allegations are well-pled.  *Malone v. Brincat*, 722 A.2d 5, 14 (Del. 1997), is cited for the unremarkable proposition that directors who deliberately misinform shareholders violate their fiduciary duty, but this case does not excuse plaintiffs from alleging the underlying facts to state this claim.  Indeed, in *Malone*, the complaint was found to be inadequate and was dismissed.  Similarly, plaintiffs cite *Metro Communication Corp BVI v. Advanced Mobilecomm Technologies, Inc.,* 854 A.2d 121, 153 (Del. Ch. 2004), for the proposition that a director breaches his fiduciary duty when he remains silent after learning that earlier public communications were inaccurate.  Again, that certain facts may state a cause of action does not excuse plaintiffs from pleading particularized facts that actually

state the claim.  In the absence of allegations of particularized facts, plaintiffs' breach of

fiduciary duty claims therefore must be dismissed.

> **d.    Plaintiffs Fail to Adequately Allege Facts to Support a Claim for Breach of the Duty of Loyalty Regarding Joint Venture Accounting**

Plaintiffs allege that the Individual Defendants breached their fiduciary duties to the

Company by "colluding with each other to improperly account for Sunrise's real estate joint

venture[s]." Am. Compl. ¶ 269(a); *see also id*. ¶ 142.  As we have explained, this allegation is

supported only with (1) a description of the Company's voluntary disclosure that it was restating

its earnings based on issues identified in an internal review of its joint venture accounting, and

(2) a bald assertion that the accounting error disclosed by Sunrise had been caused by the

Individual Defendants' knowing "collusion."  Ind. Def. Br. 40-41.  In response, Plaintiffs'

Opposition offers nothing but boilerplate language regarding the nature of fiduciary duty and a

restatement of the same sort of bald allegations.  Opp. 36-37.  They offer no authority at all to

suggest that their conclusory allegations are sufficient without alleging the "who, what, when,

where, and how" of <u>each</u> Individual Defendant's participation in the allegedly disloyal conduct.

*Vess v. Ciba-Geigy Corp*., 317 F.3d 1097, 1106 (9th Cir. 2003); *In re Cornerstone Propane*

*Partners, L.P. Sec. Litig*., 355 F. Supp 2d. 1069, 1091 (N.D. Cal. 2005) ("allegations of GAAP

violations must be augmented by 'facts that shed light on the mental state' of defendants, rather

than conclusory allegations").  Accordingly, plaintiffs do not state a claim for breach of fiduciary

duty based on the alleged improper accounting of real estate joint ventures, and therefore the

claim must be dismissed.

2.      **Plaintiffs Fail to Adequately Plead a Claim for Insider Trading and Misappropriation of Information**

Plaintiffs argue that "[a] review of the Complaint demonstrates that insider trading is sufficiently pled.  The Complaint alleges directly, and by imputation, that the Insider Selling Defendants [a term that is not defined in the Amended Complaint] had knowledge of material information and made their trades on that basis."  Opp. 38 (citation omitted).  Again, plaintiffs' conclusory statements do not remedy the fundamental flaw identified in the Individual Defendants' opening brief:  that plaintiffs do not alleged what non-public information *each* Individual Defendant had at the time of *each* sale, as the law requires.  *See In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904, 934 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005).  Further flaws with plaintiffs' pleadings are explained above in Section E4, *supra*.  In view of these shortcomings, the insider trading count must be dismissed.

3.      **Plaintiffs' Unjust Enrichment Claims Must Fail Because Plaintiffs Fail to Adequately Plead an Underlying Breach of Fiduciary Duty**

Plaintiffs do not dispute that once their fiduciary duty claims are dismissed, so must their unjust enrichment claims be dismissed, as the latter is merely an equitable restatement of the former.  *See* Ind. Def. Br. 44.  Because plaintiffs' fiduciary duty claims must be dismissed, their unjust enrichment claims also must be dismissed.

4.      **The Rescission Counts and the Accounting Count Must Be Dismissed Because These Are Remedies, Not Claims**

Plaintiffs do not cite any case law that disputes that rescission and accounting are better understood as equitable remedies rather than claims.  Nor do plaintiffs dispute that once the underlying claims of breach of fiduciary duty and unjust enrichment are dismissed, any claims for rescission and accounting must likewise be dismissed.  Accordingly, and for the reasons

24

stated in the Individual Defendants' Memorandum, the claims for rescission and an accounting

must be dismissed. Ind. Def. Br. 44-45.

### III.  CONCLUSION

For the foregoing reasons, together with the reasons set forth in our opening

Memorandum in support of the present motion, Plaintiffs' Amended Complaint should be

dismissed.

DATED:  August 18, 2008.

Respectfully submitted,

/s/ John C. Millian
John C. Millian (DC Bar #413721)
Matthew R. Estabrook (DC Bar #477880)
Elise Kochtitzky Jacques (DC Bar #502460)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

*Attorneys for Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J. Donohue, David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L. Klaassen, Teresa M. Klaassen, Peter A. Klisares, William Little, Jr., Scott F. Meadow, Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton and Tiffany L. Tomasso*

100503192_1.DOC

25